Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIJAH PINALES, JUDA ROACHE, ALOHA STRATEGICS LLC DBA DANGER CLOSE TACTICAL, JGB ARMS LLC, SECOND AMENDMENT FOUNDATION, | ) ) ) ) ) ) | |
| | ) | Civil Action _____ |
| Plaintiffs, | ) | |
| | ) | Memorandum in Support of Motion for |
| v. | ) | Preliminary Injunction |
| | ) | |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

# TABLE OF CONTENTS

I.    Introduction ...................................................................................1

II.   Statement of Fact...........................................................................3

III.  Argument.......................................................................................6

    A.   Standard for a Preliminary Injunction ...............................6

    B.   Plaintiff Has a Strong Likelihood of Success on the Merits .........................6

    C.   Plaintiff's Conduct is Covered by the Second Amendment's Plain Text .......8

    D.   There is No Historical Tradition of Disarming Adults Under 21 .................18

IV.  Plaintiff will suffer irreparable harm................................................22

V.   Granting the TRO/PI is in the Public Interest and Serves Equity...................23

VI.  Waiver of Bond is Proper and Appropriate Under These Circumstances .......24

VII. This Court Should Consolidate Pursuant to Rule 65(a)(2) ...........................24

VIII. Conclusion...................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................6

*Andrews v. McCraw*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022) ..............................................................................................................12

*Andrews v. State*, 50 Tenn. 165 (Tenn. 1871) ..........................................................10

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ............................................. 6, 22, 23

*Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 704 F.Supp.3d 687, 703 (N.D.W.Va., 2023) ...............................................................................12

*Carey v. Population Servs., Int'l*, 431 U.S. 678, 97 S. Ct. 2010, 52 L.Ed.2d 675 (1977) ...............................................................................................................2

*Garland v. Range*, 144 S. Ct. 2706 (2024) .............................................................11

*Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L.Ed.2d 397 (1976) ......................2

*Doe v. Bolton*, 410 U.S. 179 (1973) ..........................................................................2

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794 (D. Mont. Sep. 16, 2020) ....................................................25

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) .............................23

*Drummond v. Robinson Township*, 9 F.4th 217 (3d Cir. 2021) ........................ 8, 9, 10

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) .....24

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ....................................................24

*Elrod v. Burns*, 427 U.S. 347 (1976)........................................................22

*Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020).................14

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011).................................. 2, 9, 10, 22

*Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740 (N.D. Tex. 2022) ........................................................................................................ 12, 20

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023)......................................................10

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir. 2021), as amended (July 15, 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021) ..........................................................................................................12

*Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) ........................................................................................................................10

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ...................................... passim

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)....................................9

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ..............................................24

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), opinion vacated on reh'g, 47 F.4th 1124 (9th Cir. 2022)....................................................................... passim

*Kennedy v. Louisiana*, 554 U.S. 407 (2008)...........................................................15

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ..................................23

*Lara v. Commr. Pennsylvania State Police,* 91 F.4th 122 (3d Cir. 2024 cert. granted, judgment vacated sub nom. *Paris v. Lara*, No. 24-93, 2024 WL ..........11

*McCullen v. Coakley*, 573 U.S. 464 (2014)...............................................................8

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)....................................................22

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)...................................22

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)................... passim

*Natl. Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 714 F.3d 334 (5th Cir. 2013) ................................................................19

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ...............................................................24

*Planned Parenthood v. Danforth,* 428 U.S. 52 (1976)................................................2

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ................................................23

*Rocky Mountain Gun Owners v. Polis,* 2024 WL 4677573 (C.A.10 (Colo.), 2024) ..............................................................................................................................12

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ..............................................23

*Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743 (N.D. Ill. 2015) ....10

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ................................2, 9

*U.S. v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024)..........................................9, 13

*U.S. v. Rahimi,* 144 S. Ct. 1889 (2024)............................................................ passim

*United States v. Connelly*, --- F.4th ----, 2024 WL 3963874 (5th Cir. Aug. 28, 2024) ....................................................................................... 15, 16, 17

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ......................................11

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)...................................23

*Vincent v. Garland*, 144 S. Ct. 2708 (2024) ...........................................................11

