Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH PINALES, JUDA ROACHE, ALOHA STRATEGICS LLC DBA DANGER CLOSE TACTICAL, JGB ARMS LLC, SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL FOR THE STATE OF HAWAII, <br><br> Defendant | CIVIL NO. 1:24-cv-00496 JAO-WRP <br><br><br> PLAINTIFFS' REPLY TO ANNE E. LOPEZ'S OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION |

## Table of Contents

I.      Plaintiffs Have Standing ...............................................................................1

II.     Adults Under 21 Are Part Of "The People" ................................................5

III.    Hawaii Law Is Inconsistent With Historical Tradition .............................8

IV.     Militiamen Were Required To Supply Their Own Personal Arms .........11

V.      The Remaining Preliminary Injunction Factors Support the Issuance of
an Injunction ..................................................................................................12

VI.     Conclusion ...................................................................................................15

# Table of Authorities

## Cases

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ............................14

*Baird v. Bonta*, 81 F.4th 1036 (C.A.9 (Cal.), 2023) ......................................... 13, 14

*Bowsher v. Synar,* 478 U.S. 714 (1986) ......................................................1

*Brown v. Ent. Merch. Ass'n*, 564 U.S. 786 (2011) ......................................12

*Distirct of Columbia v.Heller* 554 U.S. 570 (U.S. 2008) ................................ 5, 6, 7

*Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020) ....................11

*Hays v. City of Urbana, Ill.,* 104 F.3d 102 (7th Cir. 1997) ........................................3

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) .................................................4

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) .........................................................7

*Kipke v. Moore*, 695 F.Supp.3d 638 (D. Md. 2023) .................................................7

*Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) ...........13

*Maryland Shall Issue, Incorporated v. Hogan*, 971 F.3d 199 (4th Cir. 2020) ..........4

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) ...............................................12

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ...............................................15

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) ............................................................6

*New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111 (U.S., 2022) ................................................................................................................... passim

*Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) .......3

*Range v. Attorney General United States*, --- F.4th ----, 2024 WL 5199447 (3d Cir. Dec. 23, 2024) ........................................................................................7, 8

*Reese v. Bureau of Alcohol Tobacco Firearms & Explosives,* 647 F.Supp.3d 508 (W.D.La. 2022) ..........................................................................................2

*Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707 (9th Cir. 2022)...................15

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ..........1

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128 (9th Cir. 2024) ........4

*Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017)..........................................3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .......................6

*United States v. Allam*, 677 F.Supp.3d 545 (E.D. Tex. 2023)..................................12

*United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012) ...................................7

*United States v. Connelly,* 117 F.4th 269 (5th Cir. 2024).........................................8

*United States v Rahimi*, 602 U.S. 680 (2024).....................................................8, 11

*United States v. Quiroz*, 629 F.Supp.3d 511 (W.D.Tex. 2022) .................................7

*Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)..................................................................................3

*Worth v. Jacobson*, 108 F.4th 677 (C.A.8 (Minn.), 2024).............................. passim

## Statutes

18 U.S.C. § 922(b)(1)....................................................................................2

1856 Ala. Laws 17 ......................................................................................10

1856 Tenn. Pub. Acts 92 .............................................................................10

1859 Ky. Acts 245 § 23 ...............................................................................10

Haw. Rev. Stat. § 134-2(f)..............................................................................2

HRS § 134-7.7..............................................................................................1

## Other Authorities

Allen D. Candler, comp., 19(part 1) THE COLONIAL RECORDS OF THE STATE
    OF GEORGIA 138 (1910)......................................................................9

Kopel, David B. and Greenlee, Joseph, The Second Amendment Rights of Young
    Adults (January 16, 2019). 43 Southern Illinois Law Journal 495 (2019), U Denver
    Legal Studies Research Paper No. 18-28 ..............................................9

*University Church in Yale*, Yale University, https://church.yale.edu/history ..........12

