# Exhibit 2

**Cornell Law Library**
## Scholarship@Cornell Law: A Digital Repository

Historical Theses and Dissertations Collection     Historical Cornell Law School

1892

# Contracts of Infants

Clayton Isaac Miller
*Cornell Law School*

Follow this and additional works at: http://scholarship.law.cornell.edu/historical_theses

 Part of the Law Commons

Recommended Citation

Miller, Clayton Isaac, "Contracts of Infants" (1892). *Historical Theses and Dissertations Collection.* Paper 272.

This Thesis is brought to you for free and open access by the Historical Cornell Law School at Scholarship@Cornell Law: A Digital Repository. It has been accepted for inclusion in Historical Theses and Dissertations Collection by an authorized administrator of Scholarship@Cornell Law: A Digital Repository. For more information, please contact jmp8@cornell.edu.

# CONTRACTS OF INFANTS

-----ooOoo-----

# GRADUATING THESIS .

-----OF-----

# CLAYTON ISAAC MILLER .

--- ·∙·ooOoo-----

# CLASS OF '93 .

# CORNELL UNIVERSITY

# LAW SCHOOL

C O N T R A C T S     O F     I N F A N T S .

All persons are infants, in legal contemplation, until they arrive at majority.  The period of majority differs in different countries, but the general rule is twenty-one years.  By the Civil law, which obtains in some of the old countries, emancipation does not take place until the person is twenty-five.

It is supposed that the selection of the age of twenty-one, rather than some other period, at which majority should be attained, originated in the old feudal system, as at that time the infant was first presumed to be physically capable, if a male, of doing knight's service, and, if a female, not before of a suitable age, to marry any one upon whom duties would devolve.

Bingham on Infancy, 1.

The common law of England from the earliest times has fixed twenty-one as the period of absolute majority for both sexes.  The same rule applies in most of the United State though in some of the western states females have an enlarged capacity to act at the age of eighteen.

Stephenson v Westfall, 18 Ill. 209.

The day upon which the infant attains his lawful age is on the beginning of the day next preceding the twenty-first anniversary of his birth.  The case of State v Clark,

3 Harr. (Del.) was one which arose over the right of a person to vote before his twenty-first birthday.  Chief J. Bayard in his opinion said:  "It is to be observed that a person becomes of age on the first instant of the last day of the twenty-first year next before the anniversary of his birth; thus, if a person were born at any hour of the first day of January, 1801, (even) a few minutes before twelve o'clock of the night of that day, he would be of full age at the first instant of the 31st of December, 1821, although nearly forty-eight hours before he had actually attained the full age of twenty-one, according to years, days, hours, and minutes, because there is not in law in this respect any fractions of a day; and it is the same whether a thing is done upon one moment of the day or another.

- - - - - - - -

## II.

We now come to our main topic, the contracts of infants.  A contract as defined by Story is a deliberate engagement between competent parties upon a legal consideration to do or to abstain from doing some act.  In its widest sense it includes records and specialties, but the term is usually employed to designate only simple or parol contracts.  By parol contracts is to be understood not only verbal and unwritten contracts, but all contracts of record not under seal.  This is strictly the legal signification of the term contract, inasmuch as that reciprocity of consideration and mutuality of agreement, which are necessary to constitute a parol agreement, are not necessary in obligations of record and in specialties.

## III.

### VOID ACTS OF AN INFANT.

The method taken in law to protect an infant against the effects of his own weakness has been to consider his acts as not binding, and allow him to rescind all contracts entered into by him, with certain exceptions.

There are, however, two degrees in which his acts or instruments appear to be not binding:  First, by being as if they never existed--wholly void; and, secondly, as being defeasible at the election of the party with whom they originat-

ed; that is, voidable only.

Bingham on Infancy, 8.

A void act never is and never can be binding, either on the party with whom it originated, or on others. No person claiming through or under it can succeed, and the void act can never at any time or by any means be confirmed or rendered valid.

Bingham on Infancy 9.

Any person interested may take advantage of a void act of an infant, which is not the case when the act is simply voidable.

