IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH PINALES, ET AL., | CIV. NO. 24-00496 JAO-WRP |
| Plaintiffs, | ORDER DENYING MOTION TO STAY (ECF NO. 58) |
| vs. | |
| ANNE E. LOPEZ, | |
| Defendant. | |

**ORDER DENYING MOTION TO STAY (ECF NO. 58)**

Before the Court is Defendant's[1] Motion to Stay this action ("Motion to Stay" or "Motion") pending the Ninth Circuit's resolution of *PWGG, LP v. Bonta* (Appeal No. 25-2509) ("*PWGG*"), another case involving a Second Amendment challenge to a state's age-based restriction on firearms. *See* ECF No. 58. Plaintiffs[2] oppose the requested stay. *See* ECF No. 60.

---

[1] Anne E. Lopez is the named Defendant, acting in her official capacity as the Attorney General of the State of Hawai'i. The Court refers to Defendant as "the State."

[2] Plaintiffs are Elijah Pinales, Juda Roache, Aloha Strategics LLC DBA Danger Close Tactical, JGB Arms LLC, and the Second Amendment Foundation.

For the following reasons, the Court DENIES the Motion and declines to stay the case at this time. The Court would, however, consider revisiting the issue if developments in the Ninth Circuit render a stay more appropriate.

## I. BACKGROUND

This case presents a Second Amendment challenge to Hawaiʻi statutes that require people to be 21 years or older to acquire, own, or—in effect—possess firearms. *See* ECF No. 49 ¶ 9. Plaintiffs include: (1) individuals between 18 and 20 years old who would obtain a gun but for the State's age restriction; (2) firearms dealers that would sell firearms and ammunition to people 18 and older; and (3) the Second Amendment Foundation, a non-profit foundation that "seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs." *Id.* ¶¶ 1–5. In essence, Plaintiffs claim that the State's prohibition infringes on 18- to 20-year-olds' Second Amendment right to keep and bear arms. *See id.* ¶ 12.

Plaintiffs initiated this action and moved to preliminarily enjoin the State's age restriction on November 20, 2024. *See* ECF Nos. 1, 2. The State opposed, ECF No. 35, and after holding a hearing, the Court denied the Motion for Preliminary Injunction on February 7, 2025, ECF No. 45 ("PI Denial Order").

In denying the Motion for Preliminary Injunction, the Court engaged in the two-step analysis set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,

597 U.S. 1 (2022).  *See* ECF No. 45 at 21–56.  *Bruen*'s first step mandates that courts consider whether the plain text of the Second Amendment covers the challenged conduct.  *See Bruen*, 597 U.S. at 17.  At the second step, courts must ask whether the challenged "regulation is consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 18.  Here, considering the likelihood of success, the Court determined that the State's age restriction falls within the text of the Amendment because 18- to 20-year-olds are among "the people."  ECF No. 45 at 26–27.  Implicit in the Court's ruling was the conclusion that the State's restrictions on firearm and ammunition possession and acquisition affect the right to "keep and bear" firearms.  Proceeding to *Bruen*'s second step, the Court concluded—at least at the preliminary injunction stage—that Reconstruction-Era laws banning transfer of pistols and other concealable arms to people under 21 years old were sufficiently analogous to the State's current laws to justify the restriction.  *See* ECF No. 45 at 48–56.

      Plaintiffs did not appeal the Court's denial of preliminary injunction and instead filed their First Amended Complaint on March 18, 2025.  The State answered, ECF No. 50, and Magistrate Judge Porter entered the Rule 16 Scheduling Order, ECF No. 55.  A non-jury trial is currently scheduled for July 20, 2026, and the dispositive motions deadline is February 20, 2026.  *See id.* at 1–2.

On May 6, 2025, the State moved to stay the case pending resolution of *PWGG*. ECF No. 58. Plaintiffs filed their opposition on May 20, ECF No. 60, and the State its reply on May 28. The Court elects to decide the Motion without a hearing. *See* LR 7.1(c).

## II. LEGAL STANDARD

District courts possess the discretion stay proceedings in their own court. *See Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005) (recognizing that discretionary power to stay a case may be exercised pending resolution of proceedings in a different forum). The Ninth Circuit has set forth three non-exclusive factors that courts must weigh when evaluating a potential stay:

> (1) [T]he possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.

*Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023) (internal quotation marks and citations omitted).

4

### III. DISCUSSION

The State argues that a stay is appropriate because the Ninth Circuit's resolution of *PWGG* will narrow the issues involved in—or even be dispositive of—the instant case, and that the equities favor a stay. *See generally* ECF No. 58-1. Plaintiffs respond that the issues underlying *PWGG* are distinct from those in this case, and that Plaintiffs will suffer harm from an open-ended delay in the proceedings. *See generally* ECF No. 60.

The Court first analyzes *PWGG* to determine to what extent it bears on the instant case, and thus whether the third factor weighs in favor of a stay. The Court then turns to the equitable considerations. Ultimately, while an opinion in *PWGG* may affect the instant case, it is not so directly on point that any efficiencies outweigh the potential harm of a delay to Plaintiffs.

### A. *PWGG* and the Efficiency of a Stay (Third Factor)

The State stakes much of its request for a stay on the third factor, arguing that the resolution of *PWGG* will materially affect this case such that a stay would preserve judicial and party resources. *See* ECF No. 58-1 at 9–13. While an opinion in *PWGG* could be dispositive, and some issues may be narrowed for this Court, the underlying case there is distinct enough from the instant case that any resulting judicial economy may be limited.

*PWGG* involves a Second Amendment challenge to section 27510 of the California Penal Code by individuals between 18 and 20 years old, firearms dealers, and Second Amendment rights organizations. *See Chavez v. Bonta*, — F.Supp.3d —, 2025 WL 918541, at *1–2 (S.D. Cal. Mar. 26, 2025). That statute generally prohibits federally licensed firearms dealers from selling guns to people under 21 (subject to certain exceptions). *Id.* at *1. Unlike the Hawaiʻi statutory scheme, California law "does not prohibit 18-to-20-year-olds from owning, possessing, or carrying firearms, and does not create a ban on acquisition." *Id.* at *6. For example, 18- to 20-year-olds in California may acquire a gun as a gift from an immediate relative. *Id.* Subject to some qualifiers, California 18- to 20-year-olds may also purchase certain firearms from licensed dealers if they have a valid hunting license. *See id.* Likewise, some 18- to 20-year-olds who serve or have served in the armed forces or law enforcement may purchase certain guns. *See id.*

Resolving cross-motions for summary judgment, District Judge M. James Lorenz rejected the plaintiffs' Second Amendment challenge and ruled in favor of California. *See id.* at *1. At *Bruen*'s first step, Judge Lorenz found that 18- to 20-year-olds are among "the people." *See id.* at *4–5. He concluded, however, that section 27510's restriction falls outside the plain text of the Second Amendment because it doesn't infringe on the plaintiffs' right to "keep and bear" arms. *See id.*

6

at *5–7.  The district court reasoned that section 27510 constitutes a "presumptively lawful" commercial restriction on the sale of arms as described in *Heller*.[3]  *Id.* at *5.  And, in the Ninth Circuit, such "commercial restrictions presumptively do not implicate the plain text of the Second Amendment at the first step of the *Bruen* test," unless the regulation "meaningfully constrains" access to firearms.  *See B & L Prod., Inc. v. Newsom*, 104 F.4th 108, 119–20 (9th Cir. 2024).  The *Chavez* plaintiffs argued that section 27510 did exactly that, but the district court rejected the contention, explaining that every year thousands of 18- to 20-year-olds purchase guns via the exceptions to the restriction.  *Chavez*, 2025 WL 918541, at *6–7.  In short, the district court concluded that the plaintiffs failed to sustain their burden on the first step of *Bruen*.  *Id.* at *7.  Still, Judge Lorenz proceeded to the second step historical analysis as an alternative ground for denying the plaintiffs' motion for summary judgment.  *See id.*

At the second step, the *Chavez* district court relied on declarations from some of the same experts that submitted evidence here.  *See id.* at *8–9.  The order notes that around the time of the Founding, "parents had the power to regulate the

---

[3]  *Heller* noted "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008).

activities of their children until they reached the age of 21," and that the "militia laws are consistent with the Founding Era restrictions placed on the 18-to-20-year-olds' ability to purchase firearms," because many of the states required parents to provide firearms to militia members under 21 years old.  *See id.* at *9–10.  The court also relied on some of the same nineteenth century laws that this Court cited in its PI Denial Order.  *See id.* at *11–12; ECF No. 45 at 42–45.

