Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
The Law Office of Kevin O'Grady
1164 Bishop Street, Suite 1605
Honolulu, HI 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH PINALES et. al. | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 24-00496 JAO-WRP |
| | ) |
| v. | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| ANNE E. LOPEZ, in her Official | ) PLAINTIFFS' MOTION FOR |
| Capacity as the Attorney General | ) SUMMARY JUDGMENT, EXHIBITS |
| of the State of Hawaii | ) 1-8 |
| | ) |
| Defendant. | ) |
| | ) TRIAL: July 20, 2026 |
| | ) JUDGE: Hon. J. Jill A. Otake |
| | ) HEARING DATE: N/A |
| | ) |
| | ) |

**Table of Contents**

I.   Introduction.................................................................................................1

II.  The Parties and Statement of Facts ...............................................2

  A.   Plaintiffs Elijah Pinales and Juda Roache .................................2

  B.   Plaintiffs Aloha Strategics and Plaintiff JGB Arms...................3

  C.   Plaintiff Second Amendment Foundation ...................................3

  D.   Defendant Attorney General Anne E. Lopez ..............................4

  E.   Challenged Hawaii Laws.................................................................4

  F.   There Are No Facts in Dispute .....................................................5

III. Legal Standard..............................................................................5

IV.  Argument ......................................................................................5

  A.   Plaintiffs' Conduct is within the plain text of the Second Amendment ...7

   1.   Plaintiffs are Part of the People. ............................................7

   2.   Plaintiffs Conduct is Protected by the Second Amendment .................8

  B.   The Challenged Laws Must be Supported by a Historical Traditional
       10

  C.   There is No Tradition of Disarming Adults Based on Their Age ..........11

  D.   Precedent Dictates the Challenged Laws Are Unconstitutional. ...........12

  E.   Three Federal Circuits Have Struck Down Similar Laws.......................14

  F.   Misapplication of the *Bruen* Analysis Led the Fourth and Eleventh
       Circuits to Misguided Conclusions  ...............................................17

   1.   Laws Restricting the Rights of Minors do not Support the
        Disarmament of Legal Adults ........................................................18

    **G.   The Voidability Doctrine Did Not Apply to Firearms ..............................21**

**V.     Conclusion .......................................................................................25**

# TABLE OF AUTHORITIES

**Cases**

*B&L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) ....................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...5

*Coates v Wilson* [(1804) 5 Esp. 152; 170 ER 769]..................................................23

*Crocker v. Spencer*, 1824 WL 1335 (Vt. Feb. 1824)..............................................25

*District of Columbia v. Heller* 554 U.S. 570 (2008)..............................................5, 8

*Drummond v. Robinson Township*, 9 F.4th 217 (3d Cir. 2021)..................................6

*Epperson v. Nugent*, 57 Miss. 45 (1879) ...............................................................22

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011) ....................................................9

*Fry v. Canfield*, 4 Vt. 9 (1831)...............................................................................25

*Goldstein v. Hochul*, 680 F. Supp. 3d 370 (S.D.N.Y. 2023) ...................................23

*Hirschfeld v. ATF*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) ..............................................................................................................8

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)...............................8, 9

*Jenner v Walker*, (1868) 19 LT Rep (NS) 398 .......................................................22

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th (9th Cir. 2022).......................................................................................................8

*Jordan v. Coffield,* 70 N.C. 110 (1874) .................................................................22

*Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025) ............ 8, 12, 15, 17

*McCoy v. BATFE*, 140 F.4th 568 (4th Cir. 2025)........................................... passim

*McCullen v. Coakley*, 573 U.S. 464 (2014)...................................................6

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ........................................18

*N.Y. State Rifle & Pistol Ass'n v. Bruen* 597 U.S. 1 (2022). ............................. passim

*New Hampshire Mut. Fire Ins. Co. v. Noyes*, 32 N.H. 345 (1855) ................. 19, 23

*Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025)....................................9, 13

*NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc) ............................. passim

*Peters v Fleming* (1840) 6 M & W 42; 151 ER 314................................................22

*Rainwater v. Durham,* 11 S.C.L. 524 (S.C. Const. App. 1820) .............................25

*Reese v. Bureau of Alcohol*, 127 F.4th 583 (5th Cir. 2025).......................... 8, 15, 16

*Rhode v. Bonta,* 145 F.4th 1090 (9th Cir. 2025).........................................9

*Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024) ....................8

*Saunders Glover & Co. v. Ott's Adm'r,* 12 S.C.L. 572 (S.C. Const. App. 1822)…………………………………………………………………...24, 25

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) .................................9

*U.S. v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024)...................................8

*United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025)...............................7

*United States v. Rahimi*, 602 U.S. 680 (2024)....................................... 6, 10, 18, 20

*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024)...................................... 10, 11, 13

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024) ............................................8, 14

