# Exhibit 2

# THE CONTRACTUAL CAPACITY OF MINORS — A NEW APPROACH

*D. J. HARLAND**

There has in recent years been much discussion as to the desirability of reducing the age at which an infant attains full capacity to bind himself by contract and to deal with property. The age of majority has for several centuries[1] been fixed by the common law at 21, and to many this rule has seemed to be one based on historical considerations which bear little relevance to the present day.[2] Thus, in the United Kingdom the Committee on the Age of Majority, under the chairmanship of Mr. Justice Latey, recommended that the age of majority be lowered to 18 years of age, and this recommendation was adopted by Parliament in 1969.[3] In Australia similar legislation has now been passed in South Australia and New South Wales.[4] In New South Wales the Minors (Property and Contracts) Act, 1970 has established 18 years as the age at which full capacity in regard to matters of contract and property is to be attained. The Act, which came into force on 1st July, 1971, adopts, with few alterations, a draft bill prepared by the Law Reform Commission of New South Wales and annexed to its *Report on Infancy in Relation to Contracts and Property*.[5] The New South Wales legislation, however, goes far beyond merely lowering the age of majority and makes a bold attempt to establish a regime which protects those still under incapacity from the results of their own inexperience and lack of judgment, while still ensuring that adults dealing with such persons are not unduly prejudiced. This paper is concerned with the effect of the Act on the law of contract.

Few would be concerned to defend the previous law relating to infants' contracts, for not only was that law uncertain and extremely complex on many points, but it could also operate in an unnecessarily harsh manner. In those Australian states,[6] of which New South Wales was not one, which had

---

* B.A., LL.B. (Sydney), B.C.L. (Oxon.), Senior Lecturer in Law, University of Sydney.

[1] For an account of the development of the common law rule see James, "The Age of Majority" (1960) 4 *American Journal of Legal History* 22.

[2] See *Report of the Committee on the Age of Majority*, (Cmnd. 3342, Her Majesty's Stationery Office, London, 1967) at 22-23.

[3] Family Law Reform Act 1969; Age of Majority (Scotland) Act 1969.

[4] Age of Majority (Reduction) Act 1970-1971. At the time of writing similar Bills were pending in Tasmania and Western Australia.

[5] L.R.C. 6 (1969).

[6] *Viz.* Tasmania (Infants' Relief Act 1875) and Victoria (Supreme Court Act 1958, ss. 69 and 70).

42                         SYDNEY LAW REVIEW

adopted the very badly drafted[7] English Infants' Relief Act, 1874, the position
was even worse.

The contractual capacity of infants at common law was very limited,
and could not be enlarged, as is the case in many legal systems, by the
consent (either in general or to a particular transaction) of a parent or
guardian.[8] An infant was bound at common law only by contracts for neces-
saries. "Necessaries" were not confined to the bare essentials of life, but were
those goods and services reasonably necessary to support the infant in the
station in life in which he found himself.[9] Also included were contracts for
the education of the infant[10] and contracts of service whereby the infant was
able to acquire skills which would enable him to earn his living in the future.[11]
The principle also covered contracts of employment which enabled the infant
to support himself whether or not any element of education was involved.[12]
Although the courts had shown a willingness to extend somewhat the concept
of contracts for necessaries by enforcing certain contracts which, while not
perhaps strictly for necessaries, were felt to be sufficiently analogous thereto
for their enforcement to be justified,[13] the scope of the concept was uncertain.
It was established that no contract[14] could be enforced against an infant unless
it was beneficial to him in the sense that the contract considered as a whole
was fair and reasonable.[15] Thus, the potential operation of some unfair pro-
visions in a contract of apprenticeship or employment might be found to be
so severe on the infant that a contract otherwise fair was rendered unenfor-
ceable against him.[16] It was equally clear, however, that the fact that a
contract was clearly for the benefit of an infant would not suffice, for while
the fact of benefit was a *sine qua non* of enforceability against the infant, it
was in addition essential that the contract fall within the rather technical
category of contracts for necessaries.[17] It was for this reason, for example,

---

[7] This is not the place for an account of that Act. See generally Treitel, "The
Infants' Relief Act, 1874" (1957) 73 *L.Q.R.* 194; Atiyah, "The Infants' Relief Act,
1874—a Reply" (1958) 74 *L.Q.R.* 97; Treitel, "The Infants' Relief Act, 1874—a Short
Rebutter" (1958) 74 *L.Q.R.* 104.

[8] *Field* v. *Moore* (1855) 7 De G. M. & G. 691, at 706-707, 44 E.R. 269, at 274-5;
*Capes* v. *Hutton* (1826) 2 Russ. 357, 38 E.R. 370.

[9] See, *e.g.*, *Peters* v. *Fleming* (1840) 6 M. & W. 42, 151 E.R. 314; *Chapple* v.
*Cooper* (1844) 13 M. & W. 252, 153 E.R. 105; *McLaughlin* v. *Darcy* (1918) 18 S.R.
(N.S.W.) 585. In respect of goods, this rule was given statutory form—see the Sale of
Goods Act 1923-1953 (N.S.W.), s. 7. (repealed by s. 3 and the First Schedule of the
Minors (Property and Contracts) Act 1970).

[10] See, *e.g.*, *Walter* v. *Everard* (1891) 2 Q.B. 369; *Roberts* v. *Gray* (1913) 1 K.B.
520; *Blennerhassett's Institute of Accountancy Pty. Ltd.* v. *Cairns* (1938) 55 W.N.
(N.S.W.) 89.

[11] See, *e.g.*, *Green* v. *Thompson* (1899) 2 Q.B. 1; *Gadd* v. *Thompson* (1911) 1 K.B.
304; *Hamilton* v. *Lethbridge* (1912) 14 C.L.R. 236.

[12] See, *e.g.*, *Clements* v. *London & N.W. Ry. Co.* (1894) 2 Q.B. 482; *Evans* v. *Ware*
(1892) 3 Ch. 502; *Bromley* v. *Smith* (1909) 2 K.B. 235.

[13] See, *e.g.*, *McLaughlin* v. *Darcy* (1918) 18 S.R. (N.S.W.) 585; *Doyle* v. *White
City Stadium Ltd.* (1935) 1 K.B. 110; *Chaplin* v. *Leslie Frewin (Publishers) Ltd.* (1966)
1 Ch. 71.

[14] The issue normally arose in the context of contracts of service or education, but
there seems no doubt that the same principles applied to all contracts for necessaries—
see *Sultman* v. *Bond* (1956) St. R. Qd. 180; *Fawcett* v. *Smethurst* (1915) 84 L.J.K.B. 473.

[15] See in particular *De Francesco* v. *Barnum* (1890) 45 Ch. D. 430; *Clements* v.
*London & N.W. Ry. Co.* (1894) 2 Q.B. 482; *Hamilton* v. *Lethbridge* (1912) 14 C.L.R.
236.

[16] See, *e.g.*, *De Francesco* v. *Barnum* (1890) 45 Ch. D. 430; *Corn* v. *Matthews*
(1893) 1 Q.B. 310; *Sir W. C. Leng & Co. Ltd.* v. *Andrews* (1909) 1 Ch. 763.

