Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
The Law Office of Kevin O'Grady
1164 Bishop Street, Suite 1605
Honolulu, HI 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH PINALES et. al. | ) |
| | ) |
| Plaintiffs, | ) |
| | )  Civil Action No. 24-00496 JAO-WRP |
| v. | ) |
| | ) PLAINTIFFS' RESPONSE TO |
| ANN E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawaii Defendant. | ) DEFENDANT'S STATEMENT OF ) MATERIAL FACTS; CERTIFICATE OF ) SERVICE |
| | ) |
| | ) |
| | ) TRIAL: July 20, 2026 |
| | ) JUDGE:  Hon. J. Jill A. Otake |
| | ) HEARING DATE: N/A |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S CONCISE STATEMENT OF FACTS

Plaintiffs respond to Defendant's Concise Statement as follows:[1]

| FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 1. During the Founding era, homicide rates were generally low, and homicides rarely involved firearms. Ex. 1 to Aff. of Randolph Roth ("Roth Report") at 11-14. | Objection FRE 401; Irrelevant and immaterial. |
| 2. Founding era firearms were heavy, prone to misfire, capable only of firing a single shot at a time, slow to reload, difficult to conceal, and incapable of impulsive use due to difficulties remaining loaded without damaging the firearm. Roth Report at 13-14, 25. | Objection FRE 401; Irrelevant and immaterial. |
| 3. Founding era firearms were expensive and unavailable in significant quantities to civilians until the market revolution of the Jacksonian period (1828-1854). Ex. 1 to Aff. of Saul Cornell ("Cornell Report") at 24-25. | Objection FRE 401; Irrelevant and immaterial. |
| 4. Over the course of the nineteenth century, through dramatic technological advances, firearms became smaller, more lethal, quicker loading, and more commercially available. Cornell Report at 24-25; Roth Report at 20-21, 25-26. | Denied that Cornell's report at 24-25 references "dramatic technological advances." Admitted that Roth's report says this. Denied that this is relevant under FRE 401 and is immaterial. |
| 5. The use of guns in civilian violence began to rise leading up to the Civil War; legislatures responded by enacting the first prohibitions against carrying certain concealable weapons. Roth Report at 21-22. | Admitted some legislatures prohibited carry of some concealable weapons. |
| 6. During Reconstruction, firearms became the weapon of choice for social violence, which led to sharp increases in gun violence, including incidents involving individuals under age 21 and gun use in homicides. Cornell Report at 25; Roth Report at 23-28; Exhibit 1 to Aff. of Robert Spitzer ("Spitzer Report") at 20. | Objection FRE 401; Irrelevant and immaterial. |

---

[1] Plaintiffs object to Defendant's Concise Statement as the vast majority of the "facts" are immaterial and irrelevant to the issue at hand, i.e., whether the Second Amendment applies to young adults.

