Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
The Law Office of Kevin O'Grady
1164 Bishop Street, Suite 1605
Honolulu, HI 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| ELIJAH PINALES et. al. | Civil Action No. 24-00496 JAO-WRP |
| Plaintiffs, | PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND |
| v. | |
| ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawaii | PLAINTIFFS' OPPOSITION TO DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE |
| Defendant. | |
| | TRIAL: July 20, 2026 |
| | JUDGE: Hon. J. Jill A. Otake |
| | HEARING DATE: February 13, 2026 |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS'
OPPOSITION TO DEFENDANT'S COUNTER MOTION FOR SUMMARY
JUDGMENT**

## Table of Contents

I.    Introduction ....................................................................................................1

II.    Argument .......................................................................................................2

A.  Hawaii Has Failed to Satisfy Bruen's Requirements ....................................2

1.    Historically, 18 to 20 Years Old Were Not Only Able to Acquire and
Possess Arms, But Were Required to Do So........................................................2

2.    Founding Era Militia Laws Demonstrate 18-20-Year-Olds Have a Second
Amendment Right to Possess Firearms .............................................................2

3.    The State Have Not Produced a Single Historical Law Which Completely
Banned 18-20-Year-Olds from Owning Firearms................................................3

B.  A More Nuanced Approach is Improper .......................................................5

1.    The Neurology of 18-20-Year-Olds Has Not Changed Since the Colonial
Era  .................................................................................................................6

2.    Concealable Firearms Existed During the Founding Era ..........................6

C.  The State's Purported Historical Support Does Not Illustrate Shared
Analogous Principles with the Challenged Regulations .......................................7

1.    18-20-Year-Olds Are Now Responsible for Their Own Safety ..................7

2.    Entire Subsets of "The People" Cannot Be Disarmed Because of the
Criminal Conduct of a Statistically Miniscule Portion of its Population ...........7

3.    Restrictions on Gambling and Similar Activities are Not Relevant ...........8

4.    Restrictions on Students in Schools Do Not Support Hawaii's Position.....9

5.    The Cited Reconstruction Era Laws Fail the "how" and "why" Principles ..
.................................................................................................................10

6.    The Voidability Doctrine Provides no Safe Harbor for the Challenged Law .........................................................................................................12

7.    Arms Were Expressly Listed as Necessities in Bankruptcy Proceedings..13

D.    Hawaii's Call for Interest Balancing Should be Rejected .............................14

E.    Plaintiffs Have Met the Requirements for Injunctive Relief.........................15

III.    Conclusion .......................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Aymette v. State*, 21 Tenn. 154 (1840)........................................................................11

*Crocker v. Spencer*, 1824 WL 1335 (Vt. Feb. 1824) ...............................................13

*District of Columbia v. Heller*, 554 U.S. 570 (2008)...........................................3, 11

*Fotoudis v. City & Cty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) ............15

*Fry v. Canfield*, 4 Vt. 9 (1831)..................................................................................13

*Hirschfeld v. ATF*, 5 F.4th 407 (4th Cir. 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021) ........................................................................................................4

*Jones v. Bonta,* 34 F.4th 704 (9th Cir. 2022)................................................. 3, 8, 12

*Koons v. Att'y Gen. New Jersey,* 156 F.4th 210 (3d Cir. 2025), <u>as amended</u> (Sept. 17, 2025).......................................................................................................9

*McCoy v. ATF*, 140 F.4th 568 (4th Cir. 2025).........................................................4, 5

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) .......................................................9

*Morse v. Frederick*, 551 U.S. 393 (2007) ...............................................................10

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) . passim

*Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025) ..................................................1, 5

*NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) .........................................................5

*Reese v. Bureau of Alcohol*, 127 F.4th 583 (5th Cir. 2025).......................................3

*Staples v. United States*, 511 U.S. 600 (1994) .........................................................10

*State v. Callicutt*, 69 Tenn. 714 (1878) ...............................................................10, 11

*United States v. Allam,* 140 F.4th 289 (5th Cir. 2025) ...............................................9

*United States v. Allam*, 677 F.Supp.3d 545 (E.D. Tex. 2023) ....................................9

*United States v. Rahimi*, 602 U.S. 680 (2024) ..........................................................11

*Valle del Sol Inc. v. Whiting,* 732 F.3d 1006 (9th Cir. 2013) ....................................15

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), *cert. denied*, 145 S.Ct. 1924
      (2025)..................................................................................................................8, 10

*Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1983)..............................................................15

## Statutes

18 U.S.C. § 922(b)(1)......................................................................................................4

1856 Ala. Acts. 17 ........................................................................................................12

1859 Ky. Acts 245, § 23 ...............................................................................................12

1860 Ky. Acts 245, § 23 ...............................................................................................12

33 Hen. 8, c. 6, § 1, An Act Concerning Crossbows and Handguns (1541)..............7

An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law
      Passed 1686) ...........................................................................................................6

H.R.S. § 134-2(d).........................................................................................................15

Militia Act of 1792 1 Stat. 271, §1 (1792).................................................... 2, 3, 14

Tenn. Code § 4864 (1858)...........................................................................................10

## Other Authorities

Dorsey, Clement. *The General Public Statutory Law and Public Local Law of the
      State of Maryland: From the Year 1692 to 1839 Inclusive, with Annotations
      Thereto, and a Copious Index*. Baltimore: J. D. Toy, 1840. ................................14

THE PUBLIC RECORDS OF THE COLONY OF CONNECTICUT, PRIOR TO
THE UNION WITH NEW HAVEN COLONY, MAY 1665 (J. Hammond
Trumbull ed.,1850) ...................................................................................................14

Virginia Acts of Assembly, Passed In the Colony of Virginia: From 1662, to 1715.
Volume I. London: Printed by John Baskett, printer to the King's most excellent
majesty, 1727 ...........................................................................................................14

## I.  Introduction

The arguments made in the State's summary judgment motion are either foreclosed by precedent or wilt in the face of overwhelming persuasive authority. The State begins its brief by arguing that this Court should renew its decision from the preliminary injunction that a more nuanced approach should apply. However, since this Court's determination of the preliminary injunction, the Ninth Circuit's decision in *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025), changed circuit precedent.  And that precedent compels a determination that a more nuanced approach is not appropriate. The State goes on to present a historical narrative that does nothing to justify Hawaii's complete ban on the possession of arms. Perhaps realizing this, Hawaii proceeds to produce social science data as part of a call for interest balancing.  However, pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 26 (2022), this Court must solely look at the scope of the historical Second Amendment right to decide this matter. No early society completely banned 18-20-year-olds from acquiring or possessing firearms or ammunition. Thus, the challenged laws are unconstitutional.

## II. Argument

### A. Hawaii Has Failed to Satisfy *Bruen*'s Requirements

Under *Bruen*, Hawaii must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. That it has failed to do.

### 1. Historically, 18 to 20 Years Old Were Not Only Able to Acquire and Possess Arms, But Were Required to Do So

The State claims that during the colonial era firearms were "unavailable in significant quantities." Defendant's ("Def.") Memorandum in Support of Their Motion for Summary Judgment ("MSJ") at 5. That belies common sense. Virtually every adult man had to own a firearm pursuant to the various militia acts. *See e.g.* Militia Act of 1792 1 Stat. 271, §1 (1792)[1] ("That every citizen, so enrolled and notified, shall, within six months thereafter, provide himself with a good musket or firelock…"). It is unclear how the State can contend firearms were unavailable despite acknowledging the existence of the militia acts.

### 2. Founding Era Militia Laws Demonstrate 18-20-Year-Olds Have a Second Amendment Right to Possess Firearms

---

[1] Available at https://shorturl.at/QXEiV & attached (throughout this document the term "attached", for **all** referenced "exhibits" in this document, will mean attached to Plaintiffs' Response to Defendant's Concise Statement of Facts) as Exhibit 1 therein.

2

Hawaii claims that colonial militia laws support the constitutionality of the challenged laws. This is due to a misunderstanding of how the militia system operated. The State argues that "when 18-to-20-year-olds had access to firearms, they were subject to military supervision and discipline." Def. MSJ at 13. However, militia members were required to keep their firearms at home and bring them to muster. "Ordinarily when called for militia service able-bodied men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *District of Columbia v. Heller*, 554 U.S. 570, 573 (2008).

Therefore, militia members including 18-20-years-old always had access to their firearms even when not at militia duty. "[R]equirements that parents furnish firearms for their sons' militia service do not mean that the military-age young men lacked the right to keep and bear (or obtain) such arms themselves." *Reese v. Bureau of Alcohol*, 127 F.4th 583, 597 (5th Cir. 2025).[23]

3. The State Have Not Produced a Single Historical Law Which Completely Banned 18-20-Year-Olds from Owning Firearms

---

[2] Hawaii claims that militia laws are irrelevant because "minors were not guaranteed a weapon" because they might be assigned to be a musician or carry a flag. Def. MSJ at 12 n. 7. However, all militia members were required to bring a weapon to muster. *See* Militia Act of 1792 1 Stat. 271, §1 (1792).

