Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUDA ROACHE, ALOHA STRATEGICS LLC DBA DANGER CLOSE TACTICAL, JGB ARMS LLC, SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, <br><br> Defendant. | Civil Action No. 1:24-cv-00496 JAO-WRP <br><br> SUPPLEMENTAL BRIEF |

**Table of Contents**

I.      Introduction.................................................................................................1

II.     *Wolford* and *Hemani* Have Explicated Bruen's Plain Text Analysis.........1

III.    *Wolford* and *Hemani* Have Explicated That *Bruen's* Historical Test
Requires Historical Analogs to Be Vastly More Congruous to a Challenged
Modern Law Than Those Offered by Hawaii .......................................................2

IV.     This Court Should Not Apply a More Nuanced Approach But if it Does

it Still Should Find Hawaii law is Unconstitutional..............................................3

V.      The Voidability Doctrine is Disanalogous to the Challenged Hawaii Law
Because It Differs on Both the "How" and the "Why." ........................................4

VI.     Restriction on Schools are not Relevantly Similar to Hawaii Law..........6

VII.    The 19th Century Laws Hawaii Cites Are Not Relevantly Similar ..........7

VIII.   Conclusion ...............................................................................................9

## I.  Introduction

The Supreme Court's recent decisions in *United States v Hemani* and *Wolford v. Lopez* have made clear the unconstitutionality of the Hawaii laws criminalizing the possession of ammunition and firearms by 18-20-year-olds. *Wolford* and *Heman*i have explicated *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)'s methodology and demonstrate Hawaii has failed to carry its "burden of proving its regulatory efforts are 'consistent with the Nation's historical tradition of firearm regulation.' " *United States v. Hemani*, No. 24-1234, 608 U.S. ---, at *5 (June 18, 2026) (quoting *Bruen*, 597 U. S., at 24).

## II. *Wolford* and *Hemani* Have Explicated Bruen's Plain Text Analysis

*Wolford* clearly states that the Second Amendment covers all members of the political community. As legal adults capable of voting and otherwise participating in the political community, 18–20-year-olds are part of "the people" because they are "all members of the political community." *Wolford v. Lopez*, No. 24-1046, 609 U.S. ---, at *10, (June 25, 2026) (quoting *District of Columbia v. Heller*, 554 U. S. 570, 580 (2008).).   Plaintiffs are part of the People. As their conduct deals with conduct which "concern[s]" a restriction on "Arms", their conduct falls within the plain text of the Second Amendment. *Id.*  Thus, their conduct is "presumptively" protected by the Second Amendment. *Hemani*, No. 24-1234, at *5 (quoting *Bruen*, 597 U.S., at 24). Therefore, "the government bears the

1

burden of showing its regulatory efforts are "consistent with the Nation's historical tradition of firearm regulation." *Id* (quoting *Bruen*, 597 U.S., at 24).

**III.      *Wolford* and *Hemani* Have Explicated That *Bruen's* Historical Test Requires Historical Analogs to Be Vastly More Congruous to a Challenged Modern Law Than Those Offered by Hawaii**

*Wolford* and *Hemani* have clarified what is required to satisfy *Bruen's* historical analysis test. "*Bruen* identified three important inquiries that courts should undertake in evaluating proffered analogues. The first is the number of jurisdictions in which they were adopted." *Wolford*, 609 U.S. ---, at *7. "The second is the extent to which they were well-accepted. This acceptance may be express, as when judicial decisions explicitly acknowledged the rule's legality. Or the acceptance may be tacit, as when a restriction on the keeping or carrying of arms was "open, widespread, and unchallenged.' " *Id* at 11 (quoting *Bruen*, 597 U. S., at 36. "The third is whether any analogue or collection of analogues is "relevantly similar" to the modern law." *Id.* "Determining whether this condition is met requires consideration of "how" the analogue restricted the keeping or bearing of arms—that is, whether it imposed a restriction similar to that imposed by the challenged law. Ibid. And a court must also consider "why" the analogue restricted the keeping or bearing of arms—that is, whether its rationale was similar to that of the new law." *Id*. When a law "targeted different kinds of people, did so for

2

different reasons, and operated in different ways" it is not relevantly similar.".
*Hemani,* No. 24-1234, at *9. "To satisfy *Bruen*, Hawaii must identify historical laws that pursued an analogous goal in an analogous way." *Wolford,* No. 24-1046 at *18 (Barrett, concurring). Hawaii has not done that.