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109) ....................24

*Wolford v. Lopez*, 116 F.4th 959 (C.A.9 (Hawaii), 2024) ........................................16

*Worth v. Harrington*, 666 F. Supp. 3d 902 (D. Minn. 2023)....................................20

*Worth v. Jacobson,* 108 F.4th 677 (C.A.8 (Minn.), 2024)............................... passim

**Statutes**

18 U.S.C. § 922(g)(8)...................................................................................................3

H.R.S. §134-2(a) ..........................................................................................................3

H.R.S. §134-2(d)(1) ......................................................................................................3

H.R.S §134-2(h) ...........................................................................................................3

H.R.S. §134-4................................................................................................................1

H.R.S. §134-5................................................................................................................1

H.R.S. §134-7(g)...........................................................................................................3

**Other Authorities**

*Wolford v. Lopez* 23-16164 Doc. No. [105] ...........................................................16

**Rules**

F.R.C.P. Rule 65(a)(2) ...............................................................................................24

F.R.C.P. Rule 65(c)....................................................................................................24

**Treatises**

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ...................................................................................................22

Kopel, David B. and Greenlee, Joseph, *The Second Amendment Rights of Young Adults* (January 16, 2019). 43 Southern Illinois Law Journal 495 (2019, U Denver Legal Studies Research Paper No. 18-28............................................3, 18

Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022............................................14

**Constitutional Provisions**

U.S. Const. amend. XXVI .......................................................................................11

# I.  **Introduction**

The State of Hawaii is the only state in the union which maintains an effective ban on acquiring and owning firearms and ammunition by those between the ages of 18 through 20 ("adults under the age of 21").[1] Since the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) the federal courts have uniformly found adults under 21 have Second Amendment rights and have overturned firearm restrictions on adults under 21 which are far less onerous than Hawaii's. Since *Bruen*, rather than reconsider its ban on adults under the age of 21 owning firearms, Hawaii has broadened its ban to include ammunition. Hawaii's ban on adults under the age of 21 purchasing and owning firearms and ammunition is challenged in this lawsuit.

Plaintiffs are adults (or soon to be adults) under 21 who would like to own firearms and ammunition for purposes of lawful self-defense[2], gun stores who bring a lawsuit on behalf of their customers who are adults under 21 who would like to purchase and own ammunition and firearms and an organizational plaintiff

---

[1] In all references wherein Plaintiffs complain of Hawaii Revised Statutes herein, specifically with regard to possession, Plaintiffs complain of the prohibitions regarding possession of firearms and ammunition beyond what is allowed under Hawaii Revised Statutes §§134-4 and 134-5.

[2] The very right protected by the Supreme Court in *District of Columbia v. Heller,* 554 U.S. 570 (2008).

that brings suit on behalf of itself and its members who are adults under 21 who would like to own firearms and ammunition in Hawaii. [3] *Bruen* requires that the government show a long lasting historical tradition of restricting firearm rights in a relevantly similar manner. There is no historical tradition of prohibiting the purchase and ownership of firearms and ammunition by adults under 21. During the Founding Era, some 18-to-20-year-olds were required to own firearms. *E.g.* Complaint at n.17. Moreover, Americans had arms and practiced with them from a

---

[3] Both the gun stores and the organization have standing. The gun store has standing to bring suit on behalf of its potential customers. " '[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.; *Craig v. Boren*, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L.Ed.2d 397 (1976). Teixeira, as the would-be operator of a gun store, thus has derivative standing to assert the subsidiary right to acquire arms on behalf of his potential customers. *See also Carey v. Population Servs., Int'l*, 431 U.S. 678, 683, 97 S. Ct. 2010, 52 L.Ed.2d 675 (1977); *Ezell v. City of Chi.*, 651 F.3d 684, 693 & 696 (7th Cir. 2011) (supplier of firing-range facilities had standing to challenge Chicago ordinance banning firing ranges on behalf of potential customers)." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). *See also Doe v. Bolton*, 410 U.S. 179, 188 -189 (1973) (doctors have standing to challenge abortion statute since it operates directly against them and they should not have to await criminal prosecution in order to determine their validity); *Planned Parenthood v. Danforth,* 428 U.S. 52, 62 (1976) (same). And the organizations have standing to bring suit on behalf of their members impacted by Hawaii law. "The advocacy groups sued on behalf of their young adult members, and some of those members are still under 21. Similarly, the firearm dealer plaintiffs sued because they have had to forego selling firearms to young adults and offering firearm classes for them. The case is not moot as to them either because they still cannot sell firearms to young adults or admit them to their classes." *Jones v. Bonta*, 34 F.4th 704, 713 (9th Cir. 2022), opinion vacated on reh'g, 47 F.4th 1124 (9th Cir. 2022)