In Defendant Lopez's ("Hawaii" or "the State") opposition to Plaintiffs' motion for preliminary injunction, Hawaii is unable to point to a single law which prohibited the ownership of firearms of adults under 21. Instead, it analogizes to voting rights, contract and other similarly inapposite laws to argue for a historical tradition that simply does not exist. Plaintiffs have established standing and the other factors for the issuance of a preliminary injunction are in their favor.[1]

## I.    Plaintiffs Have Standing

Hawaii argues that Plaintiffs have collectively not established standing.  But "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). This Court "need not consider the standing issue as to the" other Plaintiffs. *Bowsher v. Synar,* 478 U.S. 714, 721 (1986). Hawaii's only argument regarding Plaintiff Pinales's standing relies on a misunderstanding of federal law. Pinales alleges that he "would acquire, purchase, own and possess a firearm and ammunition" and that allegation includes both long guns, as well as handguns. Complaint ¶ 69. Hawaii argues that it is unclear what type of firearm Pinales wishes

---

[1] Plaintiffs challenge all of the Hawaii Revised Statutes which prohibit the acquisition of firearms and ammunition to adults under the age of 21 including HRS § 134-7.7. Plaintiffs' challenge to HRS § 134-7.7 is subsumed into their larger challenge to HRS § 134-7. Plaintiffs' respectfully request that this Court construe their challenge to include HRS § 134-7.7 as part of their challenge to HRS § 134-7. If this Court does not, Plaintiffs will amend their complaint after the resolution of these preliminary injunction proceedings to expressly list HRS § 134-7.7.

to acquire. And *if* that firearm is a handgun he would still be prohibited by federal law. Pinales is referring to a firearm which he could purchase legally but for Hawaii law. Thus, this argument should be dismissed immediately. Furthermore, even if this desire applies to handguns, Hawaii's arguments have no merit because it is legal to acquire a handgun from a private party under federal law and Hawaii state law (apart from the challenged laws).

It is unlawful for adults under the age of 21 to purchase handguns from a licensed dealer. 18 U.S.C. § 922(b)(1). "Thus, while federal law prohibits the direct purchase of handguns from FFLs by persons aged 18 to 20, such persons [under federal law] may still possess and use handguns, they may receive handguns as gifts, and they may purchase handguns through unlicensed, private sales." *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives,* 647 F.Supp.3d 508, 520 (W.D.La. 2022). And, if the challenged Hawaii law were enjoined, Pinales could legally purchase handguns through a private sale from a non-FFL or acquire one through a gift pursuant to Haw. Rev. Stat. § 134-2(f).[2] Thus, even if this Court were to construe Pinales's desire to obtain firearms as a desire to obtain handguns, Hawaii's standing

---

[2] "Moreover, there is room for concurrent causation in the analysis of standing, *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (holding that if a petition witness residency requirement was "at least in part responsible for frustrating [plaintiff's] attempt to fully assert his First Amendment rights in Virginia, the causation element of Lujan is satisfied"). *Constitution Party v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014).

argument is without merit. And Pinales' desire and intent to acquire long guns falls completely outside the ambit of Section 922(b)(1) entirely.

The State argues that Plaintiff Roache's claims are not ripe because he was 17 at the time the complaint was filed. Roache turned 18 on Dec. 15, 2024, prior to the filing of the State's response. Complaint ¶ 2. Claims can be brought before the effective date of a statute. "Long ago, the Supreme Court held that a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate—indeed, even if the law is not yet in effect." *Hays v. City of Urbana, Ill.,* 104 F.3d 102, 103 (7th Cir. 1997).[3] In any event, his claims are now ripe and thus subject to this Court's jurisdiction.