There is much confusion in the older books on the subject of void and voidable acts and contracts. But the courts at a later day go on the theory that infancy being a personal privilege, that he should be bound by no act which is not beneficial to him,and their contracts are divided into three classes:  (1) Void (2) Voidable (3) Binding.

The main difficulty with the courts was to distinguish between void and voidable.

Mr. Bingham, after an exhaustive review of the English cases, decided that the only safe rule to follow was that "acts which are capable of being legally ratified are voidable, and acts which are incapable of being legally ratified are absolutely void.

Bingham on Infancy 234.

Another rule laid down by Chief J. Parker in the case of Whitney v Dutch, 14 Mass. 457 was that "whenever the act done may be for the infant's benefit, it shall not be considered void; but he shall have his election when he comes of age to affirm or avoid it. Another rule, cited and approved by Judge Story, was that "where the court can pronounce that the contract is for the benefit of the infant, then it shall bind him, and where it is prejudicial to the infant, it shall be void; and where it is of an uncertain nature, the infant shall have his election of affirming or avoiding it.

But these old rules have been to some extent modified, and the tendency of the courts at the present time is to regard all contracts of infancy voidable only.

In support of this doctrine may be cited the case of Fetiow v Wiseman, 40 Ind. 184, where the authorities are collected and reviewed, and the rule is stated as follows: "First, that an infant's contracts for necessaries are as valid and binding upon the infant as the contracts of an adult; and that such contracts cannot be disaffirmed, and need not be ratified before they can be enforced. Second, the contract of an infant appointing an agent or attorney is absolutely void and incapable of ratification. Third, any contract that is illegal by reason of being against a statute or pub-

lic policy is absolutely void and incapable of ratification.
Fourth, all other contracts made by an infant are voidable
only, and may be affirmed or disaffirmed by the infant at his
election when he arrives at his majority."

So also an infant's bond with penalty and for the
payment of interest was formerly held to be void on the ground
that it cannot possibly be for his benefit.

Fisher v Mowbray, 8 East. 330.

So a bond executed by a minor as surety is void.

Allen v Minor, 2 Call. 70

An infant's promissory note as surety is void.

Maffles v Wightman, 4 Conn. 376.

But the old authorities at the best are not very
clear upon this point. All of them seem to admit a distinc-
tion between void and voidable, and yet seem to disagree with
respect to the acts to be classed under either of those heads.

One result in which they all appear to agree is
stated by Lord Mansfield in the case of Zouch v Parsons, 3
Burr., that whenever the act done may be for the benefit of
the infant, it shall not be considered void, but that he shall
have his election when he comes of age to affirm or avoid it,
and this appears to be the only clear and definite proposi-
tion which can be extracted from the authorities. The appli-
cation of this principle is, however, not free from difficulty,

for when a note or other simple contract is made by an infant himself, it may be made good by his assent without any inquiry whether it was for his benefit or to his prejudice. For if he had made a bad bargain in a purchase of goods, and gives his promissory note for the price, and when he comes of age had agreed to pay the note, he would be bound by his agreement although he might have been ruined by the purchase.

I think the reasoning laid down in Whitney v Dutch, 14 Mass. 157, is correct, and the rule which is followed to-day, namely, "All simple contracts by an infant which are not founded on an illegal consideration are strictly not void but voidable, and may be made good by ratification. They remain a legal substratium for a future assent until avoided by the infant, and if instead of avoiding he confirm them when he has a legal capacity to make a contract, they are in all respects like contracts made by an adult.

As an example of the trend of the courts in this direction may be mentioned the case of Yates v Lyon, 61 Barb. 205. The text-books lay down the rule that an assignment made by a firm, one of whom is an infant, for the benefit of creditors will be void, and cite the above case as an authority for that proposition; but a careful reading of the case will show that the court, although they held that assignment void, yet were inclined to hold that if the infant be justly indebt-

ed to his creditors, they ought to be paid.  So also, as be-
fore stated, it was formerly held that bonds given by infants
with penalties attached were void, but according to later de-
cisions they are only voidable.

      Weaver v Jones, 24 Ala. 420.

      Same rule in regard to promissory notes.

      Swasey v Vanderheyden, 10 Johns. 33.