In support of a stay, the State highlights the similarities between *PWGG* and the instant case.  For example, the Ninth Circuit will almost certainly have to decide whether 18- to 20-year-olds are included within "the people."  ECF No. 58-1 at 10, 12.  More generally, the State points out that both the California and Hawaiʻi laws set the age limit at 21, that "both cases require[] a determination of whether such restrictions implicate the plain text of the Second Amendment," and that the Ninth Circuit may shed light on what types of laws are relevant historical analogues under step two of *Bruen*.  *Id.* at 11–13.

It's the differences between the cases, however, that suggest that any efficiency of a stay would be limited.  The central issue in the order on appeal is absent here:  whether California's law restricting most sales to 18- to 20-year-olds

falls within the plain text of the Second Amendment at *Bruen*'s first step.[4]  By contrast, Hawai'i's effective ban on possession indisputably affects Plaintiffs' right to "keep and bear" firearms.  Put differently, the basis of the district court's holding in *Chavez* is whether the California law constitutes a presumptively valid commercial restriction on firearms.  Applying binding Ninth Circuit precedent, the district court concluded that it was.  Any holding or analysis that the Ninth Circuit provides on that issue would be irrelevant to this case.  And while the Court recognizes that the issues in *PWGG* need not be controlling to warrant a stay, *see In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1086 (9th Cir. 2024), there is a significant difference between a regulatory regime that allows for 18- to 20-year-olds to obtain firearms in a variety of circumstances and one that doesn't.[5]

Further, much of this Court's analysis in the PI Denial Order addressed whether historical gun regulations were sufficiently analogous to justify Hawaii's

---

[4]  Although the other issue under *Bruen*'s first step, whether 18- to 20-year-olds are among the "people," would be dispositive if the answer were "no," the Court notes that the Ninth Circuit has previously declined to exclude groups from "the people." *See*, *e.g.*, *United States v. Perez-Garcia*, 96 F.4th 1166, 1179–80 (9th Cir. 2024) (concluding pretrial releasees are part of the "people").

[5]  Indeed, as just one example, Plaintiff Pinales wishes to receive a gift of a firearm from his mother, *see* ECF No. 49 at ¶ 75—something he apparently could do in California but couldn't do in Hawai'i.  *Compare* Cal. Penal Code §§ 27510 & 27875(a), *with* HRS §§ 134-2 & 134-7.7.

near-total possession ban for 18- to 20-year-olds. *See* ECF No. 45 at 42–56. But the district court in *Chavez* only conducted *Bruen*'s second step as an alternative reason for upholding the California law, meaning that the Ninth Circuit may not reach the matter. And even if the Ninth Circuit does consider that alternative holding, the differences in scope between the laws may render the Ninth Circuit's analysis only tangentially pertinent to this case. For example, if the Ninth Circuit upholds the California law on *Bruen*'s second step, the difference of *how* the California and Hawaiʻi laws burden the right to bear arms would remain. *See United States v. Rahimi*, 602 U.S. 680, 692 (2024) ("Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding."). In other words, even if the historical regulations permit California's law, they would not necessarily justify the broader restriction under Hawaiʻi law.

Thus, the Court concludes that while there is some overlap between the instant case and *PWGG*, the weightiest questions involved in the cases are different. Any efficiency in waiting for *PWGG* would therefore likely be limited. The third factor is thus either neutral or only slightly in favor of the State's request for a stay.

**B.     The Equities of a Stay (First and Second Factors)**

The State argues that the possibility of wasted resources and the lack of "any material harm" to Plaintiffs support its Motion to Stay.  *See* ECF No. 58-1 at 14–15.  Plaintiffs, for their part, respond that they "are suffering irreparable harm every moment that they are subject to the challenged laws." ECF No. 60 at 15.  In light of the relatively limited efficiencies that might be gained by waiting for the Ninth Circuit to resolve *PWGG*, and that Plaintiffs *may* be suffering constitutional injury, the Court concludes that the equities support denying the State's Motion.