**Statutes**

18 U.S.C. § 922(b)(1) ..................................................................15

18 U.S.C. § 922 (c)(1)……………………………….………………15

HRS § 134-2(a) ................................................................................4

HRS §134-2(d)(1)……………………..…………………………….4

HRS §134-2(h)……………………………………………………….4

HRS § 134-7(g)……………………………………………………….4

HRS § 134-7.7……………………………..………………………….4

Militia Act of 1792 Stat. 271, §1 (1792)..............................................12

**Other Authorities**

1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF
    ENGLAND 453 (St. George Tucker ed., 1803)……………………………19, 20

JAMES KENT, COMMENTARIES ON AMERICAN LAW 195–96 (1827).......23

Miller Clayton Isaac, "Contracts of Infants" (1892)................................22

https://bit.ly/4gGntCv...................................................................25

http://bit.ly/3KBhGSp...................................................................24

https://www.americanrifleman.org/content/hunting-guns-in-colonial-america/.....24

**Rules**

Fed. R. Civ. P. 56(a)......................................................................5

**Treatises**

Austen-Baker, Richard and Hunter, Kate (2020) Infants' Contracts : Law and
    Policy in the 18th and 19th Centuries. Journal of Contract Law, 36 (4). pp. 1-24
    ..............................................................................................22

CENSUS FOR 1820 (Washington, Gales & Seaton 1821) ....................................25

Harland, D.J. "The Contractual Capacity of Minors - A New Approach" (1973) 7
Sydney LR No. 1 41 ..................................................................................22

## I.     Introduction

Plaintiffs are individual residents of Hawaii aged between 18 and 21 years old, and a membership based non-profit gun rights organization seeking to protect the rights of its similarly situated members. Plaintiffs challenge Hawaii law to the extent that it 1) prohibits the acquisition and possession of firearms to adults who are under 21 and 2) prohibits the acquisition and possession of firearm ammunition to adults who are under 21. The right to acquire and possess firearms is implicated by the plain text of the Second Amendment. Thus, pursuant to Supreme Court precedent, Defendant Lopez ("the State" or "Hawaii") must demonstrate that there is a well-established historical tradition of completely prohibiting legal adults based on their youthful age from possessing ammunition and firearms. Such a tradition does not exist and even in the modern era, Hawaii law is an extreme outlier as it is the only State which completely prohibits the acquisition of firearms and ammunition. For the reasons set out below, Hawaii's prohibitions are violative of the Second Amendment as applied to Hawaii through the Fourteenth Amendment.  Plaintiffs filed their verified complaint on November 20, 2024

[Docket No. 1] and their Verified Amended Complaint ("VAC") on March 18, 2025 [Docket No. 49].[1]

## II.     The Parties and Statement of Facts

### A. Plaintiffs Elijah Pinales and Juda Roache

Plaintiff Elijah Pinales ("Pinales") is a natural person, an adult male, over the age of 18 and under the age of twenty-one (hereinafter an "adult(s) under 21"), nineteen (19) years old, a resident of the State of Hawaii, residing in Honolulu County and is a citizen of the United States.  VAC at ¶ 1. Plaintiff Juda Roache ("Roache") is a natural person, an adult male under 21"), eighteen (18) years old, a resident of the State of Hawaii, residing in Honolulu County and is a citizen of the United States. VAC ¶ 2.  But for the actions of State of Hawaii, challenged in this lawsuit, Plaintiffs Pinales and Roache intend to and would acquire, purchase, own, and possess firearms and ammunition consistent with federal law. *Id.* ¶¶ 1-2.  They are both members of the Second Amendment Foundation ("SAF"). *Id.*   In addition to desiring and intending to acquire firearms and ammunition on the commercial market, both Plaintiffs Pinales and Roache would be able to acquire a firearm and ammunition by interfamilial gift from their respective mothers, should such gifts be lawful *See* VAC Exhibits 4-5. And Pinales and Roache would accept those firearms and ammunition. VAC ¶ 75 and fn. 31.

---

[1] All references will be to the Verified Amended Complaint unless stated otherwise.

2

## B. Plaintiffs Aloha Strategics and Plaintiff JGB Arms

Aloha Strategics LLC DBA Danger Close Tactical, (hereinafter "DCT") and JGB Arms LLC, (hereinafter "JGB"), are businesses authorized to operate in the state of Hawaii. VAC ¶¶ 3, 4. DCT is located in Honolulu County. VAC ¶ 3. JGB is located in Kauai County. VAC ¶ 4. DCT and JGB are federally licensed firearms dealers and are legally authorized to sell firearms and ammunition to purchasers in a retail setting in the state of Hawaii and respectively in the County of Honolulu and County of Kauai. VAC ¶¶ 3, 4. DCT and JGB have customers who are at least eighteen years old and under the age of twenty-one years old, "adults under 21", who are not otherwise disqualified under federal and state law to acquire, buy, own and possess firearms and ammunition and who want to acquire, buy, and possess firearms and ammunition. *Id.* DCT and JGB desire to engage in business with and sell firearms and ammunition to buyers who are at least eighteen years old and also under the age of twenty-one years old, and intends to and would do so, but for the State laws challenged here and the criminal prosecution that would follow. *Id.* DCT and JGB are both members of SAF. *Id.*