[17] *Mercantile Union Guarantee Corporation Ltd.* v. *Ball* (1937) 2 K.B. 498; *Bojczuk*
v. *Gregorcewicz* (1961) S.A.S.R. 128.

that trading contracts entered into by an infant were apparently never binding on him at common law.[18]

In addition to showing that the contract was capable of being one for necessaries, a person seeking to enforce a contract against an infant had to establish that the particular contract was in fact one for necessaries for the particular infant concerned. This involved showing not only that the subject matter of the contract was reasonably necessary for the infant in light of his position in life and future prospects,[19] but also that he was not already adequately supplied with the goods or services in question.[20] Thus an infant who had bought on credit suitable clothing for himself was not liable to pay for them if he was already adequately supplied with clothes.[21] This requirement made it virtually impossible for a prudent shopkeeper to be certain that an infant would be liable to pay even for goods which were clearly suitable for such an infant, but was justified on the basis that otherwise the protection given to infants would be seriously curtailed.[22]

The extent to which an infant was liable on an executory contract for necessaries was a matter of considerable controversy. It was generally recognized, though often with reluctance,[23] that contracts of employment and analogous contracts were binding even though still executory, but most commentators held that an infant was not bound by an executory contract for the sale of goods.[24] On this view he was only bound by a quasi-contractual obligation to pay a reasonable price for necessary goods actually supplied to him. This view was based in part on the wording of the Sale of Goods Act,[25] but as this provision is thought to have been intended merely to codify the common law it would follow that the same rule ought to have applied to contracts for the supply of necessary services.[26] The writer doubts whether the view of the law just outlined is consistent with the decisions dealing with contracts of service, but it must be admitted that the point was certainly not settled and that the few relevant *dicta* were conflicting.[27]

The general rule was that contracts which were not contracts for necessaries were unenforceable against the infant unless ratified by him within a reasonable time of attaining full age.[28] The contract could be enforced by the infant, even though unenforceable against him.[29] The question of the rights

[18] *Mercantile Union Guarantee Corporation Ltd.* v. *Ball* (1937) 2 K.B. 498; *Cowern* v. *Nield* (1912) 2 K.B. 419.

[19] This was said to be a question of mixed law and fact—*Ryder* v. *Wombwell* (1868) L.R. 4 Exch. 32, at 38-39.

[20] In respect of goods, see the Sale of Goods Act 1923-1953 (N.S.W.), s. 7. *post* p. 25.

[21] *Nash* v. *Inman* (1908) 2 K.B. 1. See also *Barnes* v. *Toye* (1884) 13 Q.B.D. 410; *Johnstone* v. *Marks* (1887) 19 Q.B.D. 509.

[22] *Barnes & Co.* v. *Toye* (1884) 13 Q.B.D. 410, at 413-414.

[23] See the note by Landon in (1935) 51 L.Q.R. 270.

[24] See, e.g., Cheshire and Fifoot, *Law of Contract*, 2nd Australian Edition (1969), at 513-514; Anson, *Law of Contract*, 23 ed. (Oxford, 1969), at 199-200; Winfield, "Necessaries under the Sale of Goods Act, 1893" (1942) 58 L.Q.R. 83. *Cf.* Treitel, *Law of Contract*, 3 ed. (1970), at 472-474.

[25] "[W]here necessaries are sold and delivered to an infant . . . he must pay a reasonable price therefor. Necessaries in this section means goods *suitable to the condition in life of such infant and to his actual requirements at the time of the sale and delivery*." (Sale of Goods Act 1923-1953 (N.S.W.), s. 7.)

[26] See Anson, *op. cit. supra* n. 24, at 200-201.

[27] In particular see *Nash* v. *Inman* (1908) 2 K.B. 1, at 8, 12; *In re J.* (1909) 1 Ch. 574, at 577; *Pontypridd Union* v. *Drew* (1927) 1 K.B. 214, at 220, *Roberts* v. *Gray* (1913) 1 K.B. 520, at 530.

[28] *Williams* v. *Moor* (1843) 11 M. & W. 256, 152 E.R. 798; *Nash* v. *Inman* (1908) 2 K.B. 1, at 12.

[29] *Bruce* v. *Warwick* (1815) 6 Taunt. 118, 128 E.R. 978; *Smith* v. *Bowin* (1669) 1 Mod. 25 85 E.R. 703.

and obligations of the parties upon repudiation by the infant gave rise to much difficulty. If an infant had handed over money under a contract and then decided to repudiate it, he could not of course be sued for failure to perform any outstanding obligations on his part. He could not, however, recover any money (or, probably, goods) which he himself had handed over to the other party under the contract unless he had suffered a total failure of consideration.[30] As the receipt of even a very small benefit under the contract would thus prevent his recovering the property, an infant who had largely performed an unenforceable contract was left almost completely unprotected.[31] In this situation the law, which was perhaps too eager to protect him while the contract remained executory, was curiously unwilling to intervene. An adult dealing with an infant was in no better position. If he had transferred money (or, perhaps, any other property) to the infant, he could generally not recover it,[32] although it was possible that he might have some remedy at any rate where the infant had induced the contract by a fraudulent representation as to his age, if the infant retained the money or property or if it could be traced.[33] As the adult could not enforce the contract against the infant, the hardship that could be caused by a refusal to allow him to recover property handed over by him to the infant is obvious.

It seems that there was a third and very limited category, the scope of which was most unclear,[34] namely contracts which were binding on the infant until repudiated by him, either during infancy or within a reasonable time of attaining 21 years of age.[35] Such contracts would become permanently binding unless positively repudiated within a reasonable time of his 21st birthday. In other respects the position in regard to these contracts was as described in the preceding paragraph.[36]

The foregoing summary of the common law relating to infants' contracts shows ample justification for the following comment by the Committee on the Age of Majority, appointed in the United Kingdom in 1965 to consider, *inter alia*, whether any changes were desirable in the law relating to contracts made by persons under 21:

> Many criticisms have been made of the law relating to infants' contracts. It is uncertain in a number of important respects, and is not easy to apply to concrete facts. It is complex, and the complexities of the law are not related to the needs of persons affected by it. It is said

---

[30] *Valentini* v. *Canali* (1889) 24 Q.B.D. 166; *Steinberg* v. *Scala (Leeds) Ltd.* (1923) 2 Ch. 452; *Pearce* v. *Brain* (1929) 2 K.B. 310; *Woolf* v. *Associated Finance Pty. Ltd.* (1956) V.L.R. 51. See also Anson, *op. cit supra* n. 24, at 188, f.n. 4.

[31] See especially *Woolf* v. *Associated Finance Pty. Ltd.* (1956) V.L.R. 51.

[32] *R. Leslie Ltd.* v. *Sheill* (1914) 3 K.B. 607; *Cowern* v. *Nield* (1912) 2 K.B. 419. In respect of property other than money the position was particularly confused. Discussion often centred on the disputed point of whether delivery of property to an infant would pass title. But at any rate where the infant repudiated the contract, the passing of title should, in principle, not necessarily bar recovery by the adult. For a full discussion see Sutton, *Law of Sale of Goods in Australia and New Zealand* (1967) at 44-57.

[33] *R. Leslie Ltd.* v. *Sheill* (1914) 3 K.B. 607, at 619. And see Sutton, *op. cit. supra* n. 32, at 44-57.

[34] See the discussion in Treitel, *op. cit. supra* n. 24, at 482-483.

[35] *Edwards* v. *Carter* (1893) A.C. 360; *North Western Railway Co.* v. *McMichael* (1850) 5 Ex. 112, 155 E.R. 49. There was some doubt as to whether the infant was bound by obligations accruing prior to repudiation—see Treitel, *op. cit. supra* n. 24, at 482.

[36] *Coope* v. *Overton* (1833) 10 Bing. 252, 131 E.R. 901; *Steinberg* v. *Scala (Leeds) Ltd.* (1923) 2 Ch. 452.

CONTRACTUAL CAPACITY OF MINORS                45

that it is unfair to those who deal with infants and disadvantageous to infants themselves in that others are deterred from dealing with them.[37]

## THE MINORS (PROPERTY AND CONTRACTS) ACT, 1970 (N.S.W.)

The Minors (Property and Contracts) Act, 1970 has two basic aims. Part II deals with the capacity of those aged 18 years and over, and Part III deals with the capacity of those under the age of 18 years. Before proceeding to an examination of the effect of Part III on the law of contract, it is necessary to examine certain concepts which are defined in s. 6. This definitions section is more than usually important, for some of the phrases defined therein are of fundamental importance in the sections of the Act effecting substantive alterations in the law, and are given meanings which might not be immediately obvious to those not familiar with the section.

In future, at any rate in relation to matters coming within the scope of the Act, the term "infant" is to be avoided and the more appropriate word "minor" is to be substituted.[38] Therefore "minor" is used in this paper to refer to a person under the age of 18 years. "Infant" is used only when reference is being made to the position at common law.