1

| | |
|---|---|
| 7. The proportion of homicides committed with firearms continued to climb in the post-bellum period and into the twentieth century. Roth Report at 27-28. | Admitted the cited report says this, objection that it is relevant or material. |
| 8. Technological advances enabled individuals (versus groups) to carry out mass murders in a matter of minutes. Roth Report at 35-38. | Admitted the cited report says this, objection that it is relevant or material. |
| 9. Profound societal changes marked the nineteenth century. Spitzer Report at 18-20; Cornell Report at 20-23. | Denied. Cited material does not seem to stand for this proposition. Also, immaterial. |
| 10. At the Founding, individuals under age 21 were under the legal control of heads of household (generally their fathers), but during the nineteenth century, which saw rising urbanization and industrialization, children increasingly worked outside the home. Cornell Report at 9, 25; Spitzer Report at 18-19. | Admitted the cited report says this but objection that it is relevant or material. |
| 11. Urbanization disrupted family structures and led to more youth in the streets, higher crime, and crime committed by youth, including with guns. Spitzer at 19- 20. | Admitted this is what the author claims, denied that it is relevant or material. |
| 12. Society moved away from being predominantly credit based in the Reconstruction era, so youth could earn their own income and purchase firearms. Cornell Report at 9-10, 24; Spitzer Report at 19-20. | Admitted this is what the author claims, denied that it is relevant or material. |
| 13. Urbanization, along with rises in racial violence, labor unrest, ethnocultural tensions, technological changes, and cultural changes, led to an increase in gun violence during the 1800s by those under age 21. Cornell Report at 25- 26. | Admitted this is what the author claims, denied that it is relevant or material. |
| 14. Homicide rates by young Americans have significantly increased since the mid-1960s. Roth Report at 47. | Admitted this is what the author claims, denied that it is relevant or material. |
| 15. Modern neuroscience and social science research establish that developmental and social factors specific to the 18-to-20-year-old age group are catalysts for gun violence. Roth Report at 47-49; Ex. 1 to Aff. of Elizabeth Cauffman ("Cauffman Report") at 6-21. | Admitted this is what the author claims, denied that it is relevant or material. |
| 16. The phenomenon of double-digit-fatality mass shootings arose post-World War II, and is a substantial and growing threat to public safety; this modern phenomenon extends to gun violence in schools. Ex. 1 to Aff. of Louis | Admitted this is what the author claims, denied that it is relevant or material. |

| | |
|---|---|
| Klarevas ("Klarevas Report") at 5-10; Roth at 50-51. | |
| 17. Mass shootings are disproportionately inflicted by 18-to-20-year-olds, and they are especially deadly when perpetrated by this age group. Klarevas Report at 11-17; Roth Report at 47-48. | Denied. Sample size too small to make this representation. See Klarevas at 13-16; 9. |
| 18. Since before the Second Amendment's ratification and through most of the Nation's history, individuals under age 21 were considered minors or "infants." Spitzer Report at 7-9; Ex. 1 to Aff. of Holly Brewer ("Brewer Report") at 10; Cornell Report at 9-10. | Admitted. |
| 19. Infants did not possess independent legal status and "labored under a long list of legal disabilities"; they were also "entirely subsumed within the patriarchal authority of male heads of households." Cornell at 9-10; Brewer at 10. | Admitted this is what the author claims, denied that it is relevant or material. |
| 20. Limitations on infants' ability to acquire firearms in the Founding era derived from common law restrictions on their abilities to make binding contracts for goods, or even barter transactions, in a credit economy. Cornell Report at 9-10; Brewer Report at 14-19. | Denied. Militia Act of 1792 1 Stat. 271, §1 (1792); *New Hampshire Mut. Fire Ins. Co. v. Noyes,* 32 N.H. 345, 347 (1855). |
| 21. Contracts with minors for goods other than necessities were unenforceable. Cornell Report at 9-11; Brewer Report at 16. | Denied. *New Hampshire Mut. Fire Ins. Co. v. Noyes,* 32 N.H. 345, 347 (1855) |
| 22. Entering into contracts with minors was risky for merchants, who could not avail themselves of legal processes to recover goods from minors who failed to pay – "the person giving [a minor] credit supplie[d] the articles at his peril." Spitzer at 9-10; Cornell at 11; Brewer at 14. | Admitted. Objection immaterial and irrelevant because it didn't apply to firearm. |