[3] Further, 18-to-20-year-olds were expected to bear arms as part of the posse comitatus, which "allowed sheriffs and others to compel citizens to serve in the name of the state to execute arrests, level public nuisances, and keep the peace." *Jones v. Bonta,* 34 F.4th 704, 722 (9th Cir. 2022) (Lee, J., concurring), vacated on reh'g en banc in light of *Bruen*, 47 F.4th 1124 (9th Cir. 2022) (Mem.) (cleaned up).

3

Neither the State nor its experts have produced a single example of historical America completely banning the *ownership* of firearms for 18-20-year-olds.[4] Even assuming the State's historical analysis is true, throughout American history 18-20-year-olds have been able to obtain firearms through intrafamilial transfers.   The State itself argues that intrafamilial transfers are the manner in which 18-20-year-olds obtained firearms for militia service.  Defendant's MSJ at page 11.  Since early American societies always provided 18-20-year-olds some mechanism to obtain firearms and Hawaii law does not, historical laws' "burden on the right of armed self-defense" is not "comparable" to the challenged laws. *Bruen*, 597 U.S. at 29. The case law which Hawaii relies upon does not dispute this point. "Section 922(b)(1) is narrow in several respects. First, the law regulates only transactions involving firearms. It does not prohibit anyone from owning, possessing, or using firearms. Second, the provision regulates only the commercial sale of firearms." *McCoy v. ATF*, 140 F.4th 568, 577 (4th Cir. 2025) Third, when it comes to 18-to-20-year-olds, 18 U.S.C. § 922(b)(1) applies only to firearms "other than a shotgun or rifle." *Id* at 573. The Fourth Circuit solely found that there is a historical

---

[4] No part of the challenged laws falls within *Heller*'s language about commercial sales.  "A condition or qualification on the sale of arms is a hoop someone must jump through to sell a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer records." *Hirschfeld v. ATF*, 5 F.4th 407, 416 (4th Cir. 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021) (emphasis the court's). The presumption does not apply to restrictions "on buying a gun." *Id.*  Hawaii's restrictions restrict the buyer not the seller.

4

tradition of restricting the "commercial sale of firearms." *Id* at 577. Similarly, *NRA v. Bondi*, 133 F.4th 1108, 1113 (11th Cir. 2025) actually supports the unconstitutionality of the challenged laws. "Consistent with these Founding-era limitations, states in the nineteenth century expressly prohibited the sale of arms to minors with some exceptions for parents to provide firearms to their children." *NRA*, 133 F.4th at 1123. While Plaintiffs dispute the holdings of the aforementioned cases, even under their reasoning, the challenged laws are unconstitutional.

## B. A More Nuanced Approach is Improper

The State argues that this Court should apply a more nuanced approach. However, Hawaii has not identified any novel issue it faces compared to the Colonial Era. Thus, circuit precedent dictates that a more nuanced approach should not be taken. Most if not all of the problems Hawaii identified are of the same kind that fully existed in the Colonial Era. To the extent Hawaii is correct that any of those problems exist to a greater degree, precedent dictates that is not a sufficient justification to apply a more nuanced approach. "The modern problems that" Hawaii "identifies as justification for" the challenged laws "are not different in kind" from past problems. *Nguyen*, 140 F.4th at 1245 "Therefore, a nuanced approach is not warranted." *Id.* As shown below, the public safety concerns identified by the State existed during the Colonial Era in the same way as in the

5

modern era. And unlike the Colonial Era, contemporary 18-20-year-olds are full-fledged adults who are entirely responsible for their own safety.

1.  <u>The Neurology of 18-20-Year-Olds Has Not Changed Since the Colonial Era</u>

The State relies on the expert report of Elizabeth Cauffman to claim "developmental and social factors specific to the 18-to-20 age group are catalysts for gun violence" in support of its argument that a more nuanced approach should be used. Def. MSJ at 7. Nothing in Cauffman's report claims that the brain development of 18-20-year-olds has changed since the Colonial era. Thus, there is no reason to apply a more nuanced approach.