**IV.      This Court Should Not Apply a More Nuanced Approach But if it Does it Still Should Find Hawaii law is Unconstitutional**

This Court should not apply a more nuanced approach when evaluating these laws for all the reasons laid out in the prior briefing. Unlawful violence and adolescence are things that have existed throughout American history. They are not a modern problem. However, even this if this Court does find that the challenged laws address a new, as of yet unidentified, problem, *Wolford* makes clear that "the 'how' and 'why' of the historical analogue and modern regulation must be congruous enough to enable a court to say: 'Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is likewise consistent with that right.' " *Id* at *11.  Here, none of the laws cited by Hawaii are congruous enough to make that determination.

## V. The Voidability Doctrine is Disanalogous to the Challenged Hawaii Law Because It Differs on Both the "How" and the "Why."

Here, Hawaii's historical analogs fail the Supreme Court's stringent test. "Mere disapproval of protected conduct is not a valid reason to severely restrict it." *Wolford*, No. 24-1046 at *19 (Barret, Concurring). Hawaii's primary argument from the colonial era is that, at the time, 18-20-year-olds were minors and minors were unable to enter binding contracts for the sale of most goods as a means to protect their assets from impudent spending, and the minors themselves from unscrupulous merchants. As such, Hawaii argues, as a practical matter, 18-20-year-olds could not acquire firearms.

As a threshold matter the voidability doctrine fails the "how" because it limited the ability of minors to purchase items on credit, and the "why" because its purpose was to protect minors and merchants from ill-advised sales agreements. It additionally fails the "who" because it affected exclusively *minors* under the law, and not adults. Just as the majority in *Hemani* found that habitual drunkard laws failed to support the application of 922(g)(3) because they regulated different people in a different way for a different reason, so to here is the voidability doctrine equally inapplicable. The historical regulation of minors by limiting their ability to purchase items on credit for the purpose of protecting their assets does

4

not support the wholesale disarmament of legal adults for the purpose of reducing criminal violence.

Additionally, as previously briefed, Plaintiffs have shown that firearms were necessities which were generally exempted from the voidability doctrine so that minors could purchase items they needed for basic survival. 18-20-year-olds could enter into valid contracts for necessities. Even accepting Hawaii's tenuous analogical connection between the voidability doctrine and the challenged laws as apt, which it is not, Plaintiffs have briefed at length evidence that firearms themselves were exempt from the purchase limitations the doctrine created. Even in making this argument, Hawaii acknowledges that this contract doctrine did not bar 18-20-year-olds from purchasing firearms. Hawaii MSJ at 9-11. It was perfectly legal for an 18-20-year-old to purchase a firearm if a merchant was willing to sell it to him and it was perfectly legal for a merchant to sell to the 18-20-year-old. During the colonial era an 18-20-year-old could purchase any good by paying cash or if a merchant trusted them to honor their contract.[1]

The voidability doctrine "targeted different kinds of people, did so for different reasons, and operated in different ways" and are therefore not relevantly similar. *Hemani*, No. 24-1234, at 9. *Wolford* also demonstrates that the voidability

---

[1] This isn't an outlandish proposition either. If a 20-year-old regularly needed supplies for a farm or other venture, he wouldn't alienate merchants for fear of them no longer doing business with him.

5

doctrine is not relevantly similar. "Hawaii offers no evidence that these laws were designed to vindicate the community's aversion to [18-20-year-old] people carrying [or owning] guns in public. Nor is it plausible that they rested on such a basis." *Wolford*, No. 24-1046, at *20 (Barret, concurring). "There were no police forces, and most Americans lived in rural areas, often in homes located miles from the closest neighbor.  If these homes were attacked, the residents were on their own, and their survival might well depend on the availability of a firearm to ward off assailants." *Id* at *9. The contract doctrine did not "impose[] a restriction similar" to the challenged Hawaii laws and the contract doctrine's "rationale" is in no way similar to the challenged laws. *Id* at *11. Pursuant to *Wolford*, this Court should find Hawaii cannot rely upon the voidability contract doctrine because it is not relevantly similar to the challenged laws.

## VI.        Restrictions on Schools are not Relevantly Similar to Hawaii Law

*Wolford* and *Hemani* also demonstrate that Hawaii's reliance on Founding era university regulations is misplaced. University regulations "targeted different kinds of people, did so for different reasons, and operated in different ways" and are therefore not relevantly similar.". *Hemani*, No. 24-1234, at * 9. "[T]hese rules applied to students regardless of age." And by definition only applied to students. [F]ew Americans attended college in the eighteenth and nineteenth centuries." Aff. of Robert Spitzer ("Spitzer Report") at 28-29. And these rules only applied within

6

the "limited realm of college life and geography." *Id* at 30. "[S]tudent behavior was under the control of the colleges only while the students were enrolled and living at or in proximity to the college, this was as far-reaching a prohibition as the institutions were capable of exercising." *Id*. "The relationship between a university and a student is contractual in nature." *Corso v. Creighton Univ*., 731 F.2d 529, 531 (8th Cir. 1984). Then and now, schools can enact rules that regulate student behavior as a prerequisite to attendance that the government cannot. "The gap between the State's" university "analogues and its new rule is too wide." *Wolford*, No. 24-1046, at *16. Historical university rules are not relevantly similar to the challenged laws.