very early age. "So too was Jefferson. His father, Colonel Peter Jefferson, taught him to use a firearm at a young age. When Thomas was 10 years old, his father was confident enough to send the boy into the wilderness alone with nothing but his firearm, to learn self-reliance."[4] The Supreme Court's recent holding in *U.S. v. Rahimi,* 144 S. Ct. 1889 (2024) also supports a finding that Hawaii's laws are unconstitutional. There, the Supreme Court only upheld 18 U.S.C. § 922(g)(8) because there had been a judicial determination that Zachary Rahimi was currently dangerous and there is a historical tradition which supports disarming those so situated. Here, there are no findings that adults under 21 are dangerous and there is no historical tradition which supports Hawaii's ban. *Rahimi* supports a finding that the challenged laws are unconstitutional. This Court should enter a preliminary injunction.

## II.  Statement of Facts

The State of Hawaii prohibits the ownership and acquisition of firearms and ammunition by individuals under the age of 21 through a comprehensive statutory scheme. *See* H.R.S. §§134-2(a), 134-2(d)(1), 134-2(h), and 134-7(g).  Plaintiff

---

[4] Kopel, David B. and Greenlee, Joseph, *The Second Amendment Rights of Young Adults* (January 16, 2019). 43 Southern Illinois Law Journal 495 (2019, U Denver Legal Studies Research Paper No. 18-28, at 531 (detailing colonial laws which made arms ownership mandatory for militia age men including adults under 21) Available at SSRN: https://ssrn.com/abstract=3205664 or http://dx.doi.org/10.2139/ssrn.3205664

Elijah Pinales is a natural person, an adult male, over the age of 18 and under the age of twenty-one, age 19 years old. Complaint ¶ 1. He is a resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States. *Id.* But for Hawaii law he would obtain a permit to acquire and acquire, purchase, own, and possess a firearm. He would also acquire, purchase, own and possess ammunition. *Id.* Plaintiff Juda Roache is a natural person. Complaint ¶ 2. On December 15, 2024, he will turn 18. *Id.* He is a resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States. *Id.* Upon turning 18, but for Hawaii law he would obtain a permit to acquire and acquire, purchase, own, and possess a firearm. He would also acquire, purchase, own and possess ammunition. *Id.* Additionally, his mother Soliel Roache would transfer him a firearm and ammunition which he would accept upon him turning 18 but for Hawaii law. Complaint n.29, 30.

Aloha Strategics LLC DBA Danger Close Tactical, (hereinafter "DCT"), is a business authorized to operate in the state of Hawaii. *Id* ¶ 3. DCT is located in Honolulu County. *Id.* DCT is a federally licensed firearms dealer and is legally authorized to sell firearms and ammunition to purchasers in the state of Hawaii and county of Honolulu. *Id.* DCT has customers who are at least eighteen years old and under the age of twenty-one years old, who are not otherwise disqualified under federal and state law to acquire, buy, own and possess firearms and ammunition

and who want to acquire, buy, and possess firearms and ammunition. *Id.* DCT desires to engage in business with and sell firearms and ammunition to buyers who are at least eighteen years old and also under the age of twenty-one years old, and intends to and would do so, but for the State laws challenged here. *Id.*