Hawaii argues that the Business Plaintiffs do not have standing because they have not proven that their customers would go through Hawaii's process to obtain a firearm.  But the Ninth Circuit has never required this analysis when determining the standing of businesses. *See Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (en banc) (holding that "Teixeira, as the would-be operator of a gun store, thus has derivative standing to assert the subsidiary right to acquire arms on behalf of his

---

[3] *See, e.g., Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (suit commenced four years before law was to take effect, and resolved on the merits by the Supreme Court two years before its effective date); *Virginia v. American Booksellers Association, Inc*., 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

potential customers"); *Kaahumanu v. Hawaii*, 682 F.3d 789, 797 (9th Cir. 2012) (holding that a wedding planner had standing to challenge permitting regulations on behalf of those who sought to get married). "Accordingly, vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id*. *See also Maryland Shall Issue, Incorporated v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020) (applying *Craig* to hold that a firearms dealer had standing to assert the Second Amendment rights of its customers). Hawaii has cited no case law which contradicts this precedent. Business Plaintiffs bring these claims on behalf of their 18 to 20-year-old customers who desire and intend to purchase firearms and ammunition but for the challenge regulations. Precedent requires a finding that Business Plaintiffs have standing.

SAF brings its claim on behalf of its members, including Plaintiffs Pinales and Roache, and has shown that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Stavrianoudakis v. U.S. Fish & Wildlife Serv*., 108 F.4th 1128, 1143 (9th Cir. 2024) (citation omitted). SAF has members who live in Hawaii who are between the ages of 18 and 20, including Plaintiffs Pinales and Roache who are impacted by the challenged laws.

Complaint ¶¶ 1, 2, 5, 103. Firearm rights are germane to SAFs purpose because one of its core purposes is "legal action focusing on the constitutional right to privately acquire, own and possess firearms and ammunition." Complaint ¶ 5. And neither the claim—that Hawaii's ban on firearm acquisition by adults 18-to-20-years-old—nor the requested declaratory and injunctive relief, require the direct participation of individual members in the suit. Thus, SAF easily fulfills the legal standard for representative standing.

## II.    Adults Under 21 Are Part Of "The People"

The State argues that adults between the ages of 18 and 20 do not have Second Amendment rights because they were not considered part of the political community at the time of the Founding. "Arguments of this type, focusing on the original contents of a right instead of the original definition—i.e., that only those people considered to be in the political community in 1791 "are protected by the Second Amendment," instead of those meeting the original definition of being within the political community—are 'bordering on the frivolous.' " *Worth v. Jacobson*, 108 F.4th 677, 690 (C.A.8 (Minn.), 2024). What is important is that 18 to 20-year-olds are included in the "political community" now. *Id* at 689.

*Heller* ruled that "the people" is a term of art that refers to "all members of the political community, not an unspecified subset." 554 U.S. 570, 596 (U.S. 2008). *Bruen* stated that, at a minimum, "ordinary, law-abiding, adult citizens []

5

are part of 'the people' whom the Second Amendment protects." *New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111, 2134 (U.S., 2022). "The Second Amendment…'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Id.* at 2131 (quoting *Heller*, 554 U.S. at 635). Additionally, the *two other* enumerated rights of "the people" — the First and Fourth Amendment — apply to all Americans regardless of age. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). Every American is part of "the people" – 18-20-year-olds are not cast aside from the plain text of the Second Amendment's nor its protections. Any age-based limitation must be found at the historical step.

Hawaii argues that at the time of the Founding, individuals under 21 could not vote or engage in certain other civic functions and thus, were not part of the people at the time of the Founding. Contrary to Hawaii's assertion, "the political community is not confined to those with political rights (eligible voters) at the founding." *Worth* 108 F.4th at 690. Pursuant to *Worth*, at the Founding, adults under 21 were part of the people. Even if Hawaii "were correct in its assertions about the political community's definition, the contents of that defined term have changed" and adults under 21 are part of the people today. *Id* at 690–91.