      Fetiow v Wiseman, 40 Ind. 140.

      So also as to the assignment or indorsement of a
promissory note or bill of exchange.

      Nightingale v Withington, 15 Mass. 272.

      Professor Parsons lays down the rule in general
terms that    "the contract of an infant (if not for necessa-
ries) is voidable; that is, he may disavow it and so annul it,
either before his majority or within a reasonable time after
it;" and in a note appended to this declaration, while frankly
admitting that the rule, that those contracts are voidable only
which are for the infant's benefit, and those which are prej-
udicial are absolutely void, is adopted and recognized by
many authorities, advances the opinion that this distinction
is now practically obsolete, and unqualifiedly asserts that
the more recent authorities hold that all contracts of infants,
with the exception perhaps of the appointment of an attorney,
are voidable only and none absolutely void.

Parsons Mercantile Law 4.

## IV.

### ACTS BINDING UPON THE INFANT.

Contracts for necessaries are binding upon an infant.

The ground upon which the contracts of infants for necessaries are enforced has been said to be not because they are contracts, but only "since an infant must live as well as a man" the law gives a reasonable price to those who furnish him with necessaries.

This class includes by far the greatest number of cases in which an infant is liable on his contracts. The legal term "necessaries" is a relative term, not strictly limited to such things as are absolutely requisite for support and subsistence, but to be construed liberally and varying with the degree and estate, the rank, fortune, and age of the infant.

Rainsford v Fernvick, Carter R. 215.

His real and not his ostensible fortune and circumstances, however, constitute the test and criterion as to whether the articles are necessaries or not. Story v Perry, 4 Carr. & P. 526.

Another rule laid down in the case of Peters v Fleming, 6 Mees. & Wels. 42, is as follows: "The term necessaries includes such things as are useful and suitable to

the state and condition in life of the party, and not merely
such as are required for bare subsistence.  It is a question
for the jury whether the articles are such as a reasonable
person of the age and station of the infant would require for
real use."

Food, lodging, clothes, medicine, and education, to
use concise words, constitute the five leading elements in the
doctrine of the infant's necessaries.  But to apply a prac-
tical test we must construe these five words in a very liber-
al sense, and somewhat according to the social position, for-
tune, prospects, age, circumstances, and general situation of
the infant himself.

Schouler 622.

Articles of mere ornament are not necessaries.  The
true rule to be taken is that all such articles as are purely
ornamental are not necessary and are to be rejected, because
they cannot be required for any one; and for such matters,
therefore, an infant cannot be made responsible.  But if they
were not of this description, then the question arises whether
they were bought for the necessary use of the party, in order
to support himself properly in the degree, state, and station
of life in which he moves.  If they were for such articles
the infant may be made responsible.

Porters v Fleming, 6 M. & W. 42.

An infant's board bill while attending school is included among necessaries for which he may be compelled to pay.

Kilgore v Rich, 83 Me. 305.

In fact anything which is needful to the infant's wants comes under the head of necessaries.

No express promise is necessary in order to render an infant liable for necessaries.

Gray v Ballou, 4 Wend. 403.

And though an infant is liable on his implied contract for necessaries, yet it seems well settled that he is not bound by his contract to pay a sum certain therefor as an account stated, but only for what they are reasonably worth.

Beeler v Young, 1 Bibb. 519.

Oliver v Woodroffe, 4 M. & W. 650.

As a general rule it is the tradesman's duty to acquaint himself with the infant's circumstances and necessities, as well as to take notice of supplies by other tradesmen; he credits him at his peril.

Davis v Caldwell, 12 Cush. 513.

Kline v L' Armoureux, 2 Paige Ch. 419.

But under certain circumstances inquiry as to whether the articles are necessaries may be dispensed with by the party firnishing the infant.  Thus in the case of Dalton

v Gib, 7 Scott 117, where an infant, living in a style of some

pretension, purchased of a tradesman in the course of four

months silks to the amount of thirty-five pounds, some of which

**were delivered in the presence of her mother**, it was held that

**this presence of the mother when the daughter purchased** the

**articles**, and her omission to reject those which were deliv-

ered to the daughter rendered inquiry unnecessary.  But if the

wants of the infant be supplied by his parent or guardian, or

by any other person, he cannot render himself liable for ar-

ticles which would otherwise be necessaries.