"Even if there are efficiencies to be gained by a stay, the district court must also weigh the relative hardships that a stay might cause." *In re PG&E*, 100 F.4th at 1087 (citation omitted).  When "there is even a fair possibility" a stay may harm someone else, the applicant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.  Or, as the State recognizes, "[t]he pertinent inquiry is whether a 'stay imposes a hardship on Plaintiffs that outweighs the efficiencies to be gained by the stay.'" ECF No. 58-1 at 13 (quoting *In re PG&E*, 100 F.4th at 1087).

Here—to the extent it articulates any prejudice it will suffer—the State cites concerns about wasted resources litigating while a potentially dispositive appeal proceeds.  *See* ECF No. 58-1 at 14–15.  But "being required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the

meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.  The State also warns of the possibility of inconsistent rulings, which may require proceedings on remand, if the Court decides the case before *PWGG* concludes.  *Id.* at 15.  Such a scenario, while possible, is speculative at this point.  Further, because of the differences between the cases, the Court suspects that issues on remand in that scenario may be relatively narrow (e.g., remand would be straightforward if the Ninth Circuit concludes 18- to 20-year-olds fall outside the scope of "the people").

      Turning to the Plaintiffs' claims of hardship, to start, Plaintiffs spill a lot of ink about:  the estimated timing of the *PWGG* appeal; which Ninth Circuit panel the case will be assigned to; potential en banc proceedings; the timing of events in this case; and whether the State's requested stay is "indefinite."  *See* ECF No. 60 at 7–14.  For the most part the Court finds Plaintiffs' contentions at best speculative and at worst a bit hyperbolic in its timeline estimates.  *See* ECF No. 61 at 4–7 (rebutting Plaintiffs' timing estimates).  Still, Plaintiffs' point that the State's requested stay may prove lengthy is well-taken, and so the Court considers whether they may suffer during that time.

      Plaintiffs primarily contend that they "are suffering irreparable harm every moment that they are subject to the challenged laws" because of the constitutional nature of their claimed injury.  *See* ECF No. 60 at 15–16.  As they note, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  That legal principal is unassailable, but as the State responds, it "presumes that Plaintiffs' constitutional arguments are meritorious," and this Court has already found that Plaintiffs have failed to establish the likelihood of success requirement to obtain a preliminary injunction.  *See* ECF No. 61 at 9.  The State also argues that the challenged age restriction has been on the books for over 30 years, and that Plaintiffs' delay in challenging it suggests a lack of hardship.  *See id.*  The Court, however, finds that the *possibility* of constitutional injury is sufficient to deny the stay.

      While it's true that the Court concluded that Plaintiffs failed to establish a likelihood of success, that ruling by nature was preliminary and in no way conclusive on the constitutionality of the law.  The Court was also careful to note that the "case touches on a few of the open and hotly-contested issues in Second Amendment challenges," and that legal landscape was "quickly-shifting."  ECF No. 45 at 19–20.  Under those circumstances it would be foolhardy for the Court to act as if there isn't a "fair possibility" Plaintiffs are suffering constitutional harm pending this lawsuit.  *See Landis*, 299 U.S. at 255.  Further, because of the nature of the challenge to the age restriction, the individual plaintiffs in this action may age out of their claims before they're resolved.  Even if other plaintiffs could be found for the case to proceed, the individual plaintiffs that initiated this action may

lose their day in court.  *See Swartz v. Dave's Killer Bread, Inc.*, 2023 WL 11965054, at *2 (N.D. Cal. Sept. 1, 2023) (denying motion to stay in part based on the fact that stay would delay plaintiffs' day in court).

All in all, the Court finds that the equities currently tend in favor of Plaintiffs and outweigh any limited efficiency that may be gained from a stay.  As this case and *PWGG* proceed, though, those considerations may shift, so the Court urges the parties to keep it updated on the status of the appeal.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies the Motion to Stay.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, June 13, 2025.



Jill A. Otake
United States District Judge

CIV. NO. 24-496-JAO-WRP, *Pinales*, *et al. v. Lopez*; Order Denying Motion to Stay (ECF No. 58)