## C. Plaintiff Second Amendment Foundation

Plaintiff Second Amendment Foundation (hereinafter "SAF"), is a non-profit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. VAC ¶ 5. SAF seeks to

preserve the effectiveness of the Second Amendment through educational and legal action programs. *Id.* SAF has over 720,000 members and supporters nationwide, including members in Hawaii. *Id.* SAF brings this action on behalf of itself, its members and similarly situated members of the public. *Id.* Many of SAF's individual Hawaii members, including Plaintiffs Pinales and Roache and business members DCT and JGB, have been harmed by Defendant's enforcement of the prohibition on the lawful sale of firearms and ammunition to 18-20-year-olds. *Id.* Furthermore, Defendant's actions and failures alleged herein have caused SAF to dedicate resources that would otherwise be available for other purposes. *Id.*

### D. Defendant Attorney General Anne E. Lopez

Defendant Anne E. Lopez is the Attorney General of the State of Hawaii and is sued in her official capacity and is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the acquisition, sale, purchase, ownership and possession of firearms and ammunition. VAC ¶ 6.

### E. Challenged Hawaii Laws

Plaintiffs challenge HRS §§134-2(a), 134-2(d)(1), 134-2(h), 134-7(g), and 134-7.7, and Defendant's policies of enforcing those laws both as applied to the individual Plaintiffs, their customers and members and facially. VAC ¶¶ 11,12.

### F. There Are No Facts in Dispute

Plaintiffs' facts are straightforward and not in reasonable dispute. There are no material issues of fact that are in dispute in this litigation. The remaining questions are purely issues of law, appropriate for this Court to address.

### III.    Legal Standard

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### IV.    Argument

In *District of Columbia v. Heller*, the Supreme Court found that the Second Amendment codifies "an individual right to keep and bear arms.". 554 U.S. 570, 595 (2008). In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Court expanded on *Heller* and found "the Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may " 'bear' arms in public for self-defense." 597 U.S. 1, 33 (2022). Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen,* 597 U.S. at 38 (emphasis added). By analogy, the general right to own firearms cannot be restricted absent exceptional

circumstances. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 2. *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the government fails to meet its burden, then the government's restriction is unconstitutional.

The challenged Hawaii laws are both historical and modern-day outliers. As shown below, historically no state or colony completely banned the acquisition and possession of firearms to adults under 21. And in the modern era, Hawaii is the only state that completely bans the acquisition and possession of ammunition and firearms by adults under 21. Even prior to *Bruen*, the Third Circuit found outlier laws are more likely to be unconstitutional. "The more "exceptional" a rule, the more likely the government has overlooked less burdensome 'options that could serve its interests just as well.' " *Drummond v. Robinson Township*, 9 F.4th 217, 222 (3d Cir. 2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 490 (2014)).

The Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680, 691 (2024) did not change this analysis. Rather, it reaffirmed *Bruen's* holding

that firearms regulations must be justified via relevantly similar historical laws. "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id* at 692. There is no legitimate reason to preemptively disarm any adult, including those age 18-20. As shown below, Hawaii law cannot stand under *Bruen's* legal test.

## A. Plaintiffs' Conduct is within the text of the Second Amendment

If the Plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 2. Plaintiffs Pinales and Roache, as well as SAF's similarly situated members are part of "the People" as contemplated by the Second Amendment, and their proposed conduct – acquiring and possessing firearms – falls squarely within the plain text of keeping and bearing arms.

### 1. Plaintiffs are Part of the People.

Plaintiffs are among the People afforded Second Amendment rights. Plaintiffs are "undoubtedly a member of the national community," they are "part of "the people" and the "Constitution presumptively protects" [their] right to possess a firearm." *United States v. Duarte*, 137 F.4th 743, 753 (9th Cir. 2025). A consensus of courts has found 18-to-20-year-old Americans are, like other subsets of the American public, among "the people" to whom Second Amendment rights extend.

*See Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 438 (3d Cir. 2025); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 116 (10th Cir. 2024); *Worth v. Jacobson*, 108 F.4th 677, 692 (8th Cir. 2024); *Hirschfeld v. ATF*, 5 F.4th 407, 418-34 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021); *Jones v. Bonta*, 34 F.4th 704, 717-21 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022); *Reese v. Bureau of Alcohol*, 127 F.4th 583, 595 (5th Cir. 2025). No federal appeals court has found adults under 21 are not part of the people. As Plaintiffs are part of the People, the remaining question is whether their proposed conduct is within the scope of the Second Amendment right.