Perhaps the most important concept in the legislation is that of a "civil act". A civil act is defined as "any act relating to contractual or proprietary rights or obligations or to any chose in action".[39] This concept will be seen to be essentially the same as that, familiar to students of comparative law, of a juristic act, which may be defined as "an expression of will, the intention and normal effect of which is to produce a lawful change in the legal position of its author".[40] The use of this device has certain advantages which the writer has discussed elsewhere.[41] For present purposes it is sufficient to note that a party entering into a contract is participating in a civil act, as also is a party who rescinds a contract for breach, fraud or any other reason, or who affirms a contract after breach. Similarly, an acquiescence in or waiver of any matter affecting a person's rights or obligations under a contract is a civil act.

The Act provides that in many situations a civil act shall be "presumptively binding" on a minor. The ordinary meaning of the phrase "presumptively binding" might be thought to imply that such civil acts are only prima facie binding, in the sense that normally the minor's incapacity will be irrelevant but that in certain circumstances his incapacity may be relied upon. That this is not the case is made clear by s. 6(3), which provides that a civil act which is presumptively binding on a minor has the same effect as if, at the time of his participation in the civil act, he were not under the disability of infancy. Thus a contract which is made presumptively binding

---

[37] *Op. cit. supra* n. 2, at 74-75. It is true that the Committee's remarks were influenced by the unsatisfactory nature of the Infants' Relief Act 1874, but they are equally applicable, it is submitted, to the position in New South Wales, especially as the Infants' Relief Act was usually interpreted in such a way as to have little effect on the common law rules.

[38] S. 6(1).

[39] See s. 6(1), which, in addition to containing the general definition quoted, enumerates a considerable number of specific examples of a civil act. The making or revocation of a will is not a civil act (s. 6(2))—but see the amendments made by s. 3 and the First Schedule, to the Wills, Probate & Administration Act 1898 whereby, *inter alia*, a person aged 18 or over and a married minor may make a will.

[40] Amos and Walton: *Introduction to French Law* 3 ed. (1967) at 21.

[41] Harland, "Lowering the Age of Majority in New South Wales" (1970) 2 *Aust'n Current Law Rev.* 67, at 70-71.

46                          SYDNEY LAW REVIEW

may be attacked only on such grounds as fraud, duress etc. which would be available irrespective of any question of lack of capacity.

It should also be noted that under s. 5 the Act binds the Crown, not only in right of New South Wales, but also, so far as the legislative power of the New South Wales Parliament permits, the Crown in all its other capacities. This provision raises certain difficulties, which the writer has discussed elsewhere,[42] relating to the extent to which the New South Wales Parliament has in fact power to bind the Crown in its other capacities.

## CAPACITY AT EIGHTEEN YEARS

Although this paper is concerned with those provisions of the Act dealing with the capacity of minors, reference may be made in passing to Part II which grants full capacity in respect of matters of contract and property to those aged 18 years and over. Part II has been more fully analyzed by the writer elsewhere.[43] The pivotal section is section 8 which provides that a person is not under the disability of infancy in relation to a civil act in which he participates when aged 18 years or upwards. One effect clearly is that full contractual capacity is granted at 18. It is further provided that for the purposes of any rule of law and of any statutory provision a person aged 18 and upwards is of full age and *sui juris*.[44] The remainder of Part II applies the policy of s. 8 to certain consequential matters. It should be noted that the doctrines of estoppel[45] and laches and acquiescence[46] apply to a person aged 18 or over as if he were aged 21.

## CAPACITY OF MINORS TO ENTER INTO BINDING CONTRACTS

Part III of the Act deals with the capacity of minors. It is expressly provided that where a minor participates in a civil act, that civil act is not binding on him except as provided by the Act.[47] Clearly the intention is that on these matters the Act is to constitute a comprehensive code, and consequently reference to the common law rules will generally be neither necessary nor, indeed, permissible.[48]

Two types of contracts entered into by a minor are rendered presumptively binding on him from their inception. These are contracts beneficial to the minor, and contracts entered into pursuant to a court order granting capacity to the minor.

Section 19, adopting a suggestion made some time ago by Professor James Williams,[49] provides that where a minor participates in a civil act and his participation is for his benefit at the time of his participation, the civil act is presumptively binding on him. Hence it is no longer necessary to inquire whether or not a minor's contract is technically one for necessaries. Benefit to the minor is the sole criterion of enforceability. It is also clear that a purely executory contract will, if beneficial at the time of contract, be binding

---

[42] See Harland, *op. cit. supra* n. 41, at 77.
[43] *Op. cit. supra* n. 41.
[44] S. 9.
[45] S. 12.
[46] S. 13.
[47] S. 17.
[48] See e.g., *Bank of England* v. *Vagliano Bros.* (1891) A.C. 107, at 120, 129-130, 144-145; *Bristol Tramways Carriage Co.* v. *Fiat Motors Ltd.* (1910) 2 K.B. 831, 836; *Brennan* v. *R.* (1936) 55 C.L.R. 253, 263.
[49] See Salmond and Williams, *Principles of the Law of Contracts* (1945), at 310.

CONTRACTUAL CAPACITY OF MINORS          47

on a minor, and will remain so even if later developments subsequently alter the situation. Thus an executory contract for the purchase of goods normally sold at a standard price will be binding on a minor despite a later sudden fall in price, provided of course that the contract when made was beneficial.

No guidance is provided as to how we are to determine whether a minor's entering into a given contract was, at the time of contract, for his benefit, and at first sight the principle may seem simple enough. However, it is submitted that a little reflection will indicate that some difficulties are likely to arise in the construction and application of s. 19. Clearly, for a contract to be presumptively binding under s. 19 we must be able to say that the contract was on the whole for his benefit in the sense that it was a fair bargain and contained no unduly harsh or onerous provisions. This was, as has been indicated above,[50] an essential element of a binding contract for necessaries at common law, and no doubt the approach taken at common law will continue to be relevant by way of analogy. Thus the fact that some particular provision or provisions in a contract might be thought to be not as generous to the minor as the most favourable that might conceivably have been obtained will doubtless not be fatal, provided that, considered as a whole, the contract can be said to be beneficial to him.[51] On this view, the question to be asked is whether the provision objected to is sufficiently unfair as to render the whole contract so unfair that it ought not to be enforced against the minor. But it would seem that the concept of a contract being for the "benefit" of a minor envisages more than simply that the contract is one which is fair and reasonable.[52] One can readily imagine cases where a contract is made by a minor upon terms which are eminently fair and reasonable, and yet it would be difficult to say that it was advantageous for the particular minor to enter into that particular contract. An example would be a contract for the purchase, on fair terms, of some item beyond the means of the minor. And even if the minor were able to pay for the item in question, it might nonetheless, in the case of an expensive item, be unwise for him to tie up his assets in this way, especially if the article is likely to depreciate rapidly in value. It would seem, therefore, that we must still ask whether it was in fact for the benefit of the minor for him to enter into any contract concerning the subject matter of the contract in question. This is a question of fact which can only be answered in the light of such factors as the minor's age, means and current supply of the goods or services contracted for.[53] Thus, it is submitted, many of the factors relevant under the common law rules as to necessaries will still have to be considered.[54] Nonetheless, the scope of a minor's contractual liability has undoubtedly been considerably increased, and in the writer's view this is to be welcomed as the common law rules were unduly restrictive.

In one respect the old law relating to the contractual capacity of minors is preserved. The Act does not make presumptively binding on a minor a civil act in which he participates, or appears to participate, while lacking, by reason of youth, the understanding necessary for his participation in the

[50] *Supra*, p. 42.
[51] See cases cited *supra*, at n. 15.
[52] *Cf.* Minors' Contracts Act 1969 (N.Z.), s. 6.
[53] See the discussion *supra*, p. 43.
[54] *Cf.* Pearce, "Reform of the Law of Infancy" (1970) 44 *A.L.J.* 269, at 273.