3

| | |
|---|---|
| 23. "Necessaries" included food, clothes, education, and lodging, but not firearms. Cornell Report at 11- 14; Brewer Report at 15-18, 20. | Denied. *See McCoy v. BATFE*, 140 F.4th 568, 590 n.7 (4th Cir. 2025) (Quattelbaum, J., dissenting) ("If the law required 18- to 20-year-olds to obtain arms for militia service, then those arms may have been 'necessaries.'"). |
| 24. The Founding era was a cash-poor agrarian economy, and infants lacked disposable income because they worked for their parents, or their fathers were entitled to their earnings. Cornell Report at 9-10; Spitzer Report at 18-19; Brewer Report at 19. | Admitted this is what the author claims, denied that it is relevant or material. |
| 25. All 13 state militia laws enacted in conformity with the 1792 federal Militia Act included "some kind of special consideration for militia members under the age of 21 that was consistent with their status as minors." Spitzer Report at 24. | Denied. Spitzer at 26 n.71 (discussing 18 to 25 year olds), thus does not appear to apply solely to those under 21. |
| 26. Many of the state militia laws exempted minors from providing their own arms, or placed the burden on their parents, with some forcing parents to provide firearms or face fines. Spitzer Report at 26- 27. | Denied as to "many" as this statement does not follow the claims made in the report. Admitted that "some" did. |
| 27. Although some states imposed a duty for minors to serve in the militia, this obligation did not establish a right to unfettered firearms access. Cornell Report at 15- 16; Spitzer Report at 21-22; Brewer Report at 41. | Admitted states imposed a duty for minors to serve in the militia. Object as immaterial and irrelevant as to "unfettered". |
| 28. Minors serving in the militia could have "been tasked with carrying a flag, fife, or drum." Cornell Report at 15. | Admitted, including rifleman. |
| 29. State militia statutes requiring armed service of 18-to-20-year-olds did not grant those minors any corresponding right to carry a gun outside the militia context. Cornell Report at 15-16. | Denied. *Hirschfeld,* 5 F.4th 407, 437 "no regulations restricting minors' ability to possess or purchase weapons until …1856." |

| | |
|---|---|
| 30. Militia laws imposed penalties on those who refused to participate, such as levying fines on parents for militia-eligible minors who failed to enroll. Cornell Report at 17-18. | Admitted although immaterial and irrelevant. |
| 31. Militia service "occur[red] through a rigorous, closely supervised, and coordinated system of hierarchical rank, order, and discipline." Spitzer Report at 22. | Admitted. |
| 32. Like today, college students in the Founding era consistently fell in the 18-to-20-year-old range, with 20 to 22 being the most common graduation age range. Spitzer Report at 33 & n.86. | Admitted although immaterial and irrelevant. |
| 33. Attending college "was one of the very few circumstances where minors lived outside of their parents' or a guardian's direct authority. As a matter of law, minors attending college traded strict parental authority for an equally restrictive rule of in loco parentis." Spitzer Report at 28. | Admitted. |
| 34. Colleges—including public universities overseen by state legislatures in at least 14 states, and 54 private institutions—enacted rules barring students from possessing firearms, some of which extended off-campus. Spitzer Report at 33-40. | Admitted but immaterial and irrelevant. |
| 35. Student firearm restrictions applied regardless of age but were a product of *in loco parentis* powers that colleges exercised over their students, which were "based on age." Spitzer Report at 31. | Admitted but immaterial and irrelevant. |
| 36. There was a "widespread understanding that those under 21 were not entitled to anything resembling adult gun rights" in the Founding era. Spitzer Report at 31. | Denied. *Hirschfeld,* 5 F.4th 407, 439 (majority did not restrict 18 year olds) |
| 37. Societal and technological changes in the nineteenth century brought about novel public safety concerns, such as increases in gun violence and gun accident levels, "including a rise in these incidents caused by those under 21." Cornell Report at 25. | Denied. No support for this proposition on page 25 of report. |
| 38. States and municipalities in the nineteenth century enacted laws restricting access to firearms for individuals under age 21. Spitzer Report at 13-18. | Admitted some states restricted access in nineteenth century. |