2.  <u>Concealable Firearms Existed During the Founding Era</u>

Hawaii argues that a more nuanced approach should be taken because firearms today are concealable unlike colonial firearms. However, Hawaii is incorrect in asserting that small concealable firearms did not exist during the Colonial Era. Concealable pistols, also known as pocket pistols, existed in colonial America. Of course, some people also used concealable firearms for crimes, causing some earlier outlier examples of restriction. In 1686, New Jersey banned the *carry* of pocket pistols. *See* An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law Passed 1686).[5]("And be it further enacted by the authority aforesaid, that no person or persons after publication hereof, shall

---

[5] Available at https://bit.ly/3LuDwaS and attached as Exhibit 2.

presume privately to wear any pocket pistol…"). Similarly, in 1541 England banned the ownership of small handguns and crossbows. *See* 33 Hen. 8, c. 6, § 1, An Act Concerning Crossbows and Handguns (1541).[6] (noting that crime was committed with "little short handguns").  Firearms have always been concealable, thus the concealability of firearms is not a modern problem.

### C.  The State's Purported Historical Support Does Not Illustrate Shared Analogous Principles with the Challenged Regulations

#### 1.  18-20-Year-Olds Are Now Responsible for Their Own Safety

During the Colonial Era, 18-20-year-olds were under the care and protection of their parents. Whereas now they are fully responsible for their own safety. If we are not to have a "law trapped in amber" that means that historical laws impacting minors should not have any relevance to them. The relevant historical principle is that adult citizens beyond the age of majority were afforded their full constitutional rights. Today, that age of majority is 18.

#### 2.  Entire Subsets of "The People" Cannot Be Disarmed Because of the Criminal Conduct of a Statistically Miniscule Portion of its Population

Even assuming violent crime among 18-20-year-olds has increased since the Colonial Era, 18-20-year-olds as a whole are not widely associated with violent crime. "Only 0.25% of [18-to-20-year-olds] commit violent crimes," so if this

---

[6] Available at https://bit.ly/4hUDXHF attached as Exhibit 3.

Court accepts the State's argument, it would be permitting a restriction on "the rights of 99.75% of [18-to-20-year-olds] based on the bad acts of an incredibly small sliver of the [18-to-20-year-old] population." *Jones,* 34 F.4th at 748 (Lee, J., concurring). As *Worth* explained "[a] legislature's ability to deem a category of people dangerous based only on belief [that they posed such a danger] would subjugate the right to bear arms 'in public for self-defense' to 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' " *Worth v. Jacobson*, 108 F.4th 677, 695-96 (8th Cir. 2024), *cert. denied*, 145 S.Ct. 1924 (2025) (quoting *Bruen*, 597 U.S. at 70). That a miniscule portion of the 18-20-year-old population commits crime does nothing to justify the challenged laws.

3.   Restrictions on Gambling and Similar Activities are Not Relevant

This Court should not allow the State to analogize to activity that is not constitutionally protected to justify the challenged laws. The State argues that restrictions on "alcohol and tobacco purchases, and select types of gambling" for 18-20-year-olds disapproves Plaintiffs' arguments. The State's position is deeply flawed because the State's examples deal with activities which are not constitutionally protected. Notably, the State has not pointed to a single constitutionally protected right which can be restricted, much less banned, as to 18-20-year-olds. They are entitled to the same rights as other adults as to the rest of

8

the Bill of Rights. The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights." *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). This Court should reject Hawaii's request to treat it as such.

4.   Restrictions on Students in Schools Do Not Support Hawaii's Position

The State argues that restrictions on students support the constitutionality of the challenged laws. This is untrue. Unlike statutory restrictions on firearm rights, restrictions in schools have a different and more limited history. Such historical restrictions were based on notions of *in loco parentis* and applied only to students, not to faculty or other adults. *See Koons v. Att'y Gen. New Jersey,* 156 F.4th 210, 309 (3d Cir. 2025), as amended (Sept. 17, 2025) (Porter, J., *concurring in part, dissenting in part*) ("These codes of conduct prohibited students from carrying guns; the majority identifies no such regulation affecting staff, teachers, or anyone other than students."); *United States v. Allam*, 677 F.Supp.3d 545, 569-72 (E.D. Tex. 2023), *aff'd United States v. Allam,* 140 F.4th 289 (5th Cir. 2025) (canvassing historical rationales for restrictions on arms at schools, noting "the prohibitions applied to students only").  They were not age based restrictions because they "applied to all students regardless of age." *Id.* And typically, "they applied only to possession within a school or in an area where school functions were taking place." *Id* at 575. Such restrictions were frequently accompanied by other requirements that, applied

to the general population, would have been certainly unconstitutional. *See Worth*, 108 F.4th at 695-96 (8th Cir. 2024); *Morse v. Frederick*, 551 U.S. 393, 416 (2007) (Thomas, J. concurring).