## VII.    The 19th Century Laws Hawaii Cites Are Not Relevantly Similar

*Wolford* and *Hemani* also dispose of the 19th Century laws that Hawaii relies on. As Hawaii concedes, "the majority [of the 19th Century laws only] restricted minors' access to pistols." Hawaii MSJ at 17. Here, the Hawaii laws ban the acquisition of all firearms (and thus possession). As this Court noted in its preliminary injunction order, "the Court could not find "a single law in the record before it that explicitly banned the transfer of all firearms to people under 21." *Pinales v. Lopez*, 765 F. Supp. 3d 1024, 1049 (D. Haw. 2025). While this Court would go on to find that these laws were "analogous enough" to the challenged laws to be relevantly similar, *Wolford* and *Hemani* demonstrate that these laws are

7

not analogous enough to be relevantly similar. *Id* at 1052.  The question this Court should ask is "[b]ecause it was accepted that prohibiting" some restrictions on certain arms while maintaining the availability of other firearms for self-defense "can we infer that it is also consistent with that right to" completely ban the possession of all firearms? *Wolford v. Lopez*, No. 24-1046, at *16 (June 25, 2026). "The question answers itself. The gap between the State's" 19th Century laws and the challenged laws "is just too wide." *Id*.

While it is true that this Court previously found "it seems somewhat inconsistent with modern Second Amendment jurisprudence to say that the mid-19th century laws demonstrate that governments may today prohibit "the quintessential self-defense weapon." *Pinales*, 765 F. Supp. 3d at 1051. *Hemani* and *Wolford* have explicated the *Bruen* methodology. Even accepting all of Hawaii's historical arguments as true, the challenged Hawaii laws are unconstitutional because, as conceded by Hawaii, there is a historical tradition of parents being able to legally transfer ownership of firearms and ammunition to their 18-20-year-old children.[2] " 'Even when a law regulates arms-bearing for a permissible reason,' we

---

[2] *See* Hawaii MSJ at 11 (quoting *Nat'l Rifle Ass'n v. Bond*i, 133 F.4th 1108, 1120 (11th Cir. 2025) ). (" 'By 1826, at least 21 of the 24 states admitted to the Union—representing roughly 89 percent of the population—had enacted laws that placed the onus on parents or guardians to provide minors with firearms for militia service.' ").

have said, "it may not be compatible with the [Second Amendment] if it does so to an extent beyond what was done at the founding.' " *Hemani*, No. 24-1234, at *12 (quoting *United States v. Rahimi,* 602 U.S. 680, 692 (2024)). Here, because Hawaii restricts the ownership of firearms beyond what was done during the colonial era, nearly obliterating the right, the challenged laws are unconstitutional.[3] This Court should not rely on its prior opinion. It should find pursuant to *Wolford* and *Hemani* that the "how" and "why" of the 19th Century laws are not congruous enough to justify the current laws.

## VIII.    Conclusion

Pursuant to *Wolford* and *Hemani*, Plaintiffs and their conduct fall within the plain text of the Second Amendment and are presumptively protected. Therefore, the burden is on Hawaii to justify the challenged laws with congruous historical analogs. All the historical analogs offered by Hawaii fail *Bruen's* "how" and "why"

---

[3] Furthermore, the Supreme Court rejected a similar argument in *Bruen.* The State of New York pointed to several prohibitions on handgun carry during the colonial era in order to demonstrate that there is a historical tradition of regulating handguns. The Court rejected this argument and found "[w]hatever the likelihood that handguns were considered "dangerous and unusual" during the colonial period, they are today "the quintessential self-defense weapon." *Bruen* at 597 U.S. at *4. "Thus, these colonial laws provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *Id* at *5. *See also Trump v. Barbara,* No. 25-365, slip op. at 6 (U.S. June 30, 2026) https://www.supremecourt.gov/opinions/25pdf/25-365_4hdj.pdf (Kavanaugh, J., concurring in the judgment and dissenting in part). ("In Second Amendment cases, this Court applies the Amendment to semi-automatic handguns even though those did not exist in 1791 or 1868."). This case is not yet available on Westlaw.

test as explicated by *Wolford* and *Hemani*. Therefore, this Court should grant a

permanent injunction against the challenged laws.

DATED: <u>July 9, 2026</u>.

Respectfully submitted,

<u>/s/ Alan Alexander Beck</u>
Alan Alexander Beck
*Counsel for Plaintiffs*

<u>/s/ Kevin O'Grady</u>
Kevin O'Grady
*Counsel for Plaintiffs*

10