JGB Arms LLC, (hereinafter "JGB"), is a business authorized to operate in the state of Hawaii. *Id* ¶ 4. JGB is located in Kauai County. *Id.* JGB is a federally licensed firearms dealer and is legally authorized to sell firearms to purchasers in the state of Hawaii and county of Kauai. *Id.* JGB has customers who are at least eighteen years old and under the age of twenty-one years old and who are not otherwise disqualified under federal and state law and who want to acquire, buy, and possess firearms and ammunition. *Id.* JGB desires to engage in business with and sell firearms and ammunition to buyers who are at least eighteen years old and under the age of twenty-one years old, and intends to do so and would do so, but for State's laws challenged here and the criminal prosecution that would follow. *Id.*

Plaintiff Second Amendment Foundation (hereinafter "SAF"), is a non-profit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. *Id* ¶ 4. SAF has over 720,000 members and supporters nationwide, including members who are adults under the age of 21 in Hawaii who would

purchase ammunition and firearms but for Hawaii law. *Id.* The purpose of SAF includes education, research, publishing, and legal action focusing on the constitutional right to privately acquire, own and possess firearms and ammunition under the Second Amendment, and the consequences of gun control. *Id.*

### III.  <u>Argument</u>

### A. Standard for a Preliminary Injunction

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

### B.  Plaintiff Has a Strong Likelihood of Success on the Merits

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may " 'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. Accordingly, the "general right to public carry" cannot be

restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). By analogy, the general right to own firearms cannot be restricted absent exceptional circumstances. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the government fails to meet its burden, then the government's restriction is unconstitutional. While not necessarily part of the Second Amendment analysis, it is important to note that Hawaii law is an outlier. Hawaii has the most restrictive state laws in the country regarding firearm ownership by adults under 21. Even prior to *Bruen*, the Third Circuit found outlier laws are more likely to be unconstitutional. "In identifying which rules invade the Second Amendment, we hunt for historical outliers—laws that lack traditional counterparts. In subjecting those rules to heightened scrutiny, likewise, we look for modern outliers—laws with few parallels

in contemporary practice. The more "exceptional" a rule, the more likely the government has overlooked less burdensome 'options that could serve its interests just as well.'" *Drummond v. Robinson Township*, 9 F.4th 217, 222 (3d Cir. 2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 490 (2014)).

The Supreme Court's recent decision in *U.S. v. Rahimi*, 144 S. Ct. 1889 (2024) did not change this analysis. Rather, it reaffirmed *Bruen's* holding that firearms regulations must be justified via relevantly similar historical laws. "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id* at 1898. However, *Rahimi* cautioned that "[e]ven when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.* Here, because Hawaii law is an outlier law, that raises a presumption that its ban on adults under 21 owning firearms and ammunition is unconstitutional. And as shown below, Hawaii law cannot stand under *Bruen's* text, history and tradition test.

## C. Plaintiff's Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. Here, Plaintiffs' conduct is within the text of

8

the Second Amendment because they (or the individuals they are suing for) wish to keep firearms in their home for purposes of lawful self-defense just like the litigant in *Heller*. "Their requests track the core constitutional right to possess a handgun for self-defense inside and outside the home, as defined by *Heller* and *Bruen*, respectively." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024). "[A]nd therefore unquestionably implicates [Plaintiffs'] Second Amendment rights." *Id* at 1181. The same applies to their desire to own ammunition and acquire firearms and ammunition. The Second Amendment protects conduct which is necessary to keep and bear arms for self-defense. *Drummond*, 9 F.4th, at 227 (applying this principle to find range training is within the scope of the Second Amendment right). The Ninth Circuit has already applied this principle. In *Jackson v. City & Cty. of S.F.*, the Ninth Circuit found that ammunition is protected by the Second Amendment, and one thus has a right to purchase it. "'[T]he right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011).