6

By the State's logic, women, nonwhites and nontaxpayers are not part of "the people" and can likewise be subject to the same firearms bans. That result is clearly unconstitutional. "It should go without saying that such race-based exclusions would be unconstitutional today." *Kanter v. Barr*, 919 F.3d 437, 458 n.7 (7th Cir. 2019) (Barrett, J., dissenting)( discussing laws disarming of slaves and Native Americans).[4] After all, "groups like women, Native Americans, and blacks may not have been part of the political community at the time of the founding but are today within the class that we refer to as 'the people.'" *United States v. Carpio-Leon*, 701 F.3d 974, 978 n.1 (4th Cir. 2012). Just as *Heller* rejected the idea that the Second Amendment protected only the original contents of the defined term "arms" and, instead, applied that original definition "to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." (*Worth*, 108 F.4th at 690 (quoting *Heller*, 554 U.S. at 582)), " '[t]he Second Amendment extends, prima facie,' to all members of the political community, 'even those that were not [included] at the time of the founding.' " *Worth*, 108 F.4th at 690 (quoting *Heller*, 554 U.S. at 580 & 582). *See also Range v. Attorney General United States*, --- F.4th ----, 2024 WL 5199447 at *4 (3d Cir. Dec. 23, 2024) (en banc) (finding that the people in in the First and Fourth Amendment context has no age restrictions). There

---

[4] *See also Kipke v. Moore*, 695 F.Supp.3d 638, 659 (D. Md. 2023) (Black Codes). *See also United States v. Quiroz*, 629 F.Supp.3d 511, 519-24 (W.D.Tex. 2022) (historically disfavored groups).

is "no reason to adopt a reading of 'the people' that excludes Americans from the scope of the Second Amendment while they retain their constitutional rights in other contexts." *Id.* By infringing on the right of *the people* to own firearms, Hawaii law "contradicts the Second Amendment's plain text." *United States v. Connelly,* 117 F.4th 269, 274 (5th Cir. 2024).

## III.    Hawaii Law Is Inconsistent With Historical Tradition

In order for its current restriction to meet constitutional muster, the burden is on the State to show a traditional of analogous historical regulation that matches both in "how" and "why" it was enacted. *See Rahimi*, 602 U.S. at 692 ("Why and how the regulation burdens the right are central to this [historical] inquiry"), citing *Bruen*, 597 U.S. at 29. The firearms regulations offered by the State, differ materially in both regards from the challenged laws. While the State argues that a more "nuanced approach" to this matter, because of some purportedly new and "unprecedented societal concern," shelters them from the demands of *Bruen* and *Rahimi*, they are mistaken. Op at 17. To be sure, 1791 is the relevant time period for understanding the Second Amendment's meaning. PI Memo at 14-15.

While the State argues that the problem it seeks to address is a new one unknown to the Founders—it points out, for example, that handguns became more widely available in the middle of the 19th century, *id*. at 41—the State apparently ignores or finds inconvenient, that it has not targeted handguns, but rather has targeted 18-to-20-

8

year-olds because it views *them* as immature and dangerous with firearms. But 18-to-20-year- olds were required by law at the Founding to be armed and there are no similar age-based restrictions from that period. "The lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131.

At that time, bans on firearm ownership by 18–20-year-olds did not exist. "[I]f earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Bruen*, 597 U.S. at 27. Indeed, the earlier generations did just that. "Most of the colonies required arms carrying under certain circumstances, such as when traveling out of town, or when going to public assemblies, especially to church."[5] *E.g.* a 1770 Georgia statute required those attending church to be armed and applied to all white males without specifying an age.[6]  At the time of the ratification, 18-20 year

---

[5] Kopel, David B. and Greenlee, Joseph, The Second Amendment Rights of Young Adults (January 16, 2019). 43 Southern Illinois Law Journal 495 (2019), U Denver Legal Studies Research Paper No. 18-28, at pg. 535 Available at SSRN: https://ssrn.com/abstract=3205664 or http://dx.doi.org/10.2139/ssrn.3205664
[6] Allen D. Candler, comp., 19(part 1) THE COLONIAL RECORDS OF THE STATE OF GEORGIA 138 (1910),
https://babel.hathitrust.org/cgi/pt?id=hvd.32044032308223&seq=144&q1=%22on
+any+Sunday+or+other+times,+to+any+church,+or+other+place+of+divine+wors
hip+within+the+parish+where+such+person+shall+reside%22, last accessed
January 10, 2025.

olds were no different than today and the Founders still chose to allow or even require them to be armed. That is evidence that Hawaii law is unconstitutional.