   Angell v Mc Clellan, 16 Mass. 31.

   Waiting v Toll, 9 Johns. 141.

   Among those articles not adjudges necessaries in

ordinary cases are articles of mere luxury for the infant

himself, or for the entertainment of his friends, horses and

grain or harness for them, unless necessary in carrying on

his business, loans of money, liquor, etc.

   Brooks v Scott, 11 M. & W. 67.

   Wharton v Mc Kenzie, 5 Q. B. 606.

   Merriam v Cunningham, 11 Cush. 40.

   I think the correct rule is laid down in Peters v

Fleming, before cited, and the one generally followed by the

courts, viz., "that the term necessaries includes such things

as are useful and suitable to the estate and condition in

life of the party, and not merely such as are required for

bare subsistence; and it is a question for the jury whether

the articles are such as a reasonable person of the age and

station of the infant would require for real use."

## V.

### RATIFICATION AND CONFIRMATION OF INFANTS' CONTRACTS.

It is a universal rule that an infant cannot in any

way affirm his avoidable acts or contracts during his minority.

Reeves on Domestic Relations 349.

Corey v Burton, 32 Mich. 30.

Dunton v Brown, 31 Mich. 182.

But after an infant has arrived at full age he may

if he chooses ratify any such acts or contracts.  The mode in

which they may be ratified is sometimes prescribed by statute,

but in the absence of any statutory provision the court in

Kline v Beebe, 6 Conn. 494, lays down the following rules,

and claims either will be sufficient:  (1) By an express rat-

ification.  (2) By the performance of acts from which an af-

firmance may reasonably be implied.  (3) By the omission to

disaffirm within a reasonable time.  In England the question

of ratification is settled by statute providing that the rat-

ification to be binding must be in writing signed by the par-

ty.

Stat. 9 Geo. IV, c. 14.

In this country some of the states have similar provisions.

Thurlow v Gilmore, 40 Me. 378.

The authorities seem to be considerably at variance in states where we have no statute, which is generally the case, as to what will constitute an affirmance.  One line of authorities holds that a direct promise after majority is necessary to establish a direct contract made during minority, and that a mere acknowledgement will not have that effect.

Brocton v Sears, 4 Allen 95.

But this doctrine is repudiated in Henry v Root, 33 N. Y. 545.  Judge Davies, in his opinion in this case, cites a large number of cases, and discusses this point at great length, and holds that any act or declaration which recogniz-es the existence of the promise as binding is a ratification of it.  As in the case of agency, anything which recognizes as binding an act done by an agent, or by a party who has acted as agent, is an adoption of it."  But at the best what amounts to a ratification is a very close question.  A direct promise to pay would seem to be a complete ratification, but then again the question arises as to what is a direct promise.

I think the rule laid down by Judge Davies in Henry v Root, supra, correctly states the doctrine in New York: "That a new promise, positive and certain, equivalent to a new contract, is not essential; but a ratification or confirmation

of what was done during minority is sufficient to make the
contract obligatory."

Practically the same view is held in Whitney v
Dutch, 14 Mass. 457, where the court says:  "The terms of the
ratification need not be such as to import a direct promise
to pay.  All that is necessary is that the infant after attain-
ing majority should expressly agree to ratify his contracts
by words, oral or in writing, or by acts which import a rec-
ognition and a confirmation of the promise."

When there is no express promise the general rule
is that acts which show ownership and enjoyment of the prop-
erty with knowledge of all the circumstances, or recognition
of the validity of the contract, without any act or declara-
tion of disaffirmance, are sufficient; as retaining possess-
ion, using, selling, mortgaging, or converting the property
to the infant's own use.

Chapin v Shafer, 49 N. Y. 407.

Also part payment.

Henry v Root, 33 N. Y. 526.

A ratification of the contract has often been infer-
red from the silence of the infant after his arrival at full
age, coupled with his retaining possession of the consideration,
or availing himself in any manner of his conveyance; such as
his reception of rent under a voidable lease.