## 2. Plaintiffs Conduct is Protected by the Second Amendment

Here, Plaintiffs' conduct is within the text of the Second Amendment because they, their customers, and members, wish to acquire and possess firearms for all lawful purposes including self-defense just like the litigant in *Heller*. "Their requests track the core constitutional right to possess a handgun for self-defense inside and outside the home, as defined by *Heller* and *Bruen*, respectively." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024). "[A]nd therefore unquestionably implicates [Plaintiffs'] Second Amendment rights." *Id* at 1181.

The same applies to Plaintiffs' desire to own and acquire ammunition. In *Jackson v. City & Cty. of S.F.*, the Ninth Circuit found that ammunition is protected by the Second Amendment, and one thus has a right to purchase it.

"'[T]he right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011). Both Supreme Court and this Circuit have roundly concluded that Plaintiffs' desire to possess both firearms and ammunition falls squarely within the plain text of the Second Amendment. Inherent to the right to possess arms and ammunition is the right to first acquire them. "[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). Therefore, "laws imposing conditions and qualifications on the commercial sale of arms" implicate the plain text of the Second Amendment if they "'meaningfully constrain[]' the right to keep and bear arms." *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118-19 (9th Cir. 2024). "[A] minor constraint on the precise locations within a geographic area where one can acquire firearms does not" meaningfully constrain the right to keep and bear arms." *Rhode v. Bonta,* 145 F.4th 1090 (9th Cir. 2025) (quoting *B&L Prods.*, 104 F.4th at 119). "By contrast, the 'monthly metering of firearm purchases meaningfully constrains the right to purchase and possess firearms and is thus presumptively unconstitutional.' " *Id.* (quoting *Nguyen*, 140 F.4th at 1243). Here, Hawaii law creates a complete ban on the acquisition and possession of firearms for Plaintiffs. Hawaii's challenged laws,

which completely prohibit Plaintiffs' and those similarly situated from acquiring and possessing firearms and ammunition *in total*, must unquestionably "meaningfully constrain" their right to arms. Plaintiffs' desire to own and acquire ammunition and firearms is within the plain text of the Second Amendment.

**B. The Challenged Laws Must be Supported by a Historical Traditional**

Because Plaintiffs' conduct falls within the plain text of the Second Amendment, it is Hawaii's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* 597 U.S. at 19. Supreme Court precedent strongly suggest that courts should look to the founding era to look for a historical tradition. "Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

Under Ninth Circuit precedent "we look to the understanding of the right to bear arms both at the time of the ratification of the Second Amendment in 1791 and at the time of the ratification of the Fourteenth Amendment in 1868." *Wolford v. Lopez*, 116 F.4th 959, 980 (9th Cir. 2024). However, post-bellum laws should be given less weight than earlier laws. This is the approach taken by the Ninth Circuit in *Wolford* in evaluating historical restrictions on parks. There, the Ninth Circuit found certain "postbellum laws carr[ied] meaningful evidentiary weight" because

"[t]he ordinances were fully consistent with pre-ratification practice, they emerged shortly following ratification, and Plaintiffs have not offered any evidence that anyone anywhere viewed the laws as unconstitutional or even questionably constitutional." *Id* at 983. Post-ratification laws which are inconsistent with earlier laws should not be given weight as historical evidence by this Court. *Id* at 983.

### C. There is No Tradition of Disarming Adults Based on Their Age

The relevant inquiry is, did firearm regulation at the time of the Founding support the total disarmament of legal adults based solely on their age. The answer is no. The contemporary age of majority is 18, making the entire population of individuals affected by the challenged laws, legal adults. The state cannot prove a historical tradition of disarming peaceable adults based solely upon their age, because no such regulations exist. Instead, the state is likely to rely on historical commercial regulations on individuals between 18 and 21 years of age, at a time when such individuals were considered minors under the law. Commercial regulations designed and intended to protect minors from predatory creditor practices matches neither the "how" nor the "why" relevant to the *Bruen* analysis of analogous regulations. Moreover, 18–20-year-olds not only had the right to own firearms at the Founding but were *required* to own them pursuant to state militia laws. This, even though 18-20-year-olds were generally considered minors during that time. "[T]he Second Militia Act, Act required all able-bodied men to enroll in

the militia and to arm themselves upon turning 18." *Lara*, 125 F.4th at 443 (3d Cir. 2025). *See also* Militia Act of 1792 Stat. 271, §1 (1792). ("That every citizen, so enrolled and notified, shall, within six months thereafter, provide himself with a good musket or firelock…"). The State has not and cannot point to any historical law that completely prohibited the ownership and acquisition of all firearms and ammunition. Applying precedent, this Court should find that the challenged laws are unconstitutional.