48                                    SYDNEY LAW REVIEW

civil act.[55] There is almost a complete dearth of authority on this point, but it would appear that a contract entered into by such a minor would be void.[56] This would be so only where the minor concerned was of such tender years that, although outwardly having appeared to have entered into a contract, he could not be said to be capable of understanding the significance of his action.[57] Whether a particular minor was capable of such understanding would be a question of fact in each case. In such situations the minor could not be presumptively bound by an alleged contract, even if clearly beneficial to him.[58]

*Capacity by Court Order*

It has been shown above that at common law an infant was bound only by his contracts for necessaries and the consent of a parent or guardian gave no greater validity to an infant's contract than it would otherwise have had.[59] The Act makes a new departure in that in certain situations a court may make an order granting capacity to a particular minor. The Supreme Court has jurisdiction by virtue of s. 26 to grant to the minor capacity to enter into all contracts without limitation, or into any description of contracts, or into a specific contract. A court of petty sessions has under s. 27 jurisdiction to approve a particular contract, subject to a limitation that it must appear to the court that the minor would not undertake obligations under the proposed contract to the value of $750 or more. Neither the Supreme Court nor a court of petty sessions shall make an order unless it appears that the order is for the benefit of the minor.[60]

The Supreme Court is expressly given power to rescind or vary an order made by it granting capacity to a minor[61]. While an order of rescission or variation does not have retrospective effect, a person proposing to deal with a minor in whose favour an order had been made would need to ensure that no rescission or variation of the original order had been made. The ignorance of such a person of the rescission or variation of an order would not protect him, though no doubt the court would bear this problem in mind when deciding whether or not to make the order of rescission or variation subject to any conditions.[62]

Any contract entered into by a minor pursuant to an order under s. 26 or s. 27 is presumptively binding on him.[63] One effect of these sections is to enable a party proposing to deal with a minor to obtain in advance a conclusive determination of the question of whether or not the minor's participation in the proposed contract will be for his benefit. The situations in which it is thought necessary to resort to this procedure will perhaps occur

---

[55] S. 18.
[56] *Johnson* v. *Clark* (1908) 1 Ch. 303, at 311-12. See also *O'Shanassy* v. *Joachim* (1876) 1 App. Cas. 82, at 88-89.
[57] See Salmond and Williams, *Principles of the Law of Contracts*, 2 ed. (1945), at 297.
[58] *Quaere* whether in such cases the jurisdiction under s. 37 (discussed *infra*, pp. 52-55) would arise. The point might be significant if, for example, a very young child bought a toy which subsequently injured him and his next friend wished to sue the seller for breach of warranty rather than to be forced to prove negligence in an action in tort.
[59] *Supra*, at p. 42.
[60] Ss. 26 (3) and 27 (5)(b). Note that the jurisdiction under s. 26 extends to civil acts generally, whereas that under s. 27 is limited to contracts and dispositions of property.
[61] S. 26 (1)(b).
[62] See the power given in ss. 26(2) and 27(4).
[63] Ss. 26 (4), and 27 (c).

CONTRACTUAL CAPACITY OF MINORS                49

relatively infrequently, but the existence of the procedure should on occasions prove very useful.

## AFFIRMATION

We have seen[64] that at common law most infants' contracts were not binding on the infant unless ratified by him within a reasonable time of attaining full age. A ratification was an intentional recognition of a previous contract, a confirmation of it with the intention of rendering it binding.[65] This rule was felt to be undesirable in that it could leave an infant open to considerable pressure from creditors to ratify, on turning 21, contracts previously entered into as a result of his youthful indiscretion. Consequently, the effect of a ratification was restricted by Lord Tenterden's Act in 1828. It was provided that "no action shall be maintained whereby to charge any person upon any promise made after full age to pay any debt contracted in infancy, or upon any ratification made after full age of any promise or simple contract made during infancy, unless such promise or ratification shall be made by some writing to be signed by the party to be charged therewith". This provision was re-enacted in New South Wales[66] and remained in force until the passing of the Minors (Property and Contracts) Act, 1970. That Act effects a complete reversal of policy in regard to ratification.

It is now provided that a contract which was not originally presumptively binding on a minor will become presumptively binding on him if he affirms it after he turns 18.[67] The same result follows where after his death the contract is affirmed by his personal representative. The affirmation may be by word or conduct and need not be communicated to any person. Of course in many situations where words or conduct allegedly constituting an affirmation have not come to the notice of the other contracting party it would be possible to raise a strong argument that the very lack of communication indicates that a final decision to affirm had not been reached.[68] It will be noted that the affirmation need not be in writing. At common law the courts talked of a "ratification", and "affirmation" in this context seems to have an identical meaning. Consequently, as "affirmation" is not defined in the Act, the cases dealing with what amounted to a ratification at common law will continue to be helpful.[69]

Provision is also made in s. 30 for a court to affirm a contract on behalf of a minor.[70] (Once the minor turns 18 this power ceases as it is no longer

---

[64] Supra, pp. 43-44.

[65] Harris v. Wall (1847) 1 Ex. 122, 154 E.R. 51; Rowe v. Hopwood (1868) L.R. 4 Q.B. 1; Ditcham v. Worrall (1880) 5 C.P.D. 410, at 412-13.

[66] Usury, Bills of Lading and Written Memoranda Act 1902, s. 9. For the exceptional case where, as s. 9 was construed, writing was not required, see Cheshire and Fifoot, op. cit. supra n. 24, at 522-523, and cases cited therein. Note also that in future it will be possible for a contract of loan to be affirmed—cf. Money-Lenders and Infants Loans Act 1941-1967, s. 37 (repealed by s. 3 and First Schedule). In regard to ratification, s. 2 of the English Infants Relief Act 1874 went even further than did Lord Tenterden's Act.

[67] S. 30. The jurisdiction under s. 30 applies to civil acts generally.

[68] Cf. Powell v. Lee (1908) 99 L.T. 284.

[69] See cases cited supra n. 65.

[70] S. 40 defines the courts having jurisdiction under ss. 30, 34, 36 and 37. The Supreme Court has jurisdiction without limitation, whereas a district court and a court of petty sessions have jurisdiction where it appears to the court that the matter in question, so far as it concerns the minor, does not amount to a value exceeding $6,000 and $750 respectively. See also s. 41 (removal into Supreme Court), s. 42 (transfer from one district court or court of petty sessions to another), s. 44 (costs) and s. 45 (allowance of time).

50                                    SYDNEY LAW REVIEW

required.) The court shall not affirm a contract unless it appears that the
affirmation is for the benefit of the minor.[71] In cases where it is doubtful
whether or not a contract is presumptively binding on a minor this power
should prove useful, especially as the application may be made not only by
the minor himself but also by any other person interested in the contract.[72]
The crucial question for the court is whether or not the affirmation will be
for the minor's benefit. It is possible that a contract not originally for the
benefit of the minor may become so by virtue of changing circumstances and
may thus be rendered presumptively binding on him by an order under s. 30.

It should also be noted that cases of affirmation will arise less frequently
than previously, because unless a contract is repudiated by or on behalf of
the minor before he attains the age of 19, the contract becomes automatically
presumptively binding on him.[73] At common law inaction by a former infant
would render binding upon him a contract entered into during infancy only
in that limited class of contracts which were binding unless repudiated.[74]
Under the Act delay will be fatal. On the other hand, the inability of a minor,
discussed in the next paragraph, to enforce against the other contracting
party a contract which is not presumptively binding on him will in many
cases present a new incentive towards ensuring that the contract is affirmed.

### THE EFFECT OF MINORS' CONTRACTS WHICH ARE NOT PRESUMPTIVELY BINDING

A contract which is not presumptively binding on a minor obviously
cannot be enforced against him. As has been indicated above, although at
common law most contracts could not be enforced against an infant, an infant
contractor could in general enforce the contract against an adult contracting
party.[75] It is now provided[76] that a minor cannot enforce any rights arising
out of a civil act unless that civil act is presumptively binding on him in
favour of the person against whom enforcement is sought. The only exception
is that those rights may be enforced in so far as a court may in its discretion
make an order in the course of exercising its jurisdiction, discussed below, to
adjust the relationship of the parties upon repudiation.[77] Thus, in order for
a contract which is not presumptively binding on him to be enforceable by
a minor, it must previously have been affirmed by him or on his behalf.