5

| | |
|---|---|
| 39. By the Civil War, state firearms age restriction laws proliferated nationwide, and while some applied to all firearms, the majority restricted minors' access to pistols because of their increasing use in violent crime. Spitzer Report at 10, 13-16. | Admitted that after the civil war, states passed laws to broadly forbid freed slaves from bearing arms. |
| 40. An 1875 Indiana law prohibited the transfer of any pistol, pistol ammunition, or "other deadly weapon that can be worn, or carried, concealed upon or about the person" to anyone under age 21. Spitzer Report at 16. | Admitted. Immaterial. |
| 41. By the end of the nineteenth century, at least 19 states and the District of Columbia restricted the purchase or use of firearms by minors. Spitzer Report at 16-17. | Admitted. Immaterial. |
| 42. "One of the most robust relationships in criminology is between age and crime: criminal offending increases in adolescence, peaks in the late teens or early 20s, and then continually decreases." Spitzer Report at 6; Cauffman Report at 7-8. | Admitted. Immaterial. |
| 43. Individuals under age 21 are more likely to engage in impulsive and risky acts, including gun violence. Developmental research shows that the 18-to-20-year-old range is a "period of poor decision-making and impulsive behavior" and "indicators of impulsive, reckless, self-destructive, and antisocial tendencies peak precisely at this point." Cauffman Report at 7-8. | Immaterial. Admitted that this is what the report says. Objection to relevance. |
| 44. "[T]he part of the brain that is critical for the control of impulses and emotions, maturity, and reasoned decision-making is still developing in late adolescence"; this encompasses 18-to-20-year-olds. Cauffman Report at 9-12. | Admitted that this is what the report says. Objection to materiality and relevance. |
| 45. An "important precursor of mass murders in schools" distinguishing young men from other would-be school shooters is "access to a firearm." Roth Report at 49. | Admitted that the report cites to another report that states this. Immaterial. |
| 46. Eighteen-to-twenty-year-olds comprise less than 4% of the Nation's population but are responsible for over 15% of manslaughter arrests and homicides, and are likelier to commit deadly shootings than other age groups. Spitzer Report at 6-7. | Admitted that the report claims this. Denied that it is material. |
| 47. Reconstruction era laws targeted the sale of pistols and other deadly weapons to individuals under age 21 because they were more lethal than earlier weapons. Roth Report at | Admitted that Roth makes this claim. Denied it is material as it also includes |

6

| | |
|---|---|
| 30-31. | "other deadly weapons" not only firearms. |
| 48. Pistols and other commonly restricted weapons "were ubiquitously restricted because of their increasing use in violent crime." Spitzer Report at 11- 12. | Admitted that pistols were often included in these bans, along with Bowie knives. |
| 49. In the past few decades, dramatic technological advancements have led to the development of long guns that "can inflict mass casualties in a matter of seconds and maintain parity with law enforcement in a standoff," which has made them a weapon of choice for mass shooters. Roth Report at 39-46. | Denied. *See* 18 USC 922(o) (banning newly manufactured machineguns from civilian possession). |
| 50. There are no confirmed instances of a mass public shooter who acquired his or her firearm between age 18 and 20 in violation of state restrictions. Klarevas Report at 18. | Admitted that this is what the report claims. Denied that it is material. |
| 51. States continue to distinguish the 18-to-20-year-old age group and restrict their activities, e.g., for alcohol and tobacco product purchases. Brewer Report at 41. | Implication denied. States restrict alcohol due to federal government highway funds. *See also* 23 U.S.C. § 158. On December 20, 2019, the age to purchase tobacco was raised to 21. |
| 52. Legal infancy was not tied to a dynamic, generally applicable age of majority; the definition of an "infant" at common law varied with the nature of the activity. Brewer Report at 42. | Admitted. |
| 53. "[I]n contrast to married women or non-white citizens, minors' disabilities were not driven by animus, but by the common law's recognition that infants were not capable of the discernment and rationality necessary for full inclusion in the polity." Cornell Report at 22- 23. | Admitted. |
| 54. The principle that minors were ineligible to exercise any right to acquire or have a civilian gun (absent *in loco parentis*) from the Founding era through the nineteenth century was never in flux. Spitzer Report at 18. | Denied. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 439 (4th Cir. 2021). |

7

Dated: December 1, 2025.

Respectfully submitted,

*Counsel for Plaintiff*

/s/*Kevin Gerard O'Grady*
Kevin O'Grady

*/s/ Alan Beck*
Alan Alexander Beck