5. The Cited Reconstruction Era Laws Fail the "how" and "why" Principles

None of the Reconstruction Era laws relied upon by the State are analogous to the challenged laws. The Tennessee law prohibited "selling, loaning, giving, or delivering 'to any minor a pistol, bowie-knife, dirk, Arkansas tooth-pick, hunter's knife, or like dangerous weapon, except for a gun for hunting or weapon for defense in traveling." Tenn. Code § 4864 (1858). *See also State v. Callicutt*, 69 Tenn. 714, 714 (1878) ("This section makes it a misdemeanor to sell, give, or loan a minor a pistol, or other dangerous weapon, except a gun for hunting, or weapon for defense in traveling."). Hawaii's reliance on *State v. Callicutt* is misguided. This opinion was evaluating a law which gave exemptions for hunting and self-defense unlike the challenged laws. As the law itself declares, it was targeted only at specific "dangerous weapon[s]" and notably does not include in its list, alongside things like an "Arkansas tooth-pick", the standard rifles and long guns that were the preferred self-defense firearms of the time, and so it is unlike the State's ban on all ordinary firearms that "traditionally have been widely accepted as lawful possession." *Staples v. United States*, 511 U.S. 600, 612 (1994). And of course, the law explicitly targeted "minors" not legal adults like 18-to-20-year-old Hawaiians today. *United States v.*

10

*Rahimi*, 602 U.S. 680, 691 (2024) holds that, when analyzing a law that regulates arms-bearing conduct, "the appropriate analysis turns on whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. Thus, "[e]ven when a law regulates arms-bearing for a permissible reason ... it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id*. The shared "principle that underpin[s] our regulatory tradition" is that legal adults have full Second Amendment rights. *See Rahimi*, 602 U.S. at 692.

Furthermore, *State v. Callicutt* endorsed the legal reasoning of the Tennessee Supreme Court's earlier opinion in *Aymette v. State*, 21 Tenn. 154 (1840). "The cases of *Aymette v. State*, 2 Hum. 155, […], sufficiently indicate the difference between the right and the wrong construction of the "right to keep and bear arms,"…". *State v. Callicutt*, 69 Tenn. 714, 716 (1878). The *Aymette* Court's interpretation of the right to bear arms was expressly disavowed by the Supreme Court. *Heller*, 554 U.S. at 613. As *State v. Callicutt* was premised on a legal interpretation expressly disavowed by *Heller,* this Court should not rely on it. The Alabama law is much the same—it too applied only to "male minors," not adults, and only to a subset of weapons ("bowie knife, or knife or instrument of the like kind or description … or air gun or pistol") that excluded common self-defense firearms of the time. *See* 1856 Ala. Acts.

11

17. The story with the Kentucky law,[7] is also the same. It likewise applied only to "minors", explicitly carved out an option for their parents to supply them with arms, and also only barred the sale of certain enumerated "deadly weapon[s], which [are] carried concealed."[8]; *see also Jones*, 34 F.4th at 720 (discounting laws that only banned the sale of pistols or which had exceptions for parental consent).[9]

　　6.　The Voidability Doctrine Provides no Safe Harbor for the Challenged Law

The premise of the voidability doctrine was that minors could not enter into binding credit contracts. It existed to protect *minors* from predatory creditor practices by allowing *minors* to void a contract with a commercial seller.  As established in Plaintiffs' MSJ, that doctrine is irrelevant to the challenged law because 1) 18-20-year-olds are adults not minors; 2) the challenged law goes beyond a sales prohibition and completely bans possession; and 3) the "why" behind the doctrine was to protect the minors from predatory lending/business practices of adults, not about protecting society from minors. Hawaii, however, has made no effort to rebut the wealth of case law presented in Plaintiffs' MSJ.

---

[7] The State cites the Kentucky law as 1859 Ky. Acts 245, § 23, however Plaintiffs believe the correct citation is 1860 Ky. Acts 245, § 23

[8] *See Id.*

[9] The Kentucky law also should be rejected because it "restricted firearm access by African Americans". *Jones*, 34 F.4th at 720.