"[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira,* 873 F.3d at 677. "For this reason, the right to keep and bear arms includes the right to purchase them. And thus, laws that burden the ability to purchase arms burden Second

Amendment rights." *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022), opinion vacated on reh'g, 47 F.4th 1124 (9th Cir. 2022).[5] This is in accord with the opinions of other courts. "[A] complete ban on sales is the type of zoning restriction that would give rise to a Second Amendment violation". *Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 753 (N.D. Ill. 2015). *See also Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928, 947 (N.D. Ill. 2014) ("A "flat ban on legitimate sales and transfers" is unconstitutional."); *Ezell,* 651 F.3d at 704 ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."); *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) (per curiam) (agreeing with the Tennessee Supreme Court that the "right to keep arms[] necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair" (quoting *Andrews v. State*, 50 Tenn. 165, 178 (Tenn. 1871)); *Drummond,* 9 F.4th at 227 (stating that *Heller* " 'implies a corresponding right to acquire and maintain proficiency' with common weapons" (quoting *Ezell,* 651 F.3d at 704)). Thus, Plaintiffs desire to own and acquire ammunition and firearms is within the

---

[5] Plaintiffs recognize the *Jones* opinion has been vacated. However, it remains persuasive authority. Plaintiffs cite to it as such.

plain text of the Second Amendment. The remaining question is whether Plaintiffs are among the People afforded Second Amendment rights. " '[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments" are that are part of our "national community" and/or "have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). There can be no real argument that adults under 21 are not part of the national community. 18-to-20-year-olds have the right to vote pursuant to the Twenty Sixth Amendment. *See* U.S. Const. amend. XXVI. They have the right to serve in the military and are otherwise full-fledged members of society and the People.

A consensus of courts has found "18-to-20-year-olds are, like other subsets of the American public, presumptively among "the people" to whom Second Amendment rights extend." *Lara v. Commr. Pennsylvania State Police,* 91 F.4th 122, 132 (3d Cir. 2024 cert. granted, judgment vacated sub nom. *Paris v. Lara*, No. 24-93, 2024 WL[6]; "Ordinary, law-abiding 18 to 20-year-old Minnesotans are

---

[6] Plaintiffs' recognize that *Lara* has been vacated by the Supreme Court but *Lara* is still strong persuasive authority. Following *Rahimi* the Supreme Court remanded a number of Second Amendment cases including cases on opposite sides of particular splits. *Cf. Garland v. Range*, 144 S. Ct. 2706 (2024), with *Vincent v. Garland*, 144 S. Ct. 2708 (2024). As shown in this brief, there is nothing in *Rahimi* which requires the Third Circuit to come to a different outcome in *Lara* so it is doubtful it will reach a different outcome once *Lara* is reconsidered.

unambiguously members of the people." *Worth v. Jacobson,* 108 F.4th 677, 692 (C.A.8 (Minn.), 2024) reh'g denied, *Worth v. Jacobson*, 2024 WL 3892865, (C.A.8 (Minn.), 2024). "[T]he Court concludes that law-abiding 18-to-20-year-olds are a part of "the people" referenced in the Second Amendment." *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex. 2022), appeal dismissed sub nom. *Andrews v. McCraw*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022); "We agree with Plaintiffs: the historical record shows that the Second Amendment protects young adults' right to keep and bear arms." *Jones,* 34 F.4th at 720. "[T]he Constitution's text, structure, and history affirmatively prove that 18-year-olds are covered by the Second Amendment." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 440 (4th Cir. 2021), as amended (July 15, 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021).[7] "Considering this analysis, the Court concludes 18-to-20-year-old law abiding citizens are part of "the people" who the Second Amendment protects. *Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 704 F.Supp.3d 687, 703 (N.D.W.Va., 2023)*,* appeal pending, 4th Cir. "18- to 20-year-olds fall within 'the people' ". *See Rocky Mountain Gun Owners v. Polis,* 2024 WL 4677573, at *23 (C.A.10 (Colo.), 2024). This authority is in line with Ninth Circuit precedent.

---

[7] Plaintiffs recognize the *Hirschfeld* opinion has been vacated. However, it remains persuasive authority. Plaintiffs cite to it as such.

In *Perez-Garcia* the Ninth Circuit found the litigants' status as pretrial releasees did not remove them from the People. Furthermore, one of the litigants had previously been convicted of a misdemeanor crime. "As to Fencl, specifically, we cannot conclude that his prior misdemeanor conviction or arrests should operate to categorically exclude him from the national community." *Perez-Garcia,* 96 F.4th at 1180. "We therefore conclude that Fencl and Perez-Garcia are among 'the people'" *Id.* Here, Plaintiffs are part of the national community because adults under 21 are full participants in American society. They can vote, enter into a contract and engage in all the other hallmarks of being a participant in society. Pursuant to circuit precedent and a consensus of courts, Plaintiffs are part of the People that have Second Amendment rights.