Hawaii cites a pre-Founding era law from New York addressing the illegal discharge of firearms. Op at 16. However, this law misses the mark because the "how and the why" are not remotely analogous to the State's flat ban on possession. The how of this law is different because it applied to anyone illegally discharging a firearm and the penalty was a monetary fine. *See* Spitzer Declaration at 23. The why of this law was to stop the dangerous and unlawful *use* of firearms *by anyone,* whereas the challenged laws' express goal is to disarm an entire subset of legal adults. Even if this Court were to entertain 1868 as the proper time period for the historical analysis – and it should not – Hawaii's proffered historical support from the mid 19th Century is equally unavailing. None of the proffered laws meet the demands of *Bruen* and *Rahimi* regarding the "how and why." The statutes cited deal with illegal discharge, concealed carry of certain weapons and lending particular, discrete categories of weapons to persons *under 18*. The State is grasping at straws and has come up empty handed.

Hawaii can only point to three states' laws from the mid-19th century which prohibited the sale of firearms to persons between 18 and 20 years of age. *See* 1856 Ala. Laws 17; 1856 Tenn. Pub. Acts 92; 1859 Ky. Acts 245 § 23. These restrictions are outliers. And *Bruen* commands that historical "outlier" requirements of a few

jurisdictions are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. Even including laws from the late 19th Century laws, there were only a minority of states which prohibited the sale of firearms to minors. *See Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246, 2258–59 (2020) ("more than 30" provisions of state law enacted "in the second half of the 19th Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding Era practice.") As argued in the moving papers, outlier laws such as these are insufficient to establish a tradition. PI Memo at 16. The State cannot point to a single law that banned the possession of firearms by legal adults. And the proffered historical support is materially "distinct from the "how" and "why" of Hawaii's complete ban on ownership of firearms and ammunition. *Worth,* 108 F.4th at 696. Hawaii has failed to meet its burden under *Bruen* and *Rahimi* and so the challenged laws must be struck down.

## IV.    Militiamen Were Required To Supply Their Own Personal Arms

The State asserts that the Militia laws should not be viewed as evidence that at the time of the Founding individuals aged 18-20 had an individual right to acquire and possess firearms, because that firearm ownership was a "duty" associated solely with their militia service. Again, the historical record does not support their assertion. *E.g.* after the Civil War, the 39th Congress "decided to disband the [Southern] militias but not to disarm their members" because doing so "would

violate the members' right to bear arms." *McDonald v. City of Chicago,* 561 U.S. 742, 780 (2010). The State's reliance on firearms restrictions in schools is also misplaced. As a threshold matter, the rules of private institutions have never been held to constitutional standards because the constitution does not apply to private actors. Indeed, Universities had many practices that if compelled by the government, would have violated students' constitutional rights. *See University Church in Yale*, Yale University, https://church.yale.edu/history (explaining that until 1927, chapel attendance was mandatory) (last accessed May 19, 2024). Thus, "founding-era college rules are not persuasive sources to discern the constitutional rights of its students." *Worth,* 108 F.4th at 696. The historical restrictions placed on students say nothing about restrictions the government may impose on peaceable legal adults. *Cf. Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 795 n.3 (2011). To the extent some of these schools were public, these laws were still inapposite. "The prohibitions applied to students only". *See United States v. Allam*, 677 F.Supp.3d 545, 572 (E.D. Tex. 2023). They were not age based restrictions because they "applied to all students regardless of age." *Id.* And "they applied only to possession within a school or in an area where school functions were taking place." *Id* at 575. The how and the why these restrictions likewise are inapposite to the challenged Hawaii law.