Morgan v Morgan, 1 Atk. 489.

The omission to disaffirm a contract within a reasonable time has been held sufficient ratification.

2 Kent's Com. 295.

Dallas, J., in the case of Holmes v Blogg, 8 Taunt. 35, said: "The infant is bound to give notice of the disaffirmance of a voidable contract within a reasonable time." In this case the court held that he ought to give notice within four months. But this point has been discussed in several cases in different states, and they hold what will be a reasonable time will be governed by the circumstances in each case.

Jenkins v Jenkins, 12 Ia. 195.

Stout v Merrill, 35 Ia. 56.

Wallace's Lessee v Lewis, 4 Harr. (Del.) 80.

State v Plaisted, 43 N. H. 414.

VI.

AVOIDANCE OF INFANTS' CONTRACTS.

A large majority of an infant's contracts may be disaffirmed by him at his election. But having once exercised that right he cannot retract. Thus it was held in the case of Edgerton v Wolf, 6 Gray 458, that if he surrenders property received under a contract of purchase, evidently intending thereby to give up all his interest in it, he cannot afterwards recall such surrender and retake the property. As for the

time of the exercise of this right, contracts respecting personal property may be disaffirmed during the infancy of the maker, or within a reasonable time after he attains his majority.

Chapin v Shafer, 49 N. Y. 407.

Stucker v Yorder, 33 Ia. 173.

But the rule is otherwise in regard to real estate. In the case of Zouch v Parsons, 3 Burr., the question arose whether the conveyance could be avoided by him during infancy, and it was held that it could not. This case has been deemed conclusive authority on this point, and has been generally followed since.

Emmons v Murray, 16 N. H. 386.

Bool v Mix, 17 Wend. 119.

The modes of disaffirmance are various according to the nature of the act or contract to be disaffirmed, and the circumstances of the particular case. The general rule is that there must be some positive and decided act of dissent adverse to the original act.

Jackson v Carpenter, 11 Johns. 539.

Thus a contract of service may be disaffirmed by simply leaving the employer and engaging in the service of another, or by an action for the value of the labor performed.

Whitmarsh v Hall, 3 Denio 375.

A conveyance of the same land after majority by a deed inconsistant with the first has been held sufficient.

Irvine v Irvine, 9 Wall. 617.

But it is held in New York before suit can be brought by an individual to recover the possession of lands conveyed during infancy, he must make an entry upon the lands and execute a record deed to a third person, or do some other act of equal notoriety in disaffirmance of the first deed, such as demanding possession or giving notice of an intention not to be bound by the first deed.

Voohries v Voohries, 24 Barb. 150.

Illinois, however, and some other states by statute make conveyances of minors binding unless disaffirmed within three years after his majority; if not within that time they will be upheld.

Blaukenship v Stout, 25 Ill. 132.

It seems to me that this is the reasonable rule, and one which ought to be adopted in all the states. Three years is a reasonable time, and it seems to me would do away with a great deal of litigation to adopt such a rule generally.

## VII.

MUST THE INFANT RESTORE THE CONSIDERATION UPON RESCINDING?

The next point to be considered is whether or not the infant must return the consideration upon repudiating the

contract, and this is a mooted question at this time with the courts.  In the case of Bartholomew v Finnemore, 17 Barb. 428, where an infant purchased a horse of the defendant and paid for him in property which he delivered to the defendant, and after he had kept the horse about two months, during which time by misuse the horse was greatly lessened in value, and then tendered him back and demanded a return of the property, it was held that he could not recover the property without returning the consideration received by him.  Justice Hand in discussing this point said:  "After the infant has enjoyed the benefit of the property in whole or in part, there is no equity in his avoiding his contract and reclaiming the property he delivered in exchange, without restoring the consideration, or at least an equivalent."

This same view is held in the following cases: Holmes v Blogg, 8 Taunt. 508.  Taft v Pike, 14 Vt. 415. Kitchen v Lise, 11 Paige 107.