### D. Precedent Dictates the Challenged Laws Are Unconstitutional.

Applying binding Supreme Court precedent, this Court should find that the challenged laws violate the Second Amendment. As shown below, three federal circuits have faithfully applied *Bruen* in evaluating less restrictive laws which target 18-20-year-olds and found them unconstitutional.[2] As a preliminary matter, applying Ninth Circuit precedent, this Court should not apply a nuanced approach to the challenged laws. The Ninth Circuit rejected this approach when striking California's law that an individual could only buy one gun in a month. "[T]he modern problems that California identifies as justification for its one-gun-a-month law are perhaps different in degree from past problems, but they are not different in kind. Therefore, a nuanced approach is not warranted." *Nguyen v. Bonta*, 140 F.4th

---

[2] And as shown below, the two circuits that have upheld restrictions on 18-20-year-olds did so based on an erroneous understanding of history.

1237 (9th Cir. 2025). While many things have changed since the Founding, the social challenges of youthful behavior has not. While the age of majority has changed since 1791, the underlying principles of affording legal adults their full rights under the law has not.  This Court should not use a nuanced approach.

In ruling on a Hawaii law which prohibits carrying firearms in banks, the Ninth Circuit found "banks have existed throughout our Nation's history, but the historical record does not demonstrate a comparable national tradition of banning firearms at banks. Applying *Bruen's* guidance, we conclude that the Second Amendment likely prohibits a State from banning firearms in banks." *Wolford v. Lopez*, 116 F.4th 959, 970 (9th Cir. 2024).  Firearms and ammunition have existed throughout American history and there is no historical tradition of completely prohibiting their acquisition or possession by adults based solely on their age. Even during the Reconstruction Era, the state was only able to produce a handful of laws which restricted pistol possession rather than firearms in general. While, Plaintiffs contend that these laws are insufficient to justify any restrictions, even if this Court disagrees, it should still find the challenged laws unconstitutional "If a modern law 'regulates arms-bearing for a permissible reason,' it nonetheless violates the Second Amendment 'if it does so to an extent beyond what was done at the founding.' " *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025).  The State can point to no jurisdiction that completely banned the possession and/or acquisition of all

firearms to adults based on their age, thus the State's regulation of arms is

unconstitutional because it does so beyond the extent that was done historically.

**E. Three Federal Circuits Have Struck Down Similar Laws**

Since *Bruen*, three federal circuits have struck laws restricting the Second

Amendment rights of adults under 21.  These three opinions have faithfully applied

*Bruen's* text, history and tradition test and concluded that adults under 21 are

indeed part of "the People" contemplated by the Second Amendment, who share

the same full panoply of rights as their older counterparts. This Court should

follow their guidance and find the challenged laws violate the Second Amendment.

In *Worth*, 108 F.4th at 698, the Eighth Circuit found "Minnesota has not met

its burden to proffer sufficient evidence to rebut the presumption that 18-20-year-

olds seeking to carry handguns in public for self-defense are protected by the right

to keep and bear arms." In doing so it discounted "20 state laws from the

Reconstruction-era and late 19th Century that in some way limit the Second

Amendment rights of those under 21 years old" "because these laws carry less

weight than Founding-era evidence" and " '[n]one of these historical limitations on

the right to bear arms approach' the burden of Minnesota's." *Id* at 697. Similarly,

the State has not produced any colonial era laws which restricted the Second

Amendment rights of 18–20-year-olds in a comparable manner to the challenged

laws. And they rely on largely the same Reconstruction Era laws which the Eighth

Circuit discounted.  Here, this Court has even more reason to discount those Reconstruction Era laws.  Historically, there has never been a law completely banning the acquisition and/or ownership of firearms and ammunition by legal adults, or even of 18-20-year-olds during the relevant time periods.

Similarly, in *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 431 (3d Cir. 2025) the Third Circuit enjoined Pennsylvania's ban on 18-to-20-year-olds carrying firearms outside their homes during a state of emergency. The Court found that "Founding-era laws reflect the principle that 18-to-20-year-olds are "able-bodied men" entitled to exercise the right to bear arms." *Id* at 441.  "The Supreme Court has counseled "against giving postenactment history more weight than it can rightly bear," and given its irreconcilable conflict with the Founding-era laws, the Commissioner's catalogue of statutes from the mid-to-late nineteenth century can bear none." *Lara*, 125 F.4th at 441-42. (citations omitted) (quoting *Bruen*, 597 U.S. at 35). *Lara* holding that 18–20-year-olds are indeed members of the people, and can therefore not have their fundamental rights extinguished, is instructive to this Court's consideration.