*Repudiation*

A minor may, under s. 31, repudiate a civil act into which he has
entered, provided that he repudiates either during his minority or on attaining
majority, but before he turns 19.[78] The repudiation will have no effect if, at
the time of the repudiation, the civil act is for his benefit.[79] Consequently, in
the admittedly rare event that a contract not originally for his benefit had

---

[71] S. 30(3).
[72] S. 30(2).
[73] S. 38. Where he dies before turning 19 the contract may be repudiated by his
personal representative, but such repudiation must be made before the end of one year
after his death and in any event before the date which would have been his 19th birthday.
[74] *Supra*, p. 44.
[75] *Supra*, p. 43.
[76] S. 39. "Minor" here includes, in respect of contracts entered into during his
minority, a person who has turned 18.
[77] S.37—see *infra*, pp. 52-55.
[78] For repudiation by the personal representative of a deceased minor see s. 32,
noting that the repudiation must be made before the end of 19 years after the birth of
the minor or before the end of one year after his death, whichever is the earlier.
[79] S. 31(2).

CONTRACTUAL CAPACITY OF MINORS    51

subsequently become so by virtue of changed circumstances, his repudiation would be ineffective. An attempted repudiation by a minor of a contract which was presumptively binding on him would, of course, be ineffective.[80]

No formality was required at common law for the repudiation of an infant's contract. The Act requires that a written notice of repudiation, signed by the person making the repudiation or by his agent, must be served.[81] No person is affected by the repudiation unless a notice has been served on him or on a person under whom he claims. The repudiation has effect as if made on the date of service.[82]

The position arising where an ineffective attempt at repudiation has been made must now be considered. The contract will obviously still be unenforceable against him (assuming of course that it was not initially presumptively binding and has not subsequently become so by affirmation). However the minor runs the risk that the contract will ultimately become presumptively binding on him because was not repudiated within the time limit fixed for repudiation.[83] And when a repudiation is ineffective because the contract was, at the time of the purported repudiation, for the benefit of the minor, then the other contracting party must be successful if he asks a court to exercise its power[84] to affirm the contract on behalf of the minor. In matters of sufficient importance to justify the expense involved a minor wishing to repudiate would do well to use the procedure whereby a court may repudiate a contract on behalf of a minor at any time during his minority.[85] In this way any uncertainty as to the effect of the repudiation is avoided. It is a procedure which is not, however, available after the minor turns 18.[86]

It is not expressly provided that a repudiation made during minority is itself final and binding on the minor. There was some authority at common law that, despite the obvious inconvenience and hardship which might be caused, an infant who repudiated a contract during his infancy could subsequently withdraw that repudiation (either while still an infant or on attaining his majority).[87] A repudiation would in itself be a civil act[88] and, as a repudiation can be effective only where the contract repudiated is not for the benefit of the minor, it would be arguable that the act of repudiation would be for the benefit of the minor and thus presumptively binding under s. 19. On the other hand, it could well be said that as the contract is in any event not enforceable against him, premature repudiation would not be for his benefit as it would deprive him of the power, should he later wish for some reason to exercise it, of affirming the contract. It is submitted that the difficulty is avoided by reading the provision that "the minor . . . may repudiate" the contract as implying that such a repudiation is irrevocable. Such a construction would seem to be most consonant with the general policy of the Act

---

[80] S. 35. Note s. 35(2), which makes special provision restricting the effect of repudiation of certain civil acts participated in by a minor who becomes a member of an association.

[81] S. 33(3) provides that service may be effected as provided in s. 170 of the Conveyancing Act 1919-1969.

[82] S. 33(1).

[88] *Supra*, p. 50.

[84] Under s. 30(2).

[85] See s. 34.

[86] See s. 34(1).

[87] *North Western Railway Co.* v. *McMichael* (1850) 5 Exch. 114, 155 E.R. 49; *Slator* v. *Trimble* (1861) 14 Ir. C.L.R. 342.

[88] See the definition of "civil act" in s. 6(1).

of protecting minors to a reasonable extent while not causing undue hardship to others.

At common law on adult contracting with an infant often found himself in an awkward position in that although in most cases he was unable to enforce the contract against the infant, he could not safely act as though there were no binding contract because the infant was usually[89] able to enforce the contract against the adult. It might be uncertain for a considerable period of time whether or not he himself was to be bound because of the infant's power, on attaining majority, to affirm or repudiate. Where a minor has entered into a civil act which is not presumptively binding on him this difficulty may now be overcome as any person interested in the civil act is enabled to apply to a court to make an order either affirming or repudiating the civil act on behalf of the minor.[90] The issue of the enforceability of a contract may thus be determined once and for all at the suit of an adult party.

*Adjustment on repudiation*

Once a contract has been effectively repudiated, clearly neither party will be bound by the contract to the extent that it remains purely executory. But the complex problem arises of to what extent each party may recover money or property already handed over to the other, and to what extent payment may be enforced in respect of acts already performed under the contract. It was in regard to this problem that the common law rules were perhaps least satisfactory. Quite apart from the fact that there was very considerable confusion as to just what those rules were,[91] much was left to chance. For example, it seems that where an infant had paid over money pursuant to a contract which was unenforceable against him, he could recover that money on repudiation only if he had received no benefit at all under the contract. So long as he had received some benefit, however slight, he was unable to recover that money.[92] The result was that frequently an infant was given little protection. An attempt to deal with this problem, while ensuring so far as practicable that settled transfers of property are disturbed as little as possible, is made in s. 37.

Under s. 37 the courts are given a very wide discretion as to the adjustment of the rights and obligations of the parties following upon a repudiation. No detailed rules are laid down, on the basis that to do so would often operate unjustly.[93] On the application of any person interested in a contract[94] the court may make orders for the confirmation, wholly or in part, of the contract or anything done under it, or it may make orders for the adjustment of rights arising out of the contract or out of anything done under it. The contract and any act done under it will be presumptively binding on the minor to the extent to which it is confirmed.[95] To the extent to which the contract is not confirmed the court must make orders for the adjustment of the rights of the parties. The basic aim of the court is to ensure, so far as is practicable,

---

[89] It seems that in some cases a contract was so prejudicial to the infant that it was absolutely void, and thus unenforceable even at the suit of the infant—for a discussion see Simpson, *Law & Practice Relating to Infants*, 4 ed. (1926), at 7-9.
[90] S. 36.
[91] For a discussion see Sutton, *op. cit. supra* n. 32, at 44-57.
[92] See cases cited *supra* n. 30.
[93] See *Report of the Law Reform Commission on Infancy in Relation to Contracts and Property, op. cit. supra* n. 5, at 87.
[94] S. 37 applies to civil acts generally, but we are here concerned only with its application to contracts.
[95] S. 37(3).

CONTRACTUAL CAPACITY OF MINORS 53

that the parties and those claiming under them are restored to their positions before the contract was entered into. This aim is qualified where a party has derived "property, services and other things" under the contract. The court is to make such orders as it thinks fit for the purpose of securing so far as practicable that each adult participant makes just compensation for these and that each minor participant makes just compensation to the extent that the derivation of them is for his benefit.[96]

The court's discretion to confirm, whether in whole or in part, a contract or anything done pursuant to that contract is not subject to any express limitations. However, in the case of a contract which remains wholly executory, it may be doubted whether this power will frequently be exercised, as the occasion for its exercise will arise only when the contract could not be said to be for the benefit of the minor, either originally or at the time of repudiation.[97] Where property would, if both parties had been of full capacity, have passed by virtue of a delivery or conveyance made pursuant to the contract, the disposition of property will often, as shall be shown later, have become presumptively binding on the minor,[98] and in such a case no order for the return of the property could be made without the consent of the other party.[99] Therefore, even if the property could be returned in substantially its original condition the court will usually have no power to order its return. That being so, the court would be obliged either to confirm the contract, and so make its provisions determine any payment to be made, or else to order the making of just compensation under the provisions outlined in the preceding paragraph.