The State claims Blackstone's list of necessities should be construed as an exclusive list of necessities. *See* Saul Cornell Expert Report at *10-11. That argument rings hollow when Blackstone expressly notes that there are other necessities. "Lastly, it is generally true, that an infant can make no other contract that will bind him: yet he may bind himself to pay for his necessary meat, drink, apparel, physic, and ***such other necessaries***." 1 WILLIAM BLACKSTONE, COMMENTARIES Ch. 17 (emphasis added).[10] Blackstone's caveat drains the persuasive value from Cornell's argument. And even under Cornell's theory that Blackstone's list should be presumed to be an exclusive list, "hard textual evidence to the contrary" (Cornell Report at *11), is sufficient to overcome this presumption. And Plaintiffs have provided numerous cases where items other than the aforementioned were considered necessities. Plaintiffs' MSJ at *22 n.7.

7.  <u>Arms Were Expressly Listed as Necessities in Bankruptcy Proceedings</u>

During the colonial period, firearms were considered necessities and thus exempt from seizure during bankruptcy proceedings. "Without such construction, no tools, arms, or articles of household furniture would be exempted" as people may subsist without them. *See Crocker v. Spencer*, 1824 WL 1335, at *2 (Vt. Feb. 1824). *See also Fry v. Canfield*, 4 Vt. 9, 10 (1831) finding that military equipment is "exempt from attachment." Connecticut's 1650 law allowed officers to seize

---

[10] Attached as Exhibit 4 and available at https://tinyurl.com/7dwre5u5 .

property but expressly exempted arms.[11]And the federal Uniform Militia Act in 1792 exempted militia arms "from all suits, distresses, executions or sales, for debt or for the payment of taxes." 1 Stat. 271, §1 (1792). Throughout Colonial America arms and ammunition were deemed necessities for militia service and hunting. [12]

### D. Hawaii's Call for Interest Balancing Should be Rejected

Hawaii makes a number of public policy arguments that amount to interest balancing. However, none of these arguments are permissible under *Bruen* which requires a history-based inquiry and specifically dispensed with interest balancing. "While judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here. *Bruen*, 597 U.S. at 2. The State's arguments regarding crime and other societal ills simply have no place in Second Amendment analysis. Arguments about brain

---

[11] THE PUBLIC RECORDS OF THE COLONY OF CONNECTICUT, PRIOR TO THE UNION WITH NEW HAVEN COLONY, MAY 1665, at 537 (J. Hammond Trumbull ed.,1850). Attached as Exhibit 5. Available at https://shorturl.at/ywvvJ

[12] *See* Virginia Acts of Assembly, Passed In the Colony of Virginia: From 1662, to 1715. Volume I. London: Printed by John Baskett, printer to the King's most excellent majesty, 1727 at 147. (exempting arms from seizure) available at https://bit.ly/3LoltTQ and attached as Exhibit 6; *See also* Dorsey, Clement. *The General Public Statutory Law and Public Local Law of the State of Maryland: From the Year 1692 to 1839 Inclusive, with Annotations Thereto, and a Copious Index*. Baltimore: J. D. Toy, 1840. at pg. 763 available at https://bit.ly/4p6LgOV and attached as Exhibit 7 (Maryland expressly exempted firearms and ammunition from seizure that were needed for "subsistence" i.e. hunting).

development are especially impermissible since there is no evidence that brain development has changed since the Colonial Era.

### E.  Plaintiffs Have Met the Requirements for Injunctive Relief

Plaintiffs are entitled to a permanent injunction. Plaintiffs have demonstrated actual success on the merits. Plaintiffs have also suffered "an irreparable injury" because they have been deprived of a constitutionally protected right. *See Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013). The State's other arguments are foreclosed by precedent because, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).[13]

### III. Conclusion

The State's MSJ should be denied and Plaintiffs' MSJ should be granted.

Respectfully submitted,

Dated:  __December 14, 2025___

/s/ *Kevin Gerard O'Grady*
Kevin Gerard O'Grady

/s/ *Alan Alexander Beck*
Alan Alexander Beck
Attorneys for Plaintiffs

---

[13] Moreover, the State "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). *See also Fotoudis v. City & Cty. of Honolulu*, 54 F. Supp. 3d 1136, 1145 (D. Haw. 2014) (applying these factors and granting a permanent injunction against H.R.S. § 134-2(d)).