Plaintiffs are part of the People (or are bringing suit on behalf of members of the People) who seek to purchase, own, and possess firearms and ammunition for self-defense and other lawful purposes. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiff's] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. To be sure, it would be impossible for an individual to carry a handgun for self-defense if they were unable to purchase, own, and possess firearms and ammunition. Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the State] to show that [the challenged restriction] is consistent with this

Nation's historical tradition of firearm regulation." *Id.* at 2135.

The relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S. Ct. at 2135–36; *see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136, quoting *Heller*, 554 U.S. at 634–35. Although the Court in *Bruen* noted an academic debate surrounding whether courts should look to 1868 and Reconstruction (when the Fourteenth Amendment was adopted), the Court found no need to address the point as the result with respect to carry was the same. *Bruen*, 142 S. Ct. at 2138. But there can be no doubt that the actual analysis of the Court is focused on l791. *Lara,* 91 F.4th at134. ("the Second Amendment should be understood according to its public meaning in 1791.").[8] *See also Worth,*108 F.4th at 696 ("it is questionable

---

[8] *Bruen's* characterization of the Court's precedents as assuming that 1791 is the proper answer is an understatement. In *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), for example, the Court held that "more than 30" provisions of state law enacted "in the second half of the 19th Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding Era practice. *Id*. at 2258–59 (emphasis added). And even if modern laws alone could demonstrate a broad tradition of a regulation, there must at least be a strong showing that such

whether the Reconstruction-era sources have much weight."). Similarly, in *Connelly*, the Fifth Circuit refused to give any weight, post-*Rahim*i, to Reconstruction era and later laws proffered by the government. *United States v. Connelly*, --- F.4th ----, 2024 WL 3963874 at *9 (5th Cir. Aug. 28, 2024) ("Offering three laws passed scores of years post-Ratification (and a fourth passed nearly half a century beyond that) misses the mark by a wide margin.").

*Rahimi* confirms that the courts must apply "faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1891, quoting *Bruen*, at 29, and n. 7. That focus on "the balance struck by the founding generation" is repeated throughout the opinion. *Id* at 1898. That holding echoes *Bruen's* statement that "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. *Bruen*, 597 U.S. at 26-27. While the Court in *Rahimi* found it "unnecessary" to decide formally whether courts should "primarily rely on the prevailing understanding" in 1789 or 1868 (*Id* at 1898 n.1),

---

laws are common in the states, i.e., many more than six states. *See Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty for child rapists shows national consensus against it).

the Court did not even cite (much less rely on) a single Reconstruction Era or later statute, practice or tradition[9].

The historical analogues the State proffers must be "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population). *Bruen* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614). And in *United States v. Connelly* the 5th Circuit went on to reject the use of "three states, between 1868 and 1883, [which] barred citizens from carrying guns while drunk: Kansas, Missouri, and Wisconsin." WL 3963874 at *9. "Offering three laws passed

---

[9] Plaintiffs recognize that their position is in tension with *Wolford v. Lopez*, 116 F.4th 959 (C.A.9 (Hawaii), 2024). However, *Wolford* is subject to a pending en banc petition. *See Wolford v. Lopez* 23-16164 Doc. No. [105].

scores of years post-Ratification (and a fourth passed nearly half a century beyond that) misses the mark by a wide margin." *Id.*

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting to "affirmatively prove" its restrictions on public carry are constitutional the government must refer to historical analogues at the Founding and show those meet *Bruen*'s "how" and "why" standard. 142 S. Ct. at 2127, 2133. The 5th Circuit has found historical laws on carry cannot be used to justify restrictions on possession because they are not relevantly similar. *Connelly,* WL 3963874, at *8.

The Supreme Court's recent decision in *United States v. Rahimi* reaffirmed that firearms regulations must be justified via relevantly similar historical laws. "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations."