## V.    The Remaining Preliminary Injunction Factors Support the Issuance of an Injunction

Despite Hawaii's claims to the contrary, binding Ninth Circuit precedent cited by Plaintiffs confirms the remaining preliminary injunction factors militate in Plaintiffs' favor. Relying on case law from the economic injury context, Hawaii argues that some parts of the laws challenged were passed in 1994 and thus the harm to plaintiffs cannot be irreparable. This isn't a case about economic injury, it's a case about the violation of constitutional rights.  A demonstration that constitutional rights have been violated is sufficient to demonstrate irreparable harm. When a "plaintiff seeks a preliminary injunction because of an alleged constitutional violation," and having shown a likelihood to win on the merits, "that showing will almost always demonstrate he is suffering irreparable harm as well." *Baird v. Bonta*, 81 F.4th 1036, 1042 (C.A.9 (Cal.), 2023). The irreparable nature of a constitutional violation cannot be downplayed by the State simply because it has gotten away with violating the Constitution for 30 years.  Hawaii's only support deals with "economic injury." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1216 (9th Cir. 1984). Moreover, here, there is no delay. The ammunition restrictions challenged were passed last year and individual Plaintiffs only recently entered the age range where they are impacted by the 18–20-year-old ban

As to the other preliminary injunction prongs, balance of the equities and public interest, Hawaii's arguments are without merit.  The Ninth Circuit's precedent from *Baird* is clear.  "[W]e have held that plaintiffs who are able to

"establish[ ] a likelihood that [a] policy violates the U.S. Constitution ... have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Baird,* 81 F.4th at 1042 (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014)). Hawaii attempts to re-insert the interest balancing analysis which was expressly rejected in *Bruen* by arguing it is appropriate to consider in these last two prongs. *Bruen*, 142 S.Ct. at 2118. In support of this attempted circumvention, the State offers two Declarations, both of which speak directly to purported public safety harms that would stem from the granting of the requested injunction. Elizabeth E. Cauffman argues that adults between 18 and 20 have reduced self-control because their brains have not fully developed. The State relies on her declaration to argue it is not in the public interest to grant a preliminary injunction. Not only is it entirely inappropriate to attempt to insert this declaration, not on the issue of their likelihood to win on the merits – because the State knows they cannot under *Bruen* – but there is no indication that brain development has changed since the Founding Era. The Founding generation already took into consideration the age of brain development and found "the right of law-abiding, responsible citizens to use arms" for self-defense" trumps all other interests. *Bruen*, 142 S.Ct. at 2118.

Similarly, Louis Klarevas argues that adults between the ages of 18-20 are involved in a disproportionate amount of mass shootings. This is precisely the sort

of interest-balancing that *Bruen* specifically prohibits. The Ninth Circuit has been remarkably clear in stating it is "always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). This Court should not take the bait and be led by the State back into an interest balancing test the Supreme Court just recently corrected multiple circuits for improperly using. Plaintiffs have shown a likelihood of success on the merits, and the remaining preliminary injunction prongs are fulfilled absent an extraordinary showing which Hawaii has not made.

Furthermore, Hawaii disputes the scope of the injunction that should be granted. However, it does not dispute that this Court can grant an injunction against the challenged laws if this Court finds that Plaintiffs' fulfill the standard for a preliminary injunction. Thus, there is no reason that this Court should not simply grant an injunction against the challenged laws if it finds that Plaintiffs fulfill the standard for a preliminary injunction.

## VI.    Conclusion

A preliminary injunction should issue.

Dated: January 10, 2025.

Respectfully submitted,

_/s/Kevin O'Grady_____
Kevin O'Grady
*Counsel for Plaintiffs*


_/s/Alan Alexander Beck_
Alan Alexander Beck
*Counsel for Plaintiffs*

16