But in the case of Carpenter v Carpenter, 45 Ind. 142, Judge Worden reviewed a large number of cases, and holds that the consideration need not be returned.  In his opinion he says:  "The contracts of infants except those for necessaries are void or voidable; and those in relation to personal property may be rescinded during infancy.  The false representations made by the plaintiff (the infant), as alleged, that

he was of full age, does not make the contract valid, and does
not estop him from setting up his infancy in avoidance of the
contract, although it may furnish ground of an action against
him for tort. . . . . Upon looking into the case the
plaintiff was not bound to make any tender of the property at
all before he could maintain the action.  Upon the avoidance
of the contract by the plaintiff, the case stood as if none
had been made, and the plaintiff's claim to his horse became
at once complete."

But it is held in the case of Green v Green, 69 N.Y.
553, if the infant has consumed, or wasted, or disposed of the
consideration received, he can still disaffirm, and that
without restoring the consideration, and the other party has
no remedy.

Stout v Merrill, 35 Ia. 47, is frequently cited by
the different authorities as holding that the infant cannot
rescind without restoring the consideration; but a careful
reading of the case will show that it holds precisely with
the case of Green v Green, 69 N. Y. , supra, that if he has
the consideration he must return it; but if he has wasted it
during minority, he can recover back his property without re-
turning the consideration.  The judge in that case cites Sec.
2540 of the Statutes of Iowa which reads as follows:  "A minor
is bound not only for contracts for necessaries, but also his

other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all money or other property received by him by virtue of the contract, <u>and remaining within his control at any time after his attaining his majority</u>." So construing this statute liberally it would seem to imply that if the infant had wasted the consideration before majority, he could disaffirm without restoring the consideration. I think that the weight of authority will uphold the following rule: If the infant has or has had the consideration since attaining his majority he must in order to affirm return the consideration; but if he has wasted the consideration before reaching majority, then he can disaffirm the contract and recover back his property without returning the consideration.

Green v Green, 69 N. Y. 553.

Stout v Merrill, 35 Ia. 47.

Chandler v Simmons, 97 Mass. 508.

One principle seems to be firmly established by the courts: That the infant cannot on attaining his majority hold to an exchange or purchase made by him during infancy and its advantages, and thus affirm that while pleading his infancy to avoid the payment of the purchase money.

Kitchen v Lee, 11 Paige 107.

Kerr v Bell, 44 Mo. 120.

Klein v Bell, 6 Conn. 494.

Thus an infant mortgagor cannot repudiate his pur-
chase money mortgage and still keep the property.

Curtis v Mc Dougal, 26 O. St. 66. .

Otterman v Moak, 3 Sandf. Ch. 431.

White v Brouch, 51 Ind. 210.

The effect of the disaffirmance of a contract which
is wholly executory is to release the adult as well as the
infant, and place them both in statu quo.  If it is executory
only on the part of the adult, the infant may recover back
whatever he has advanced, or the value of services rendered
by him under it, unless he has received benefit from it before
disaffirmance, in which case he cannot recover.

Millard v Howlett, 19 Wend. 301.

The aim of the courts on this point seems to be to
do justice as nearly as possible between the parties, and if
it is possible without taking away too many of the rights of
the infant, to place them in the position in which they were
at the beginning of the transaction.

### VII.

#### LIABILITY OF INFANT FOR TORTS AND FRAUDS.

Infants are generally held responsible the same as
adults for torts committed by them, and when they are liable
at all the remedies and rules of evidence are the same against

them as against adults.

Haile v Lillie, 3 Hill 149.

Hartfield v Roper, 21 Wend. 615.

Bullock v Babcock, 3 Wend. 391.

So some authorities hold that an infant who hires
a horse to go to a place agreed on, but goes to some other
place in a different direction, he is liable in trover or con-
version for an unlawful conversion of the horse.

Homer v Thyng, 3 Pick. 392.