In *Reese v. Bureau of Alcohol*, 127 F.4th 583 (5th Cir. 2025) the Fifth Circuit found 18 U.S.C. §§ 922(b)(1) and (c)(1) violated the Second Amendment. In doing so the Fifth Circuit found "[R]equirements that parents furnish firearms for their sons' militia service do not mean that the military-age young men lacked

the right to keep and bear (or obtain) such arms themselves. They just as readily imply that eighteen-to-twenty-year-olds were expected to keep and bear arms, even if provided by parents." *Id* at 597. "Instead of refusing to arm young Americans for fear of their irresponsibility, founding-era regulations required them to be armed to secure public safety." *Id* at 598. Thus, the Fifth Circuit also found that during the Founding Era individuals between the ages of 18 and 21 had a right to arms. In addressing law from the 19th Century that prohibited the sale of firearms to individuals under 21, the Fifth Circuit found "the laws were passed too late in time to outweigh the tradition of pervasively acceptable firearm ownership by eighteen-to-twenty-year-olds at 'the crucial period of our nation's history.' " *Id* at 599. Similarly, if the State relies on these laws this Court should find that those 19th Century laws should be disregarded for the reasons articulated by the Fifth Circuit and because the challenged laws are more burdensome than 19th Century laws that prohibited the sale of firearms to persons under 21 but allowed for intrafamilial transfers. As shown below, the two federal circuits that have ruled against the Second Amendment rights of adults under 21 did so based upon an erroneous understanding of history. This Court should follow the Third, Eighth and Fifth Circuit and find that the challenged Hawaii laws violate the Second Amendment.

**F. Misapplication of the *Bruen* Analysis Led the Fourth and Eleventh Circuits to Misguided Conclusions**

Recently, the Eleventh Circuit in *NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc) and the Fourth Circuit in *McCoy v. BATFE*, 140 F.4th 568, 575 (4th Cir. 2025) relied on an erroneous understanding of historical contract law to uphold laws restricting the firearm rights of adults under 21. The Eleventh Circuit found that "minors generally could not purchase firearms because they lacked the judgment and discretion to enter contracts" and as a result historically did not have the right to purchase firearms. *NRA,* 133 F.4th at 1118. The Fourth Circuit agreed with this analysis and similarly found "the burden § 922(b)(1) imposes on the Second Amendment rights of 18- to 20-year-olds is relevantly similar to the burden imposed by the founding-era rule that contracts with individuals under the age of 21 were unenforceable." *McCoy,* 140 F.4th at 575.

These opinions are misguided for two reasons. First, the historical restrictions they purport to rely on deal with restrictions on minors. "From before the founding and through Reconstruction, those under the age of 21 were considered minors." *Lara,* 125 F.4th at 436. Today, 18-20-year-olds are full-fledged adults. Thus, historical restrictions on what at the time were minors are not applicable. Second, a closer look at the voidability law of contracts which the Fourth and Eleventh Circuits rely on to justify their rulings show that this doctrine

did not apply to firearms. Thus, the Fourth and Eleventh Circuits rely on an erroneous understanding of history to come to their holdings.

### 1. Laws Restricting the Rights of Minors do not Support the Disarmament of Legal Adults

There is no historical tradition of disarming adults in the United States and historical restrictions on the Second Amendment rights of minors at the Founding are simply not analogous to a restriction on the Second Amendment rights of adults today. It is "the principles that underpin the Nation's regulatory tradition" that bind us today, not those principles' specific eighteenth-century application, and analogizing to Founding-era restrictions on minors to justify a modern ban on adults commits the very same error this Court condemned in *Rahimi*: treating the Second Amendment as "a law trapped in amber," *Rahimi*, 602 U.S. at 692, rather than "a constitution, intended to endure for ages to come," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 415 (1819). This Court's precedent requires inquiry into "how and why the regulations burden a law-abiding citizen's right to armed self-defense," *Bruen*, 597 U.S. at 29, and the common-law voidability rule fails on both metrics. But the "why" of the voidability rule—even assuming it applied, incidentally, to contracts for the purchase of firearms was designed to protect the minor himself: it was "conferred by law for his protection against his own improvidence and the designs of others." *NRA*, 133 F.4th at 1179 (Brasher, J.,

dissenting).[3] "Perhaps these rationales have some relationship. But they are not sufficiently similar. The former is paternalistic; the latter targets public safety." *McCoy* 140 F.4th at 589. (Quattlebaum, J., dissenting). As to the "how," any "burden on the right of armed self-defense" imposed by the voidability rule is also in no way "comparable" to the challenged Hawaii laws. *Bruen*, 597 U.S. at 29.

Whatever limits the common law did impose on 18-to-20-year-olds, it imposed on legal minors. The hallmark of minority status, at the Founding as today, was that minors remained under the care, custody, and protection of their parents—as Blackstone put it, they were under "the empire of the father, or other guardian." 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 453 (St. George Tucker ed., 1803).[4] A minor's need for "the right of armed self-defense," *Bruen*, 597 U.S. at 29, was for that reason less acute, because he remained under the protection of his parents, who could engage in self-defense on his behalf. But an eighteen-year-old today, precisely because he is no longer a minor, is now "emancipated from the care and custody of his or her parents, and they in turn are no longer responsible for his or her care and support." *NRA*, 133 F.4th at 1173 (Brasher, J., dissenting). And the burden on self-defense

---

[3] *See also New Hampshire Mut. Fire Ins. Co. v. Noyes*, 32 N.H. 345, 351–52 (1855) (voidability rule "established to protect the inexperience and credulity of youth against the wiles and machinations of designing men").
[4] *See* Exhibit 7.

imposed by depriving an 18-year-old who is legally a full adult with no one bound by law to provide for his care and protection, is totally unlike the burden of limiting the ability of actual minors to access firearms. By focusing on the specific applications of Founding-era law—treating 18-year-olds like minors today because they were minors in the eighteenth century— the Fourth and Eleventh Circuits entirely missed the principle at issue—18-year-olds were subject to certain limits at the Founding precisely because they were minors. In the modern era, they are adults so that principle does not apply.