The power to order the payment of just compensation where one party has under the contract derived "property, services and other things" must now be examined. The reference to "other things" seems superfluous in view of the extremely wide definition of "property".[100] The receipt of any benefit arising under the contract would appear to suffice. An adult who has derived such a benefit must make "just compensation" for it and hence it is clear that his liability is not necessarily related to any rate of payment provided for in the contract. Consequently an adult who had contracted to receive services from a minor at less than their fair value could be ordered to pay that fair value, despite the contract price. A minor[101] must pay just compensation for any benefit derived only to the extent that that derivation "is for his benefit". It is important to note that s. 37 here uses the present tense. It would seem to follow that the court must have regard only to the situation as it exists at the time of the hearing. A minor who received money by way of loan but who has since dissipated that money could hardly be said to be presently deriving any benefit from that loan. If however he has spent that money on the purchase of articles which he still retains, he could be said to

[96] S. 37(4).
[97] In the former case the contract would be presumptively binding under s. 19, in the latter the repudiation would be ineffective because of s. 31(2) or s. 32(2).
[98] S. 20.
[99] S. 37(3).
[100] S. 6(1)—" 'Property' includes real and personal property and any estate or interest in property real or personal, and money, and any debt, and any cause of action for damages (including damages for personal injury), and any other chose in action, and any other right or interest".
[101] "Minor" here includes one who has turned 18 so far as concerns any contract into which he entered during his minority.

54                              SYDNEY LAW REVIEW

be deriving a benefit to the extent of the present value of those articles.[102] Where services have been rendered to a minor it would seem to follow that compensation must be ordered only if there is some continuing benefit which could be said to have flowed from those services.[103]

Except in so far as compensation in respect of benefits received must be ordered, the court retains a general discretion to make orders "for the adjustment of rights arising out of" the contract.[104] So far as practicable, the parties must be restored to their positions before entering into the contract.[105] Where this is not practicable the court's discretion is unlimited, but no doubt its aim would be to produce a result that is fair to both parties. Where an adult party has incurred expense in respect of work preparatory to the completion of his undertakings but has not conferred any benefit on the minor, and yet cannot recoup that expenditure in some other manner, the court might perhaps attempt to apportion the loss between the parties.[106] Such questions as whether an adult party has sought to take advantage of the immaturity and lack of experience of the minor would also obviously be relevant.

The problem of the fraudulent minor is specifically referred to in s. 37(2). The subsection deals with the situation where a minor induces another to enter into a contract by a fraudulent misrepresentation as to his age or as to any other matter affecting his capacity to enter into the contract. In such a case the court may confirm the contract and anything done under it. This power is given "without limiting the generality" of the court's general powers and therefore really amounts only to an indication that the court should look especially carefully at such cases. Fraud will not in itself render a contract binding on a minor, although an action in tort would be available by virtue of s. 48.

Whereas it was established early at common law that an infant is generally liable for his torts, he could none the less not be sued in tort where such an action would amount to an indirect method of enforcing an otherwise unenforceable contract. This lead to some fine distinctions being drawn in an effort to determine whether or not a particular tort was sufficiently directly connected with a contract to bring this rule into play.[107] In future, under s. 48, a minor will be liable for any tort committed by him, whether or not that tort is connected with a contract or the cause of action for the tort is in substance a cause of action in contract. Perhaps the main significance of s. 48 is that where a person is induced to enter into a contract with a minor by a fraudulent representation by the minor that he is of full age, it will now be possible for that person to sue the minor in tort in an action for deceit.[108]

Any court having jurisdiction in respect of adjustment on repudiation

---

[102] Cf. the problem arising under the present law as to whether an infant can be forced to make restitution for benefits received and still retained—Sutton, op. cit. supra n. 32, at 44-57.

[103] Cf. the somewhat similar problem arising under legislation in the U.K. and Victoria dealing with apportionment of losses following frustration of contract—see Cheshir & Fifoot, op. cit. supra n. 24, at 732.

[104] S. 37(1)(b).

[105] S. 37(4)(c).

[106] The type of situation here envisaged is that which arose, in the context of frustration of contract, in Fibrosa Spolka Akcyjna v. Fairbairn, Lawson, Combe, Barbour Ltd. (1943) A.C. 32.

[107] Compare Jennings v. Rundall (1799) 8 Term Rep. 335, 101 E.R. 1419, with Burnard v. Haggis (1863) 14 C.B.N.S. 45, 143 E.R. 360.

[108] Cf. R. Leslie Ltd. v. Sheill (1914) 3 K.B. 607.

CONTRACTUAL CAPACITY OF MINORS                    55

may make orders for the delivery of goods or the payment of money.[109] The Supreme Court is given much wider consequential powers, including the ordering of a sale and the disposition of the proceeds thereof, and the making of vesting orders.[110] It is also given power to order the rescission or variation of any order of the Supreme Court made in the exercise of this jurisdiction.

### Dispositions of property pursuant to contract

It was clearly laid down at common law that a conveyance of real property made to or by an infant was voidable by him. Even a *bone fide* purchaser without notice would not be protected against a subsequent repudiation by an infant interested in a conveyance forming part of the chain of title. There was also some, though curiously little, authority that the same rule applied to a disposition of personal property.[111] As most dispositions of property are made pursuant to contract, the question of the effect of a transfer of property made under an unenforceable infant's contract (and of the effect on that transfer of a later repudiation of that contract) is obviously of some importance, though the problem was usually overlooked in the cases dealing with contract.[112] An attempt to deal with this problem is made in s. 20.

Section 20 is concerned with dispositions of property (real or personal) made by or to a minor. Where a minor makes a disposition of property for a consideration (which is not manifestly inadequate at the time of the disposition) and he actually receives the whole or any part of that consideration, then the disposition is presumptively binding on him.[113] Similarly, where a disposition of property is made to a minor for a consideration (which is not manifestly excessive at the time of the disposition) given or to be given by him, then the disposition is presumptively binding on him.[114]

Where a minor participates in a civil act pursuant to a contractual or other duty binding on him, s. 22 renders that civil act presumptively binding on him. Therefore s. 20 will apply only where a disposition of property is made pursuant to a contract which is not presumptively binding on the minor. In such a case the contract itself may be repudiated by or on behalf of the minor,[115] and the court's jurisdiction under s. 37 to adjust the relationship of the parties following repudiation would arise. Where, however, a particular disposition of property has become presumptively binding the court has no power to order the re-transfer of that property.[116]

This provision of the Act may be illustrated by considering the position of a minor who agrees to sell goods under a contract which is for some reason not presumptively binding on him. Once he has done some act which would, in the absence of any question of incapacity, effectively transfer his

---

[109] S. 37(5).
[110] S. 37(6).
[111] See, e.g., Williams, *Treatise on the Law of Vendor and Purchaser*, 4 ed. (1936), at 847-850.
[112] In the modern cases this may no doubt be largely explained by a pre-occupation with the question of whether, following the English Infants Relief Act 1874 (never adopted in N.S.W.), even a voidable title will pass where a disposition is made pursuant to a contract declared by that Act to be "absolutely void"—see Cheshire & Fifoot, *op. cit. supra* n. 24, at 524-525.
[113] S. 20(1).
[114] S. 20(2).
[115] Under s. 31, s. 32 or s. 34.
[116] It is otherwise of course if the person adversely affected consents to the order—see s. 37(3).