17

*Rahimi*, 144 S. Ct. at 1898. However, *Rahimi* cautioned "[e]ven when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.*

## D. There is No Historical Tradition of Disarming Adults

Adults historically had a right to own firearms and today those between the ages of 18 and 20 are adults. Moreover, during the Founding Era individuals between the ages of 18 and 20 had firearm rights.[10] Since *Bruen*, two federal circuits have found that there is no historical tradition prohibiting adults under 21 from owning firearms. *See Lara*, 91 F.4th at 140 (overturning Penn. ban on adults under 21 open carrying during emergencies); *See also Worth,* 108 F.4th at 698 (overturning Minnesota's ban on concealed carry for adults under 21). Even prior to *Bruen* the Ninth Circuit has found that there is no historical tradition of prohibiting adults under 21 from Second Amendment rights, albeit in a now vacated opinion. Despite *Jones* being vacated, it remains persuasive authority. And its historical analysis remains valid.

> Going back many centuries, able-bodied English men at least fifteen years old were compelled to possess personal arms and had to take part in both the militia and other institutions that required them to keep and bear personal arms. Second, the American colonists brought that tradition across the Atlantic: the colonial militias almost always included all men 18 and older, and other institutions involving keeping and bearing arms made it to our shores, too. Third, at the time

---

[10] Kopel, *supra*, at 533-588.

of the founding, all states required young adults to serve in the militia, and all states required young adults to acquire and possess their own firearms. Just after the founding, Congress established a federal militia, which included young adults, and required them to acquire and possess their own weapons.

*Jones*, 34 F.4th at 717.

"It is untenable to argue that the core of the Second Amendment right to keep and bear arms did not extend to 18– to 20–year olds at the founding." *Natl. Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 714 F.3d 334, 344 (5th Cir. 2013) (Jones, Dissenting). "Founding-era history confirms that the public understood the Second Amendment to cover 18-year-olds." *Hirschfeld*, 5 F.4th at 440. "That young adults had to serve in the militia indicates that founding-era lawmakers believed those youth could, and indeed should, keep and bear arms." *Lara*, 91 F.4th at 136.

The fact that the Founding Era did not prohibit adults under 21 from owning firearms should be the end of the matter. However, if this Court decides to review Reconstruction Era laws, Hawaii's ban fares no better. Plaintiffs are unaware of any state which prohibited adults under 21 from owning firearms or ammunition. Moreover, during the Reconstruction Period only five states banned the sale of firearms to minors and of those only two had a Second Amendment analog.

Of these five laws, three were passed in states without a Second Amendment analog in their state constitution. So only two states— Kentucky and Michigan—banned the sale of firearms to minors, *see*

1873 Ky. Acts 359, 1883 Mich. Pub. Acts 144, and had a Second
Amendment analog, *see* Ky. Const. of 1850, Art. 13, § 25; Mich.
Const. of 1850, Art. 17, § 7. These two laws—both passed over a
decade after the ratification of the Fourteenth Amendment—cannot
contravene the Second Amendment's original public meaning.

*See Jones,* 34 F.4th at 722 (footnotes omitted).[11]

A handful of outlier regulations do not establish a national tradition. *Bruen*, at
2133, 2153-54, 2156, 2147 n.22.[12] Moreover, if these outlier states were sufficient to
establish a historical tradition of prohibiting the sale of firearms, "these laws cannot
sufficiently establish that a prohibition on law-abiding 18-to-20-year-olds" owning
firearms is constitutional. *Firearms Policy Coalition, Inc.,* 623 F. Supp. 3d at 756.
Moreover, even where firearm sales to adults under 21 were restricted, they were
able to own firearms they acquired through parental transfers and the like. Unlike

---

[11] "Several of the Reconstruction-era laws pointed to by the Commissioner
prohibited sales of firearms to minors, but did not place restrictions on minors
receiving them from parents or even employers. And other proffered laws limited
firearm possession by those under the age of 16, but not the 18-to-20-year-old
cohort at issue in Minnesota's law." *Worth v. Harrington*, 666 F. Supp. 3d 902, 925
(D. Minn. 2023), aff'd sub nom. *Worth v. Jacobson,* 108 F.4th 677 (C.A.8 (Minn.),
2024) (footnotes omitted).