Morton, J., who delivered the opinion in this case,
said:  "The defense in this case is infancy.  It is contended,
too, that this action is founded in contract, and that the
defendants cannot be ousted of this defence by changing the
form of the action from contract to tort.  Infants are liable
in actions arising ex delicto, but not those arising ex con-
tractu.  The defendant, however, contends that there is a
qualification of this rule, and that infants are liable for
positive wrongs only, and not for constructive tort.  But we
know of no such distinction. . . . . . . It is true an infant
cannot become a trespasser by any prior or subsequent consent,
but he may be guilty of tort as well by omission of duty as
by the commission of positive wrongs.  He is also liable for
frauds as well as torts, and his liability is to be determined
by the real nature of the transaction, and not by the form of

the action.    Although an infant shall not be charged in tro-
ver for goods sold to him with a knowledge of his infancy,
and although an action will not lie against an infant for af-
firming himself to be of full age in the execution of a con-
tract, yet detinue will lie against an infant for goods deliv-
ered upon a special contract for a specific purpose after the
contract is avoided, and assumpsit will lie against an infant
for money embezzled, for the court will look through the form
of the action into the tortious nature of the transaction."
But Pemrose v Curren, 3 Rowle (Penn.) squarely denies the
proposition, and holds in a similar case that an infant may
plead his infancy in bar of an action for damages, and the
reasoning of Judge Rogers in this case seems to me to be
sound.   He says:   "This is a transaction in which parents and
guardians have a deep interest, and particularly those who
educate their children from under their own eye, at a distance
in our seminaries of learning.   It amounts to this:   If a
keeper of a livery stable, or an innkeeper, whose business it
is  to let out horses and carriages to hire, chooses to en-
trust them to minors contrary to the assent and wishes of
their parents, and an injury is done by the young man in the
folly and heedlessness of youth, going to a different place
or farther than was intended, the father must either pay the
damages or suffer his child to be disgraced by imprisonment.

.   .   .

. . . . .  If the plaintiff should succeed, there would be
no want of pretences upon which infants might be charged, and
there would be an end to the protection which the law so wise-
ly affords them. . . ."  Judge Rogers also in his opinion
severely criticizes Homer v Thyng, and says that the funda-
mental error in that case consisted in considering the conduct
of the infant as a violation of a contract, whereas there was
no contract which could be enforced.  While the Pennsylvania
rule seems to me to be the better one of the two, yet I think
 the weight of authority is in favor of the Massachusetts rule.

New York follows the Massachusetts rule, but limits
it somewhat.  In the case of Moore v Eastman, 1 Hun 578, Judge
Gilbert laid down the following rule:  "To render an infant
liable, who has hired a horse, in an action for trespass, he
must do some willful and positive act which amounts to an
election on his part to disaffirm the contract; a bare neglect
to protect the animal from injury, and to return it at the
time agreed upon is not sufficient.  If he willfully and in-
tentionally injure the animal, an action of trespass will lie
against him for the tort; but not if the injury complained of
occurred in the act of driving the animal through his unskil-
fullness and want of knowledge, discretion, and judgment."

I think there is no doubt but that the proposition
laid down in Homer v Thyng, that an action will not lie against

an infant who obtains property by representing himself to be
of full age, has been overthrown by the weight of authority.

   Badger v Phinney, 13 Mass. 343.

   Wallace v Morse, 5 Hill 391.

   Kilgore v Jordan, 17 Tex. 349.

   Hemphill, C. J., in his opinion in the Texas case,
above cited, gives an exhaustive review of the law upon this
point, going back to the Roman Law and following it up to
date, and he declares that the authorities are sufficient to
show that the fraudulent acts and concealments or representa-
tions of infants when made with a view to deceive and defraud
others will be as binding upon them as upon adults, and their
contracts will be enforced against them.

   From this brief review of the contracts of infants
I think the following propositions, with slight exceptions,
are substantially correct, and can be maintained in New York:

   (1 )  The contracts of infants, except for neces-
saries, which are binding, are not void but voidable.

   (2)  That the infant cannot affirm his voidable
contracts until he arrives at majority.

   (3)  That he can disaffirm his contracts with re-
gard to personalty at any time, but contracts in relation to
real property cannot be disaffirmed until he reaches majority.

   (4)  That the affirmance of his contracts may be

express or implied, and what will be an implied ratification depends upon the circumstances in each case.

(5)  That if the infant has the property in his possession at the time of disaffirming, or has had it since he attained his majority, he must return the consideration upon disaffirming.

(6)  That the infant is liable for his willful torts and false representations the same as adults.