This principle is illustrated by another category of people who could not enter contracts at the Founding: married women. 1 BLACKSTONE, supra, at 441–43.[5] If this Court were to accept the reasoning of the Eleventh and Fourth Circuits, it would lead to the conclusion that married women today may be barred from purchasing firearms. The voidability doctrine applied to minors and married women. But this conclusion is untenable, and Supreme Court precedent gives the reason why: the correct inquiry in interpreting the Second Amendment is not whether particular modern applications precisely match those at the Founding, but rather whether a modern law "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. And because the voidability rule as applied to married women (just like as applied to legal minors) was justified at the

---

[5] *See* Exhibit 8.

Founding based on principles that no longer apply to married women (or 18-to-20-year-olds) today, it cannot justify a modern ban on their exercise of Second Amendment rights. The decisions of the Fourth and Eleventh Circuits are based on an erroneous understanding of historical contract law and should be disregarded on those grounds alone. For those reasons, this Court should follow the guidance of the three federal circuits which have stricken laws restricting the Second Amendment rights of 18–20-year-olds.

### G. The Voidability Doctrine Did Not Apply to Firearms

Not only were the Fourth and Eleventh Circuits misguided in finding relevant analogy between the voidability of contracts with minors and the complete disarming of legal adults, but they were factually incorrect in finding that the voidability doctrine applied to contracts for firearms.  That is because firearms fell into the necessities exception to the general voidable rule for contracts. Minors could form enforceable contracts for necessities. "At the Founding, a person was an "infant[]" or a "minor[]" in the eyes of the law until age 21." *NRA,* 133 F.4th at 1117. During the colonial era "[a]ll "contracts with infants, except for necessaries, [were] either void or voidable" because "infants . . . are supposed to want judgment and discretion in their contracts and transactions with others." *Id at* 1118. What that meant is that a minor could form a contract with another person. *Id.* However,

the contracts were voidable at the election of the minor. *Id*. That meant a contract could be canceled by a minor and for a reasonable time after they turned 21.[6]

An important exception to the rule that contracts by minors were voidable dealt with necessities. At Common Law, minors could enter into enforceable contracts for necessities. *Id.* The term necessity went beyond basic necessities such as food and water and encompassed any necessity that was "essential to him in his current position in life."[7]. Historical court cases show that necessities could range from wedding rings to legal services.[8] "What are 'necessaries' cannot be determined by any arbitrary and inflexible rule. It depends on circumstances, and each case must be governed by its own." *Epperson v. Nugent*, 57 Miss. 45, 47 (1879). The Eleventh and Fourth Circuits simply got the law wrong when they suggested necessities only included bare essentials such as "food, clothing,

---

[6] Austen-Baker, Richard and Hunter, Kate (2020) Infants' Contracts : Law and Policy in the 18th and 19th Centuries. Journal of Contract Law, 36 (4). pp. 1-24 at 1 available at VAC Exhibit 1.

[7] *See Id* at 15; *See also Peters v Fleming* (1840) 6 M & W 42; 151 ER 314 (attached as Exhibit 1); *See also* Miller Clayton Isaac, "Contracts of Infants" (1892) at 9 available at VAC Exhibit 2. *See also* Harland, D.J. "The Contractual Capacity of Minors - A New Approach" (1973) 7 Sydney LR No. 1 41 at 42. Att. as Exhibit 2.

[8] Examples of necessities include *Jordan v. Coffield,* 70 N.C. 110, 110 (1874) (bridal outfit, and among other things a suite of chamber furniture); *Jenner v Walker*, (1868) 19 LT Rep (NS) 398 (wedding rings) attached as Exhibit 3; *Epperson v. Nugent*, 57 Miss. 45, 47 (1879) (legal services); *Hands v Slaney*, (1800) 8 TR 578; 101 ER 1556 attached as Exhibit 4 (A servant as well as the servant's livery was a necessity for an infant who was an army captain); *Middlebury Coll. v. Chandler*, 16 Vt. 683, 686 (1844) (an education)

education, and medicine." *NRA,* 133 F.4th at 1118. *See also McCoy* 140 F.4th at