56                          SYDNEY LAW REVIEW

title in the goods to the purchaser, then, provided that the purchase price is not manifestly inadequate and that he has received part at least of that purchase price, the transfer of title is presumptively binding on him. He may still repudiate the contract but that repudiation will not be effective to revest the title in him. In this situation an infant at common law probably could not, as has been shown above,[117] recover back the property. He could clearly however sue for the balance of the purchase price if the sale had been on credit. Under the Act the position of the minor is not so clear. Because of s. 39 he cannot directly enforce the contract. Although the disposition of property has become presumptively binding on him, the contract itself is not presumptively binding, as the language of s. 20 is carefully confined to dispositions of property. Consequently the contract must either be affirmed, in which case he may then sue on the contract, or it must be repudiated, in which case the court must under s. 37 either confirm the contract (in whole or in part) or order the payment of just compensation. In either case a just result may be reached, but by a rather circuitous route.

A more complex problem arises where a minor has agreed to purchase property. In this case the disposition becomes presumptively binding on him as soon as title passes to him, whether or not the minor has paid any part of the purchase price. (This result does not of course follow if the contractually agreed purchase price is manifestly excessive.) The minor may not therefore later insist on returning the property and recovering the money (if any) which he has already paid. One might expect that the seller could, if the minor keeps the property but does not pay the purchase price, sue the minor for any balance of purchase price still unpaid. However it is provided that save to the extent to which, under the Sale of Goods Act[118] or otherwise,[119] a promise may operate as a disposition of property, s. 20 does not make presumptively binding on a minor a promise by him which is the whole or part of the consideration for a disposition of property to him.[120] The seller must therefore apply to a court asking it either to affirm or repudiate the contract on behalf of the minor. In most cases the court will no doubt repudiate as an affirmation may be made only where the affirmation would be for the benefit of the minor, and it is here being assumed that the contract was not originally for the benefit of the minor. If the court repudiates it must then exercise its jurisdiction under s. 37. If the seller consents, the court has power to order the minor to transfer the property back to the seller.[121] Otherwise it must, unless it elects to confirm the contract in whole or in part, order the minor to make just compensation to the seller to the extent that the derivation of the property is for his benefit.[122] The factors to be considered here have already been discussed.[123] The result once again is a reasonable one, but it is reached only by a procedure which is not at first obvious.

When considering the effect of s. 20 it should be remembered that

---

[117] *Supra*, p. 44.
[118] See Sale of Goods Act 1923-1953, s. 23, Rule 1.
[119] An example might be a promise to hold property belonging to the promisor on trust for the promisee.
[120] S. 20(3).
[121] S. 37(3).
[122] S. 37 (4).
[123] *Supra*, pp. 52-55.

## CONTRACTUAL CAPACITY OF MINORS 57

"disposition of property" is defined in very wide terms.[124] Further, in considering whether a disposition of property has taken place, it must be asked whether, if no problem of lack of capacity had been involved, the act alleged to have constituted a disposition of property would have been effective to pass title. Thus the mere fact that goods have been delivered by one party to the other will not suffice if the delivery was not made with intention to pass the property in the goods. It is necessary consequently to look to the general law on this topic.[125]

Although a disposition of property is not initially presumptively binding on a minor, it may subsequently become presumptively binding on him in favour of a third person because of the operation of s. 24. Section 24 provides that where a minor participates in a civil act and a person who is not a party to that civil act acquires property affected by the civil act, or any interest in property so affected, for valuable consideration and without notice that the minor was, at the time of his participation in the civil act, a minor, the civil act is presumptively binding on the minor in favour of that person and of any person claiming under him.[126] For example, a minor may have disposed of property under a contract which provided for a purchase price which was manifestly inadequate. Although the disposition is not presumptively binding on the minor in favour of the purchaser, it will become presumptively binding on him in favour of a person who subsequently acquires the property for value and without notice.[127] Once this occurs the limitation previously discussed on the court's power of adjustment under s. 37 will arise in favour of the second purchaser (but not in favour of the original contracting party). The same protection extends to any successors in title to the second purchaser whether or not such successors acquired for value and without notice.

Under the previous law a purchaser acquiring property without notice of a defect in the chain of title caused by the infancy of a previous owner was not protected against that defect. The Act, it will be noted, does not protect a purchaser from a minor, but only subsequent purchasers. A person dealing with a minor will usually be in a position to make inquiries as to the minor's age, whereas a subsequent purchaser very frequently will have no reason to suspect that a minor may have been involved in a previous transaction relating to the subject matter of his purchase. In any event, to protect the purchaser from the minor would be to limit seriously the law's protection of his interests. Section 24, it is submitted, represents a reasonable compromise designed to give reasonable protection to minors while limiting the extent to which settled titles to property may be disturbed. The main impact of this provision will be in the area of property law, but it clearly has some significance for the law of contract.

### Certified Dispositions of Property

Reference must finally be made to ss. 28 and 29 which provide a procedure whereby the presumptively binding character of a disposition of

---

[124] S. 6(1).
[125] E.g., Sale of Goods Act 1923-1953, ss. 22, 23 and 24.
[126] Note sub-sec. 4 excluding the effect of s. 20 in certain cases where the burden of a covenant runs with property.
[127] Quaere whether constructive notice would suffice. "Property" in s. 24 includes personal property (s. 6(1)), and the courts have shown a reluctance to extend the doctrine of constructive notice beyond the sphere of the law of real property—see Sutton, op. cit. supra n. 32, at 244-247.

58                          SYDNEY LAW REVIEW

property made by or to a minor for consideration may be established at the time when the disposition is made. Once a disposition becomes presumptively binding in this manner the same consequences flow as in the case of a disposition which has become presumptively binding under s. 20. Where a disposition has been made and a certificate in respect of that disposition has been given in accordance with the relevant section (s. 28 in the case of a disposition by a minor, s. 29 in the case of a disposition to a minor), the disposition is presumptively binding on the minor. The certificate, which must be given before, but not more than 7 days before, the making of the disposition, must be given either by a solicitor instructed and employed independently of any other party to the disposition or by the Public Trustee. The certificate must state that the person giving the certificate has satisfied himself that the minor understands the true purport and effect of the disposition, that he makes the disposition freely and voluntarily, and that the consideration is not manifestly inadequate (in the case of a disposition by a minor) or manifestly excessive (in the case of a disposition to a minor).

The certificate appears to be conclusive as to the matters stated therein and the only avenue of attack would be to establish that a solicitor giving a certificate was not in fact independently employed and instructed. These sections were not included in the draft bill prepared by the Law Reform Commission of New South Wales and the writer doubts the wisdom of their insertion in the Act. The aim of ss. 28 and 29 is no doubt to avoid the expense of an application to a court for the approval or affirmation of a contract pursuant to which a disposition of property is to be made.[128] However, one would normally expect the type of determination involved to be left to a court. This is especially true of the judgment which must be made as to whether the consideration is manifestly inadequate or excessive. The protection of s. 20 will fail only where the court finds that the consideration was manifestly excessive or inadequate. The writer believes that in cases where there is any doubt as to this it would be preferable that the matter should be determined by a court, rather than that it should be conclusively determined by the granting of a certificate under ss. 28 or 29.


## MISCELLANEOUS PROVISIONS

Finally, brief reference should be made to some specific provisions which have an impact on the law relating to minors' contracts and which have not previously been discussed.

*Agency*

At common law an infant could generally act as agent for a principal, but it was unclear whether or not an infant could effectively appoint an agent to act for him.[129] Under s. 46 a minor may appoint an agent (by power of attorney or otherwise), but anything which he does through an agent has no greater validity or effect as against the minor than it would if done by him without an agent. Section 46 also provides that a minor may be appointed as an agent. In this case the validity of any act done by the agent would be governed by the capacity of the principal.[130]

---

[128] Under s. 26, s. 27 or s. 30.
[129] See generally O'Hare, "Agency, Infancy and Incapacity" (1970) 3 *Univ. of Tasmania Law Rev.* 312.
[130] Assuming, of course, that the minor is old enough to have the mental capacity to understand the nature of the act he performs—see s. 18, discussed *supra*, pp. 47-48.

CONTRACTUAL CAPACITY OF MINORS                    59

*Guarantees*

The doubt previously existing as to the liability of one who guarantees an obligation of an infant[131] is removed by s. 47. The guarantor of an obligation of a minor is bound to the extent to which he would be bound if the obligation guaranteed had been entered into by a person of full capacity.