[12] *Bruen* rejected New York's reliance on three colonial statutes (1686 East New
Jersey, 1692 Massachusetts, 1699 New Hampshire), *id.* at 2142–44, three late-
18th-century and early-19th-century state laws that "parallel[] the colonial statutes"
(1786 Virginia, 1795 Massachusetts, 1801 Tennessee), *id.* at 2144–45, three
additional 19th-century state laws (1821 Tennessee, 1871 Texas, 1887 West
Virginia), *id.* at 2147, 2153, five late-19th-century regulations from the Western
Territories (1869 New Mexico, 1875 Wyoming, 1889 Idaho, 1889 Arizona, 1890
Oklahoma), *id.* at 2154–55, and one 19th-century Western State law (1881
Kansas), *id.* at 2155–56.

Hawaii law, none of these states banned intrafamilial transfers of firearms to adults under 21. And as shown above, Plaintiffs challenge this aspect of Hawaii law because Plaintiff Roache would accept a firearm and ammunition from his mother when he turns 18 but for Hawaii law. Thus, even if this Court were to find there is a historical tradition of banning sales to adults under 21, it should still strike Hawaii law to the extent it prohibits Plaintiff Roache's desired intrafamilial acquisition.

Similarly, the *Worth* Court rejected the argument that adults under 21 are too dangerous to be afforded Second Amendment rights. "[T]he record is devoid of statistics that Minnesota could have used to justify a conclusion that 18 to 20-year-olds present an unacceptable risk of danger if armed. After all, even using these recent statistics, it would be a stretch to say that an 18-year-old "poses a clear threat of physical violence to another." *Worth,* 108 F.4th 694. There is no historical tradition of prohibiting adults under 21 from owning and purchasing firearms and ammunition.[13] Pursuant to *Bruen*, the challenged Hawaii laws are unconstitutional. Thus, Plaintiffs have a very high likelihood of success on the merits.

_____

[13] The only negative precedent is the 10th Circuit's recent opinion in *Rocky Mountain Gun Owners v. Polis*, 2024 WL 4677573, (C.A.10 (Colo.), 2024). There, the 10th Circuit found that adults under 21 fall within the scope of the Second Amendment right. However, the 10th Circuit upheld the challenged law "because SB 23-169 is presumptively lawful as a law that imposes conditions or qualifications upon the sale and purchase of arms and thus does not fall within the protections of the plain text of the Second Amendment." *Id* at *23. This finding

## IV. Plaintiff will suffer irreparable harm

The remaining preliminary injunction factors follow readily. Plaintiffs will suffer irreparable harm because they will not be able to exercise their constitutional rights unless a preliminary injunction is granted. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). *See also Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is

---

contradicts controlling Ninth Circuit precedent and thus must be disregarded. *See Teixeira*, 873 F.3d at 677. Furthermore, Plaintiffs' claim is distinguishable in part because Plaintiff Roache challenges the law *as applied* to its restriction on interfamilial transfers to adults under 21. Complaint at fn. 29, 30.

"irreparable and having no adequate remedy at law.").

**V.      Granting the TRO/PI is in the Public Interest and Serves Equity**

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). [W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). It both serves equity and is in the public interest to end Hawaii's unconstitutional laws. This Court should issue a preliminary injunction because Plaintiffs satisfy all four prongs of the *Winters* test.

## VI.  Waiver of Bond is Proper and Appropriate Under These Circumstances

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, thus rendering a waiver both proper and appropriate.

## VII.  This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may

advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). There cannot be any serious dispute as to what Hawaii law is therefore the matter before this court is primarily legal in nature. Thus, this case is a prime candidate for consolidation.

## VIII.   <u>Conclusion</u>

Plaintiffs respectfully request this Court issue a preliminary injunction enjoining Hawaii prohibition on adults under 21 owning and acquiring firearms and ammunition both facially and *as applied* to Plaintiffs.

DATED:  Honolulu, Hawaii; November 19, 2024.

Respectfully submitted,
Counsel for Plaintiffs

*/s/Kevin Gerard O'Grady*
 Kevin O'Grady

*/s/ Alan Beck*
Alan Alexander Beck