576. The Fourth and Eleventh Circuits both invoked Chancellor Kent's early-

American treatise for this argument, but that authority merely set forth a list of

necessaries that did not purport to be exhaustive. *See* 2 JAMES KENT,

COMMENTARIES ON AMERICAN LAW 195–96 (1827).[9] Kent elsewhere

acknowledged that "[t]he question of necessaries is governed by the real

circumstances of the infant." *Id* at 196. Closer to the issue here, military uniforms

were considered a necessity. "In *Coates v Wilson* [(1804) 5 Esp. 152; 170 ER 769]

(attached as Exhibit 6) Lord Ellenborough held a military uniform for a volunteer

corps to be a necessary as a consequence of the number of men who had enlisted

for military service around this time."[10] Similarly, in some circumstances, such as

when needed for military service, a horse was a necessity.[11] The same reasoning

would have applied to firearms for militia service. In colonial America, firearms

were a necessity pursuant to this definition because they were required for hunting,

militia service and other aspects of life.[12] Thus, a minor could have entered into an

---

[9] *See* Exhibit 5

[10] See VAC Exhibit 1 at 16. (footnotes omitted)

[11] *See New Hampshire Mut. Fire Ins. Co. v. Noyes,* 32 N.H. 345, 347–48 (1855)
("horses and necessary work in regard to such horses may be necessaries.")

[12] *E.g.* in many colonies it was mandatory to carry firearms to church. These
"[l]aws required militiamen or free white men to bring their firearms to church and
were passed so they could defend against potential attacks…" *Goldstein v.
Hochul*, 680 F. Supp. 3d 370, 396 (S.D.N.Y. 2023),

enforceable contract to purchase a firearm. The Eleventh and Fourth Circuit's main support for the proposition that firearms were not necessities is a South Carolina case that found pistols were not a necessity. "Importantly, "liquor, pistols, powder, saddles, bridles, [and] whips" were not necessaries." *See NRA,* 133 F.4th at 1118. (quoting *Saunders Glover & Co. v. Ott's Adm'r,* 12 S.C.L. 572, 572 (S.C. Const. App. 1822)). *See also McCoy* 140 F.4th at 576.

Pistols were not required for militia services. Long guns were. "The smoothbore flintlock musket was the standard infantry weapon of the American Revolution."[13] Pistols also were not used for hunting for the same reasons that they were unsuitable for militia service (poor range etc.). Muskets and other long arms were essential to the average 18–20-year-old minor to maintain his current position in life because they allowed him to engage in hunting[14] and militia service. The Eleventh Circuit erred in making a blanket statement about firearms not being a necessity by relying on one case about pistols which are a discrete type of firearm typically not used for militia service or hunting. Furthermore, the *Saunders* Court did not find that pistols could never be a necessity. The legal rule it articulated is "[t]he articles in such case, ought to appear to be necessary for him, and plainly and clearly so, and to be furnished at reasonable prices." *Saunders Glover,* 12

---

[13] http://bit.ly/3KBhGSp

[14] https://www.americanrifleman.org/content/hunting-guns-in-colonial-america/

S.C.L. at 572 fn.1 (quoting *Rainwater v. Durham,* 11 S.C.L. 524, 525 (S.C. Const. App. 1820)). The Court simply held that in these circumstances, a pistol was not a necessity. Had the minor in *Saunders* been serving in the calvary, his pistol may have very well been a necessity because "[p]istols were an important cavalry weapon."[15] During the colonial era, 18-20-year-olds could contract to purchase firearms because firearms were necessities.[16] The Fourth and Eleventh Circuits' opinions should not be relied upon.[17]

## V.    <u>Conclusion</u>

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor, holding that Hawaii's ban on the acquisition and ownership of firearms and ammunition by adults under the age of 21 violates the Second Amendment.

---

[15] https://bit.ly/4gGntCv

[16] . This finds support within the context of bankruptcy law which found in some circumstances "arms" were "necessary for upholding life". *See Crocker v. Spencer*, 1824 WL 1335, at *2 (Vt. Feb. 1824) *See also Fry v. Canfield*, 4 Vt. 9, 10 (1831)

[17] Under no circumstances does the voidability rule justify Hawaii's ban on interfamilial transfers.  The Eleventh Circuit's opinion in *Bondi* found that there is a historical tradition of legal interfamilial firearm transfers in the United States. "By 1826, at least 21 of the 24 states admitted to the Union—representing roughly 89 percent of the population, CENSUS FOR 1820, at 18 (Washington, Gales & Seaton 1821)—had enacted laws that placed the onus on parents to provide minors with firearms for militia service." *NRA*, 133 F.4th at 1120. *Accord McCoy* 140 F.4th at 578. Thus, the voidability rule is not a basis for prohibiting Plaintiffs from receiving firearms and ammunition from their parents.

Respectfully submitted,

Dated: October 1, 2025.

/s/Kevin Gerard O'Grady
Kevin Gerard O'Grady

/s/ Alan Alexander Beck
Alan Alexander Beck
Attorneys for Plaintiffs