*Attainment of age*

By a process of reasoning not immediately obvious to the uninitiated, the common law reached the conclusion that a person attains a given age on the beginning of the day prior to his birthday.[132] It is now provided that unless a contrary intention appears a person shall, for the purposes of an Act, or instrument made thereunder, or of any deed, contract, will, order or other instrument, attain an age in years at the beginning of his birthday for that age.[133]

*Reference of questions of benefit*

We have seen that under many sections of the Act[134] a court may have to make a finding as to whether a civil act or some other matter is (or was at some previous point of time) for the benefit of the minor. Section 43 allows the court to refer this question to a parent or guardian of the minor, or to any other person. If such a referee agrees to act, he may make such inquiries as he thinks fit and may file in the court a report which is open to inspection by any party to the proceedings. The court may have such regard to the report as it thinks fit. The court is not of course bound in any way by the opinion of the referee, though no doubt the observations of a person intimately connected with the minor may in some cases prove very helpful to the court.

*Allowance of time*

A court making an order or giving judgment in civil proceedings (whether under the Act or otherwise) against a minor who has participated in a civil act is empowered by s. 45 to allow him an extension of time to obey or satisfy the order or judgment, or to stay execution or enforcement of the order or judgment against him. The court may exercise this power either at the time of the order or judgment, or at any later time prior to the minor's 18th birthday. No extension or stay is to extend beyond the time when the minor reaches the age of 18 years. Thus the court may, for example, grant temporary relief to a minor who finds himself in difficulties arising out of a successful action against him in respect of a contract which is presumptively binding on him.

APPRAISAL

The Minors (Property and Contracts) Act, 1970 is thus seen to represent a bold attempt to recast completely the law relating to the contractual capacity of minors. The fact that those aged 18 and over will henceforth have full contractual capacity will no doubt result in problems arising out of minors' contracts occurring less frequently than was previously the case. Nonetheless,

---

[131] See *Coutts and Co.* v. *Browne-Lecky* (1947) K.B. 104; Cheshire and Fifoot, *op. cit. supra* n. 24, at 524.
[132] *Prowse* v. *McIntyre* (1963) 111 C.L.R. 264.
[133] S. 3, amending the Interpretation Act 1897-1969, by inserting a new s. 21B, and the Conveyancing Act 1919-1969, by inserting a new sub-sec. (1A) in s. 157A.
[134] See ss. 19, 26, 27, 30, 31, 32, 34.

60                          SYDNEY LAW REVIEW

the fact remains that a substantial number of young people will still be earning their own living for some time prior to their eighteenth birthdays,[135] and that this branch of the law will continue to be of considerable social importance.

The writer believes that the concept of a beneficial civil act, which is central to the scheme of the new Act, provides a sound basis for the protection of minors. Where a minor has entered into a contract, and his so doing was clearly for his benefit, it would seem strange to deny legal enforceability to that contract under the guise of protecting the minor against the consequences of his own indiscretion. If the contract is unfair in its provisions or is unduly extravagant then the contract will not be beneficial to him, and hence will not be presumptively binding. But in appropriate cases the minor will be able to bind himself, and on occasions it will clearly be in the minor's own interests that he shoud be able to bind himself. The strange result which was usually thought to result under the old law, namely that a minor who had bought necessary clothes which had been delivered to him would be bound, whereas if he had ordered necessary clothes to be made for him he could not, prior to actual delivery, be bound,[136] will in future be avoided. Further, no longer will the question of validity hinge on the exact scope of the technical concept of necessaries. Instead, the flexible and essentially factual issue of benefit to the minor will be all-important. No doubt some difficulties of interpretation, some of which have been foreshadowed above,[137] will arise, but these difficulties should not prove unduly severe in practice. The alternative would be the type of inflexibility which was a serious defect of the old law.

The policy whereby the law's protection to minors was extended beyond the age of majority in that restrictions were placed upon the ratification of a contract entered into during incapacity[138] was of very dubious validity, and the reversal of that policy effected by the Act is to be welcomed. There seems no reason why one who is otherwise regarded as possessing full contractual capacity should not elect for himself the course to be adopted in respect of contracts entered into during minority. The further provision that failure to repudiate prior to one's 19th birthday will automatically render a contract presumptively binding may appear somewhat severe, but is probably on balance justified by the undesirability of leaving such issues undetermined for an unduly lengthy period of time. It may be, however, that in light of this provision the fact that a repudiation will be ineffective unless a written notice is served is unduly restricive. So long as the intention to repudiate has been clearly expressed this should, in the writer's view, suffice.

Of crucial importance is the very difficult problem of how one should deal with the parties to an unenforceable contract which has been repudiated. The history of the failure of the common law to deal adequately with this problem supports the view taken by the Law Reform Commission of New South Wales in drafting the legislation that the granting of a fairly wide discretion to the courts is the only approach likely to achieve fair and work-

---

[135] The Commonwealth Census of 30th June, 1966, showed, for example, that of the 72,453 persons aged 17 years in New South Wales, 76.47% were in the work force. For further details see the table printed in the N.S.W. Law Reform Commission's *Report on Infancy in Relation to Contracts and Property, op. cit. supra* n. 5, at 22.
[136] *Supra*, at 43.
[137] *Supra*, at 47.
[138] *Supra*, at 49.

CONTRACTUAL CAPACITY OF MINORS            61

able results.[139] The general aim of the court, as we have seen,[140] is to restore
the parties so far as possible to the position they occupied prior to entering
into the contract. In so far as this is not possible, each party is to make
restitution for benefits received, but, in the case of the minor, only in so far
as he still retains those benefits. Such a scheme seems sufficiently flexible to
allow the courts to mould their remedies to the requirements of differing factual
situations, while ensuring that no unnecessary hardship is caused to either
party.

The provisions rendering certain dispositions of property presumptively
binding are perhaps more controversial. There would probably be little argu-
ment with the proposition that as a general rule a completed transfer of
property should not be able to be later unsettled on the ground of lack of
capacity.[141] But what view should we take of the case where a minor has
contracted to buy, at a fair price, some extravagant luxury? A strong argu-
ment can be made that in such circumstances he ought not to be bound to
keep the item purchased,[142] whereas we have seen that under s. 20 he might
well be bound to do so.[143] On the other hand, he will not be bound if the
consideration was manifestly excessive, and it would seem that the word "mani-
festly" must be interpreted according to its ordinary meaning so that, provided
that the consideration is clearly excessive, an extreme divergence between
the contract price and the actual value of the property bought is not necsesary.
To make an exception in a case such as that envisaged would probably rob
s. 20 of much of its effectiveness. Apart from the unnecessary complexity of s.
20 relating to the effects of a finding that a disposition of property has become
presumptively binding on a minor, the writer believes that the section provides
a reasonable approach towards the problem of balancing the protection of minors
against the need for avoiding unnecessary hardship and confusion arising from
the subsequent undoing of apparently completed transfers of property.

Finally, the extensive powers given to the courts to act on behalf of
minors are a welcome innovation. In matters involving transactions of some
value, the power of a court to grant contractual capacity (either general or
limited) to a minor will provide a useful means of resolving the considerable
uncertainty which would otherwise exist, while yet ensuring that the interests
of the minor are fully protected. The same may be said of the power, after
contract, to affirm or repudiate on behalf of the minor, especially as this
power may be exercised at the suit of an adult party, who may therefore
remove himself from the highly unsatisfactory state of suspense in which he
previously often found himself. The writer's only reservations on this score
are his doubts, expressed above,[144] as to the desirability of the insertion
in the Act of the certification procedure laid down in respect of dispositions of
property.

[139] *Op. cit. supra* n. 5, at 87.
[140] *Supra*, at 52-55.
[141] *Report on Infancy in Relation to Contracts and Property, op. cit. supra* n. 5, at 85.
[142] See Pearce, *op. cit. supra* n. 54, at 273.
[143] *Supra*, at 47.
[144] *Supra*, at 58.